IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § § | |
| vs. | § § § | |
| MAURICIO CHAVEZ, GIORGIO BENVENUTO and CryptoFX, LLC, | § § § | CIVIL ACTION NO. 4:22-CV-03359 |
| | § | JUDGE ANDREW S. HANEN |
| *Defendants.* | § § | |
| CBT Group, LLC, | § § | |
| *Relief Defendant.* | § § | |

**RECEIVER'S MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT MAURICIO CHAVEZ SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR FAILING TO COMPLY WITH THIS COURT'S ORDER APPOINTING RECEIVER**

John Lewis, Jr., the Court-appointed Receiver in the above-referenced action, files this Motion for an Order to Show Cause why Defendant Mauricio Chavez should not be held in civil contempt for failing to comply this Court's September 29, 2022 Order Appointing Receiver ("Receivership Order").

1

**MOTION FOR AN ORDER TO SHOW CAUSE**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

FACTUAL AND PROCEDURAL BACKGROUND ............................................................................ 2

    A. The Order Appointing Receiver ...................................................................... 2

    B. Chavez's Violations of the Receivership Order .............................................. 4

ARGUMENTS AND AUTHORITIES .............................................................................................. 9

REMEDY ................................................................................................................................ 10

CONCLUSION ........................................................................................................................ 11

CERTIFICATE OF CONFERENCE ............................................................................................. 13

CERTIFICATE OF SERVICE .................................................................................................... 14

**MOTION FOR AN ORDER TO SHOW CAUSE**

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*EEOC v Guardian Pools, Inc.*,
   828 F.2d 1506 (11th Cir. 1987) ..................................................................................................10

*Hicks on Behalf of Feiock v. Feiock*,
   485 U.S. 624 (1988)......................................................................................................................9

*In re Williams*,
   306 F. Supp. 617 (D.D.C. 1969)...................................................................................................9

*Levine v. Comcoa Ltd.*,
   70 F.3d 1191 (11th Cir. 1995) ....................................................................................................10

*Petroleos Mexicanos v. Crawford Enterprises, Inc.*,
   826 F.2d 392 (5th Cir. 1987) ...................................................................................................9, 10

*SEC v. Dowdell*,
   No. 3:01CV00116, 2002 WL 31248028 (W.D. Va. Sep. 30; 2002).........................................10

*Shillitani v. United States*,
   384 U.S. 364 (1966)......................................................................................................................9

*Whitfield v. Pennington*,
   832 F.2d 909 (5th Cir 1987), *cert. denied* 487 U.S. 1205 (1988).........................................9, 10

**Statutes**

18 U.S.C. § 401..............................................................................................................................9

## FACTUAL AND PROCEDURAL BACKGROUND

### A. THE ORDER APPOINTING RECEIVER

1. On September 19, 2022, the Securities and Exchange Commission ("SEC") filed a Complaint against Defendants Mauricio Chavez, Giorgio Benvenuto, CryptoFX, LLC, and CBT Group, LLC (together "Receivership Defendants"). ("Complaint," Doc. No. 3). The Complaint alleges that Defendants perpetrated a multi-million dollar securities fraud directed at Latino investors. *Id*.

2. Also on September 19, 2022, the Court entered a Temporary Restraining Order ("TRO"), among other things, freezing the assets of the Defendants. (Doc. No. 7). The asset freeze provisions of the Order, "[p]rohibit Defendants or Relief Defendant and all other persons from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, or otherwise disposing of Defendants' and Relief Defendant's assets, except as directed by further Order of the Court." *Id*. at ¶ 23.A. Chavez was informed of the TRO and its asset freeze provisions on September 20, 2022. Deposition of Orlin Turcios Dec. 8, 2022 at 95:20-24, attached as **Exhibit A** ("Turcios Dep."). On September 23, 2022, the Court converted the TRO to a preliminary injunction. (Doc. No. 10).

3. On September 29, 2022, the Court entered an Order Appointing John Lewis, Jr. as Receiver in this matter ("Receivership Order"), (Doc. No. 11), in which, among other things, the Court took exclusive jurisdiction and possession of the Receivership Assets of whatever kind and wherever situated. Receivership Order at ¶ 1.

4. The Receivership Order mandates that "all Receivership Assets are frozen" and "all persons and entities with direct or indirect control over any Receivership Assets, other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off,

receiving, changing, selling pledging, assigning, liquidating, or otherwise disposing of or withdrawing such assets." Receivership Order at ¶ 3.

5. The Receivership Order further directed all Defendants and Relief Defendant and all their past and/or present employees, contractors, agents, attorneys, and accountants, to preserve and turn over to the Receiver forthwith all Receivership property, as well as all information and documents, whether in paper or electronic form. *Id*. at ¶¶ 8, 17-18.

6. Additionally, the Receivership Defendants are required to affirmatively assist the Receiver in fulfilling his duties and obligations and "must respond promptly and truthfully to all requests for information and documents from the Receiver. *Id*. at ¶ 13.

7. Further, pursuant to the Receivership Order, on October 19, 2022, Chavez was required to file with the Court and serve upon the Receiver and the SEC a sworn statement listing (a) the identity, location, and estimated value of all Receivership Property; (b) all employees (and job titles thereof), contractors and agents of Receivership Defendants; (c) names, addresses and amounts of claims of all known creditors of the Receivership Defendants. *Id*. at ¶ 9.

8. In addition, on October 31, 2022, Chavez was required to file and serve with the SEC and the Receiver a sworn statement and accounting requesting information and documents about (1) all receivership property, wherever located, held by or in the name of the Receivership Defendants, or in which they have or have had an interest; (2) bank, investment or brokerage accounts of the Receivership Defendants; (3) debit, credit or deferred payment cards; (4) all assets received by the Defendants from any person or entity; (5) all funds received by the Receivership Defendants; (6) all expenditures exceeding $1,000; and (7) all transfers of assets made by any of the Defendants. *Id*. at ¶ 10.

**MOTION FOR AN ORDER TO SHOW CAUSE**

### B. CHAVEZ'S VIOLATIONS OF THE RECEIVERSHIP ORDER

9. As of the filing of this Motion, Chavez has failed to assist the Receiver, and file and serve the sworn declaration and the sworn statement and accounting required by the Receivership Order ¶¶ 9, 10, 13.

10. Further, pursuant to the Receivership Order, the Receiver requested that Chavez produce information, documents, and Receivership assets, on multiple occasions, and the Receiver's requests have been blatantly ignored. *See* Declaration of Receiver John Lewis, attached as **Exhibit B**. ("Lewis Decl.").

11. The Receiver understands from communications with Chavez's prior counsel, John Sklar, that the Receiver's letters and emails requesting information, documents, and Receivership assets pursuant to the Receivership Order have been forwarded to and received by Chavez. *See* Exhibit B, Lewis Decl. Ex. 2, at ¶ 15.

12. For example, as of the filing of this Motion, Chavez has failed to produce:

   - Information and documents about the employees, contractors or agents of the Receivership Defendants, *id.* at ¶ 5;

   - Information and documents about his and CryptoFX bank, brokerage or crypto currency accounts, *id.*;

   - Information and documents about real property owned by the Defendants, or by entities controlled by Chavez or in which he has an interest, *id.*;[1]

   - Information and documents about any other companies, entities, trusts, or assets Chavez owns, controls or in which he has an interest, *id.*;

   - Usernames, passwords and/or other access codes for the CryptoFX computers and other devices located at the CryptoFX offices, which are now in the possession and control of the Receiver, *id.* at ¶¶ 6, 7;

   - Access codes and/or keys for the two safes found at the CryptoFX offices: The codes provided by Chavez were incorrect. Counsel for Receiver informed Mr.

---

[1] The Receiver has received information about only three real estate properties owned by Defendant CBT Group. *Id.*

4

**MOTION FOR AN ORDER TO SHOW CAUSE**

- Sklar that the codes were incorrect, but no correct codes were provided. *Id.* at ¶¶ 8, 9;[2]

- Passwords and other accessing credentials for the security system found at the CryptoFX offices, *id.* at ¶ 9;

- Chavez's computer and cell phone, which he has used to conduct CryptoFX-related activities: His computer was observed on surveillance video of Chavez's Crypto-FX office dated September 28, 2022, but was not recovered by the Receiver in his sweep of the CryptoFX business premises. Ex. B at ¶10; *see also* Declaration of Scott Askue attached as **Exhibit C**; *see also* Deposition of Julio Taffinder, December 14, 2022, at 12:25 – 13:6; 44:24 – 46:2; 111:12 – 112:20; 335:14 – 336:7, attached as **Exhibit D** (testifying that Chavez used an Apple Mac-mini computer, a desktop PC, and a phone to conduct CryptoFX activities, including communicating with CryptoFX employees and investors, and trading cryptocurrency.).[3]

- Tax return for the year 2021: Chavez produced his tax return for 2020, but he has not produced the tax return for 2021. *Id.* at ¶11.

- Chavez's vehicles, valued in the SEC filings at more than $460,000: Chavez has provided an insurance card for two automobiles, but for weeks refused to turn over the automobiles to the Receiver despite multiple requests for them. *Id.* at ¶ 12. After multiple requests, in November 2022, Chavez turned over one of the cars, a Mercedes Benz. *Id.* He continues to hold possession and/or control over a Lexus, BMW, and Volkswagen.[4]

- Information and documents about JM Monarchy LLC, Luxury Real Estate LLC, JJ Trust and JCA Trust, and assets owned or controlled by these entities and trusts, which Chavez controls or has an interest in, *id.* at ¶ 13;[5]

---

[2] The Receiver had to employ the services of locksmith to get access to the safes, and thus further expend Receivership funds.

[3] On December 27, 2022, the day this Motion was filed, counsel for Chavez informed counsel for Receiver that he has taken possession of Chavez's computer but will not turn the computer over because he is "asserting his Fifth Amendment privilege which covers the act of production." Dec. 27, 2022 Email from Paul Flack, attached as **Exhibit I**. Receiver's position is that the Fifth Amendment does not apply to company records and/or property, including this Apple device and Chavez's cell phone and both should be turned over.

[4] On December 27, 2022, counsel for Chavez stated that the Lexus is owned by JM Monarchy and is in the possession of Janette Gonzalez. Chavez is a managing member of this LLC and thus owns and/or has control over the vehicle. Counsel for Chavez also stated that Angelica Vargas, Chavez's wife has possession of the Volkswagen; yet, the car is owned by both Chavez and Vargas. Further, public records show that the VIN numbers of the Mercedes and Volkswagen owned by Chavez differ from the ones owned by Vargas. No documents related to these vehicles have been provided to the Receiver despite many requests for the same.

[5] Bank and public records show these entities and trusts own property that belongs in the Receivership estate. Chavez is a member of Luxury Real Estate and JM Monarchy, and thus has control over property owned by these entities and records related to them.

5

**MOTION FOR AN ORDER TO SHOW CAUSE**

- Links to and credentials for each website maintained, operated, or controlled by the Defendants, including of the website https://cryptofxtv.com/mioficina/login to which investors have been directed to enter their crypto wallet information so they can receive payments from CryptoFX, *id*. at ¶ 14;[6]

- The credentials, such as screen names, passwords, email addresses, and/or other identifiers for any CryptoFX social media account (including Facebook, LinkedIn, Instagram, YouTube, TikTok, etc.), *id*.

- Other Receivership assets, including cash received by Chavez and CryptoFX representatives and that was removed from the Blalock office, and cash that was collected from investors after the entry of the Receivership Order. *See* Declaration of Greg Hays at ¶¶ 5 – 15, attached as **Exhibit E** ("Hays Decl.") (describing the amount of cash collected by CryptoFX associates and/or employees after this Court's asset freeze and after the Receivership Order. For example, from September 20, 2023 to September 28, 2023, CryptoFX received a total of $7,106,867.00. Chavez himself received at least $607,000. "[M]illions of dollars were being transferred by CryptoFX associates and/or employees after this Court's asset freeze.").[7]

13. Additionally, witnesses have testified that Chavez and his associates continue to communicate and organize gatherings with CryptoFX investors after the Receivership Order was entered. *See* Ex. A, Turcios Dep. 153:5 - 160:3.

14. For example, Orlin Turcios, previously involved with soliciting investors and accepting investments on behalf of CryptoFX, testified that, at the direction of Chavez, CryptoFX investors were asked via WhatsApp messages, to come at the CryptoFX offices on Park Drive, Houston, TX, with their contracts in October 2022. Investors were told that if they decided to cancel their contract/s, they would not get any interest payments, but the capital would be returned to them. *Id*. at 155:5 – 156:1. However, if they decided "to stay in the academy," they would be

---

[6] On December 24, 2022, counsel for Chavez informed counsel for Receiver that his website was no longer active. Yet, any credentials used to access this website have not been provided.

[7] On December 27, 2022, Chavez's Counsel stated he has $55,000 in his possession that he is prepared to turn over. *See* Ex. I, Flack 12/27/2022 Email; however, this sum is much smaller than amount of cash CryptoFX records show has been received by Chavez and CryptoFX even after the asset freeze. *See* Ex. E, Hays Decl.

6

**MOTION FOR AN ORDER TO SHOW CAUSE**

paid. *Id*. at 156:3-159:4. Chavez is also telling investors that "the academy has not closed. Everything is normal and operating in other cities and states," including in Chicago, IL and California. *Id*. at 156:9 – 160:3.

15. Turcios also testified that, unaware of the asset freeze and Receivership Order, he continued to operate—"opening contracts" and receiving cash payments from investors—until October 4, 2022, when he learned through a social media post about this case against Chavez and CryptoFX. *See* Turcios Dep. at 96:10 – 18. After the Blalock office was closed by the Receiver on September 29th, Chavez sent a CryptoFX employee to pick up the cash from the leaders. *See id*. at 96:19 – 99:23.

16. Similarly, Julio Taffinder, another CryptoFX employee, who among other things sent crypto payments approved by Chavez to investors and gave presentations about cryptocurrency, continued to do so even after the entry of the asset freeze and Receivership Order. *See* Ex. D., Taffinder Dep. at 197:11 – 199:12 (testifying he presented at a CryptoFX meeting held in Chicago, IL in October 2022 and made payments to investors after the entry of the asset freeze order). Chavez did not inform Taffinder of the asset freeze or the entry of the Receivership Order. *Id*.

17. In October 2022, Chavez organized at least two meetings with CryptoFX employees at Royal Sonesta, a local hotel. He also asked Taffinder to book a conference room for CryptoFX staff to work at one of the local hotels in October 2022. *Id*. 202:14 - 216:4.

18. Angelica Vargas, Chavez's wife, testified that Chavez gave her at least $3,000 in cash in mid-November 2022. *See* Deposition of Angelica Vargas, Nov. 29, 2022 at 41:12-25, attached as **Exhibit F**. Vargas further testified that each month after the asset freeze, Chavez has given her $3,900. *Id*. 32:9-15.

7

**MOTION FOR AN ORDER TO SHOW CAUSE**

19. In addition, Turcios and Carmen De La Cruz, another CryptoFX representative, testified that Chavez gave them $38,000 to pay an investor after the entry of the Receivership Order. *See* Ex. A, Turcios Dep. at 101:23 – 104:19; Deposition of Carmen De La Cruz 48:18 – 53:20, attached as **Exhibit G**. "Returns" on CryptoFX contracts were authorized and paid to other investors after the September 20, 2022 asset freeze went into effect, and after the entry of the Receivership Order. *See* Ex. A, Turcios Dep. at 95:12 – 16, Ex. 15 and Ex. 20 to Turcios Dep. (showing that "returns" on CryptoFX contracts were paid on Sept. 21 through Sept. 30, 2022); *see also* Ex. E, Hays Decl. at ¶ 11, 13 - 14.

20. Victims and/or their counsel have also informed the Receiver and his team of ongoing CryptoFX activities, including requesting additional investments/money from victims, and making payments on behalf on CryptoFX. Ex. B, Lewis Decl. at ¶ 16; *see also* Receiver's First Interim Report.

21. On November 15, 2022, the Receiver sent a letter to Mr. Sklar requesting that Chavez cease such activities and that he turn over to the Receiver all Receivership assets, including cash, immediately. *Id.* at 16. Upon the Court's granting Mr. Sklar's Motion to Withdraw as Counsel for Chavez (Doc. No. 30), the same correspondence was also sent to Chavez directly. *Id.* at ¶ 17.

22. Additionally, Chavez continues to dissipate Receivership funds. For example, Chavez's Regions Bank records show that on September 20, 2022, Chavez paid $23,324 in rent at Aspire Post Oak Luxury Apartments in Houston, TX. *See* Regions Bank records, attached as **Exhibit H**.[8] On September 29 and 30, 2022, Chavez spent $15,408.71 at a local furniture store (Cantoni). *Id.* And in October 2022, he paid Aspire another $9,785 in rent. *Id.*

---

[8] Luxury Real Estate, the entity that holds this account is an LLC controlled by Chavez.

8

**MOTION FOR AN ORDER TO SHOW CAUSE**

**ARGUMENTS AND AUTHORITIES**

23. A court has the inherent power to enforce compliance with its lawful orders and mandates through civil contempt. *Shillitani v. United States*, 384 U.S. 364, 370 (1966). This power is essential to the proper conduct of the judicial function; without it, courts "would be unable to preserve decorum or assert their authority by order or decree." *See e.g., In re Williams*, 306 F. Supp. 617, 618 (D.D.C. 1969).

24. Congress codified the courts' contempt powers in 18 U.S.C. § 401, which states in relevant part:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as –
> . . . .
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

25. The Receiver seeks an order directing Chavez to show cause why he should not be cited for civil contempt, a remedial device here intended to achieve full compliance with the Court's Receivership Order, for the Receivership Estate's benefit. *See Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 631 (1988); *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 399-400 (5th Cir. 1987).

26. A party commits contempt when he "violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order." *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir 1987), *cert. denied* 487 U.S. 1205 (1988) (citing *SEC v. First Financial Group of Texas, Inc.,* 659 F.2d 660, 669 (5th Cir. 1981).

27. In a civil contempt proceeding, the movant has "the burden of establishing by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required certain

9

**MOTION FOR AN ORDER TO SHOW CAUSE**

conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Petroleos Mexicanos,* 826 F.2d at 401.[9]

28. In this case, the Court's Receivership Order including the Asset Freeze is in effect. The Order clearly and unambiguously requires specific conduct by Chavez. And, as shown above Chavez has violated multiple provisions of the Order.

## REMEDY

29. In fashioning an appropriate sanction, a court should consider "the character and magnitude of the harm threatened by continued contumacy and the probable effectiveness of any suggested sanction in bringing about the result desired."" *EEOC v Guardian Pools, Inc.*, 828 F.2d 1506, 1515 (11th Cir. 1987) (citing *United States v. United Mine Workers*, 330 U.S. 258, 304, 67 S. Vt. 677, 701 (1947)). Courts have punished violations of asset freezes by contempt. *Levine v. Comcoa Ltd.*, 70 F.3d 1191, 1993-1994 (11th Cir. 1995) (upholding contempt finding for violation of asset freeze); *SEC v. Dowdell*, No. 3:01CV00116, 2002 WL 31248028, at *1 (W.D. Va. Sep. 30; 2002) (holding two defendants in contempt for dissipation of assets following asset freeze and TRO.).

30. As relief for Chavez's violations of the Receivership Order, the Receiver requests that the Court require Chavez to: (1) fully comply with all the provisions of the Receivership Order, including paragraphs 9 and 10, and cease all CryptoFX-related activities immediately; (2) provide a full accounting of monies removed from accounts covered by the asset freeze and from the Blalock office and other locations from which CryptoFX continued to operate, and provide (a) the location of the money, or (b) if spent in an arm's length transaction, when it was spent, for whose

---

[9] A party's intent to violate the court's order or his willfulness are not prerequisites for a civil contempt sanction. *See Whitfield*, 832 F.2d at 913. Instead, the question is simply whether the contemnor has complied with the court's order. *Id*.

benefit it was spent, what was purchased, and copies of any invoices or records concerning the expenditure; (3) require Chavez to turn over to the Receiver all funds which he has concealed or transferred in violation of the asset freeze; (4) turn over to the Receiver all other assets, including real estate and personal property that belong in the Receivership Estate; (5) repatriate any overseas assets; (6) turn over his computer/s and cell phone; (7) turn over all passwords for the devices that the Receiver took possession of from the Blalock office, and any Google drive and CryptoFX email operated by Chavez; and (8) require that Chavez surrender his passport to the Court until he has complied in full with the Court's orders. Full restoration of the misappropriated funds and assets and cooperation with the Receiver is especially necessary in this case because the Receiver is seeking to redress investors who were injured by Chavez's activities.

31.     In the alternative, the Receiver requests the Court schedule a Show Cause hearing, directing Chavez to appear and show cause why he should not be held in contempt for violations of the Receivership Order and asset freeze, until such time as he fully complies with the Receivership Order and remits to the Receiver all Receivership assets, including funds and other assets that were transferred or concealed in violation of the Order as well as provide an accurate and complete accounting of his assets.

## CONCLUSION

32.     For the foregoing reasons, the Court should require Mauricio Chavez to: (1) fully comply with all the provisions of the Receivership Order, including paragraphs 9 and 10, and cease all CryptoFX-related activities immediately; (2) provide a full accounting of monies removed from accounts covered by the asset freeze and from the Blalock office and other locations from which CryptoFX continued to operate, and provide (a) the location of the money, or (b) if spent in an arm's length transaction, when it was spent, for whose benefit it was spent, what was purchased, and copies of any invoices or records concerning the expenditure; (3) require Chavez to turn over

to the Receiver all funds which he has concealed or transferred in violation of the asset freeze; (4) turn over to the Receiver all other assets, including real estate and personal property that belong in the Receivership Estate; (5) repatriate any overseas assets; (6) turn over his computer/s and cell phone; (7) turn over all passwords for the devices that the Receiver took possession of from the Blalock office, and any Google drive and CryptoFX email operated by Chavez; and (8) require that Chavez surrender his passport to the Court until he has complied in full with the Court's orders.

Dated: December 27, 2022

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ Sonila Themeli*
Sonila Themeli
Texas Bar No. 24073588
S.D. Tex. Bar No. 2828237
600 Travis Street, Suite 3400
Houston, TX 77002
Telephone:  713.227.8008
Facsimile:   713.227.9508
sthemeli@shb.com

Caroline M. Gieser
(admitted *pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
1230 Peachtree Street, NE, Suite 1200
Atlanta, GA  30309
Telephone:  470.867.6000
mcgieser@shb.com

***Counsel for John Lewis, Jr.***
***Court-Appointed Receiver***

## **CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that she has conferred with counsel for Plaintiff. SEC does not oppose this Motion and supports granting the relief requested herein.

I further certify that I have communicated with Counsel for Mr. Chavez about the relief requested in this Motion, and Mr. Chavez opposes this Motion.

/s/ *Sonila Themeli*
Sonila Themeli

## CERTIFICATE OF SERVICE

I hereby certify that on this the 27th day of December, 2022, the above and foregoing document was filed electronically through the CM/ECF system, which sent notification of such filing to all known counsel of record. Counsel for Defendant Giorgio Benvenuto was served via email as indicated below.

Matthew J. Gulde
UNITED STATES SECURITIES
AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX 76102
Telephone: 817.978.1410
Facsimile: 817.978.4927
guldem@sec.gov

*Counsel for Plaintiff SEC*

Paul D. Flack
PRATT & FLACK, LLP
4306 Yoakum Blvd., Suite 500
Houston, TX 77006
Telephone: 713.705.3087
pflack@prattflack.como

*Counsel for Defendant Mauricio Chavez*

Dan L. Cogdell
JONES, WALKER L.L.P.
811 main Street, Suite 2900
Houston, TX 77002
Telephone: 713.437.1869
Facsimile: 713.437.1810
dcogdell@joneswalker.com

*Counsel for Defendant Giorgio Benvenuto*

*/s/ Sonila Themeli*
Sonila Themeli