# THE CWEREN LAW FIRM, PLLC

### ATTORNEYS AND COUNSELORS AT LAW

BRIAN P. CWEREN
*MANAGING MEMBER*

SCOTT H. FOURNIER
AIMAL WARDAK
WILLIAM "BILL" KEE, III
*SENIOR ASSOCIATES*

MICHELLE BLUM
*ASSOCIATE*

3311 RICHMOND AVENUE, SUITE 305
HOUSTON, TEXAS 77098

WWW.CWERENLAW.COM

TELEPHONE:   (713) 622-2111
FACSIMILE:   (713) 622-2119

January 10, 2023

**VIA CM/RRR:7021 0350 0000 2098 4179;**
**VIA U.S. First Class Mail; and**
**VIA E-mail:** jmgroup1@icloud.com
Mauricio Chavez
1616 Post Oak Blvd., Apt. #3904
Houston, Texas 77056

Re:     Apartment Lease Contract commencing on September 19, 2022 and ending on September 18, 2023 (the "Lease") between Mauricio Chavez ("Resident") on the one hand and Vantage Post Oak Apartments, LLC ("Landlord") on the other hand, for the apartment dwelling at Aspire Post Oak (the "Community"), located at 1616 Post Oak Blvd., Apartment No. 3904, Houston, Texas 77056 (the "Leased Premises").

Civil Action No. 4:22-CV-03359; *Securities and Exchange Commission v. Mauricio Chavez, et. al.*, In the United States District Court for the Southern District of Texas (the "Lawsuit").

Dear Mr. Chavez:

Please be advised that the undersigned attorney and law firm represent Vantage Post Oak Apartments, LLC ("Landlord") commonly doing business as Aspire Post Oak with respect to the above-referenced Lease and Leased Premises.  Please allow this correspondence to serve as Landlord's notice that you must vacate the Leased Premises and turn in your keys by 5:00 p.m. on January 31, 2023.  Please direct all future correspondence in this regard to the undersigned attorney and law firm.

It is our understanding that you are represented by counsel in the Lawsuit, but we do not have your counsel's name and contact information. To the extent you are represented by counsel, please provide this correspondence to your counsel.

Please be advised that Landlord was recently notified by Ms. Sonila Themeli, counsel for the court-appointed Receiver John Lewis, Jr. in the above-referenced Lawsuit, that the following orders were entered in the Lawsuit (which are enclosed herein for your review):

(1) Order Appointing Receiver ("Receivership Order") dated September 29, 2022;
(2) Temporary Restraining Order and Order Freezing Assets and Granting Expedited Discovery dated September 19, 2022; and
(3) Order on Preliminary Injunction dated September 29, 2022

Mauricio Chavez
*Notice to Vacate the Leased Premises*
*January 10, 2023*
*Page 2*

Additionally, please be advised that the undersigned counsel received written correspondence from Ms. Themeli dated January 5, 2023 stating that all of your assets have been frozen and belong to the Receivership Estate, with the Receiver being the only party authorized to administer those assets. A copy of the correspondence from Ms. Themeli dated January 5, 2023 is attached hereto for your reference. Based on Ms. Themeli's correspondence and the Receivership Order, any funds or other assets used to pay your obligations under the Lease are part of and belong to the Receivership Estate. Therefore, any funds received by Landlord from you (or for your benefit) may be recaptured from Landlord by the Receiver.

Based on the foregoing, per Ms. Themeli's correspondence and pursuant to the enclosed orders issued in the Lawsuit, it is Landlord's understanding that Landlord cannot accept any funds or other assets from you with respect to your obligations under the Lease. It is further our understanding the Receiver will not permit you to pay the monthly rent for the Leased Premises. **<u>Accordingly, because you cannot meet your financial obligations under the Lease, you are instructed to vacate the Leased Premises and turn in your keys by 5:00 p.m. on January 31, 2023.</u>**

If you disagree or dispute any of the foregoing, please notify us immediately. We also encourage you to seek relief from the Court regarding this matter. If you seek relief, please notify us immediately so that we may attend the hearing. Finally, if you contend that you can make the monthly payments with funds that are not the property of the Receivership and not subject to clawback or recapture from the Receiver, please advise us immediately by **<u>January 17, 2023</u>**. Otherwise, Landlord is entitled to and demands possession of the Leased Premises.

Nothing contained herein shall constitute an election or waiver of any rights or remedies which my client may have; it is my client's intention to preserve all such rights and remedies. Additionally, any delay or postponement in taking any action shall not constitute a waiver of my client's right to take such action at any time.

Should you have any questions or would like to discuss this matter further, please contact me at (713) 622-2111.

Sincerely,

THE CWEREN LAW FIRM, PLLC

Aimal Wardak
Senior Associate

AW/er
*Enclosures as referenced.*

United States District Court
Southern District of Texas

**ENTERED**

September 29, 2022
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | |
| | ) | **FILED UNDER SEAL** |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| MAURICIO CHAVEZ, | ) | |
| GIORGIO BENVENUTO, and | ) | |
| CryptoFX, LLC, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| CBT GROUP, LLC, | ) | |
| | ) | |
| Relief Defendant. | ) | |

**TEMPORARY RESTRAINING ORDER AND ORDERS: (1) FREEZING ASSETS; (2) PROHIBITING THE DESTRUCTION OF DOCUMENTS; (3) GRANTING EXPEDITED DISCOVERY; (4) REQUIRING SWORN ACCOUNTINGS; (5) PERMITTING ALTERNATIVE MEANS OF SERVICE; AND (6) SETTING HEARING DATE ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

This matter came before the Court upon the *Ex Parte* Motion of Plaintiff U.S. Securities and Exchange Commission ("SEC") for a Preliminary Injunction, Temporary Restraining Order, Asset Freeze, Appointment of Receiver, and Other Emergency Relief and Brief in Support (the "TRO Application").

The Court, having considered the SEC's Complaint, the TRO Application, the supporting declarations and exhibits, and the other evidence and argument presented to the Court, finds that:

1.      This Court has jurisdiction over the parties to, and the subject matter of, this action, and the SEC is a proper party to bring this action seeking the relief sought in its Complaint, and its motion.

2.      The SEC has made a sufficient and proper showing in support of the relief granted herein, as required by Section 20(b) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77t(b), and Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(d), by evidence establishing a *prima facie* case and reasonable likelihood that Defendants Mauricio Chavez, Giorgio Benvenuto, and CryptoFX, LLC have engaged in, are engaging in, are about to engage in, and unless restrained and enjoined will continue to engage in transactions, acts, practices, and courses of business that constitute violations of Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a) and (c) and 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1) and (2) of the Advisers Act [15 U.S.C. §§ 80b-6(1)-(2)].

3.      Good cause exists to believe that Defendants and Relief Defendant used improper and unlawful means to obtain investor funds and assets and that investor funds have been misappropriated and misapplied, as described in the SEC's Complaint and in the TRO Application. Good cause exists to believe that, unless restrained and enjoined by order of this Court, Defendants and Relief Defendant will dissipate, conceal, or transfer assets that could be the subject to an order directing disgorgement or the payment of civil money penalties in this action.

4.      There is good cause to believe that Defendants and Relief Defendant do not have sufficient funds or assets to satisfy the relief that might be ordered in this action.

2

5.     There is good cause to believe that the assets, in whatever form they exist, that are owned, controlled, or possessed by Defendants and Relief Defendant should be frozen to preserve the status quo and to prevent any misappropriation, misapplication, dissipation, or other action taken to the detriment of investors.

6.     Good cause exists to believe that requiring notice to the Defendants and Relief Defendant of the SEC's motion for this Order would result in immediate and irreparable injury, loss, or damage to the SEC and to investors. It is appropriate for the Court to issue, *ex parte*, a Temporary Restraining Order, an Asset Freeze, and the other orders, below, so that prompt service on appropriate financial institutions can be made, thus preventing the dissipation of assets.

7.     Good cause exists to believe that an accounting of assets is necessary to determine the disposition of investor funds and to ascertain the total assets that should continue to be frozen.

8.     Good cause exists to believe that, unless restrained and enjoined by order of this Court, Defendants and Relief Defendant may alter or destroy documents relevant to this action, and it is necessary to preserve and maintain the business records of the Defendants and Relief Defendant from destruction.

9.     The timing restrictions of FED. R. CIV. P. 26(d), 26(t), 30, and 34 should not apply to this proceeding in light of the SEC's requested relief and its demonstration of good cause, and that expedited discovery is appropriate to permit a prompt and fair hearing on the SEC's motion for preliminary injunction.

The Court therefore grants the following relief without prejudice to any of the remaining relief requested by Plaintiff in its Motion for Preliminary Injunction, *Ex Parte*

Temporary Restraining Order, Asset Freeze, Appointment of Receiver, and Other Ancillary Relief.

**IT IS THEREFORE ORDERED:**

## I.

### Temporary Restraining Order

10.     Defendants are temporarily restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)     to employ any device, scheme, or artifice to defraud;

    (b)     to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c)     to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

11.     As provided in FED. R. CIV. P. 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Order by personal service or otherwise: (a) Defendants' officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with any of the Defendants or with anyone described in (a).

12.     Defendants are temporarily restrained and enjoined from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use

of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

13.    As provided in FED. R. CIV. P. 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Order by personal service or otherwise: (a) Defendants' officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with any of the Defendants or with anyone described in (a).

14.    Chavez and CryptoFX are temporarily restrained and enjoined from violating Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) & (c)] by, directly or indirectly, in the absence of any applicable exemption:

    (a)    Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise;

    (b)    Unless a registration statement is in effect as to a security, carrying or causing to be carried through the mails or in interstate commerce, by any means or

instruments of transportation, any such security for the purpose of sale or for delivery after sale; or

(c) Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act [15 U.S.C. § 77h].

15.    As provided in FED. R. CIV. P. 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Order by personal service or otherwise: (a) Chavez's and CryptoFX's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Chavez or CryptoFX or with anyone described in (a).

16.    Chavez is temporarily restrained and enjoined from violating Sections 206(1) and (2) of the Advisers Act [15 U.S.C. §§ 80b-6(1)-(2)], directly or indirectly, through the use of the mails or any means or instrumentality of interstate commerce, while acting as an investment adviser within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)], by: (a) employing a device, scheme, or artifice to defraud a client or prospective client; and/or (b) engaging in a transaction, practice, or course of business which operated as a fraud or deceit upon a client or prospective client.

6

17.     As provided in FED. R. CIV. P. 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Order by personal service or otherwise: (a) Chavez's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Chavez or with anyone described in (a).

## II.

### Asset Freeze Order

18.     This Order shall not limit the powers or obligations bestowed upon a receiver if one is appointed by this Court.

19.     Defendants and Relief Defendant and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are restrained and enjoined from, directly or indirectly, making any payment or expenditure of funds, incurring any additional liability (including, specifically, by advances on any line of credit and any charges on any credit card), or effecting any sale, gift, hypothecation or other disposition of any assets, securities, investments, digital currencies, virtual currencies, cryptocurrencies, or any other tangible or intangible assets pending provision of sufficient proof to the Court of sufficient funds or assets to satisfy all claims alleged in the SEC's Complaint, or the posting of a bond or surety sufficient to assure payment of any such claim.

20.     Any bank, trust company, broker-dealer, depository institution, third-party payment processor, coin exchange, or any other holder or custodian of any digital assets, digital currencies, virtual currencies, cryptocurrencies, or other depository institution holding accounts for or on behalf of any of the Defendants and Relief Defendant shall make no transactions in funds, assets, securities, investments, digital currencies, virtual currencies,

cryptocurrencies, or any other tangible or intangible assets (except liquidating transactions necessary to comply with a court order or to avoid wasting assets) and shall make no disbursements of assets, securities, investments, funds, digital currencies, virtual currencies, cryptocurrencies, or any other tangible or intangible assets (including extensions of credit or advances on existing lines of credit), including the honor of any negotiable instrument (including specifically, any check, draft, or cashier's check) purchased by or for Defendants or Relief Defendant pending further order of this Court.

21.　　The SEC may cause a copy of this Order to be served on any bank, trust company, broker-dealer, depository institution, third-party payment processor, coin exchange, or any other holder or custodian of any digital assets, digital currencies, virtual currencies, cryptocurrencies, or on any entity or individual either by United States mail, email, or facsimile as if such service were personal service, to restrain and enjoin any such institution, entity, or individual from disbursing assets, directly or indirectly, to or on behalf of Defendants or Relief Defendant, or any companies or persons or entities under their control.

22.　　All other individuals, corporations, partnerships, limited liability companies and other entities are hereby restrained and enjoined from disbursing any funds, securities, or other assets or property obtained from Defendants or Relief Defendant without adequate consideration.

23.　　All banks, savings and loan associations, savings banks, trust companies, broker dealers, commodities dealers, investment companies, other financial or depository institutions and investment companies, third-party payment processors, coin exchanges, any other holder or custodian of any digital assets, digital currencies, virtual currencies, cryptocurrencies, individuals, corporations, partnerships, limited liability companies, or other

artificial entities that holds or has held, controls or has controlled, or maintains or has maintained custody of any of Defendants' or Relief Defendant's funds, securities, or other property at any time since January 1, 2020 shall:

A. Prohibit Defendants or Relief Defendant and all other persons from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, or otherwise disposing of Defendants' and Relief Defendant's assets, except as directed by further Order of the Court;

B. Deny Defendants or Relief Defendant and all other persons access to any safe deposit box that is: (i) owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants or Relief Defendant, either individually or jointly; or (ii) otherwise subject to access by Defendants or Relief Defendant;

C. Provide counsel for the Commission, or any Receiver appointed in this matter, within five (5) business days of receiving a copy of this Order, a statement setting forth: (i) the identification number of each and every account or other asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants or Relief Defendant, either individually or jointly; (ii) the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and (iii) the identification of any safe deposit box that is owned controlled, managed, or

9

held by, on behalf of, or for the benefit of Defendants or Relief Defendant, either individually or jointly, or is otherwise subject to access by Defendants or Relief Defendant; and

D.     Upon request by the Commission, or any Receiver appointed in this matter, promptly provide the Commission and the Receiver with copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, Internal Revenue Service Form 1099s, and safe deposit box logs.

E.     For purposes of explanation, but not limitation, the Court specifically provides that Paragraph 23 applies to all companies, entities, or individuals who hold any assets of the Defendants or Relief Defendant, including, but not limited to, the following accounts and institutions:

| Bank Name | Account Name | Account No. (Last 4 Digits) |
|---|---|---|
| Cadence Bank, N.A. | Mauricio A. Chavez | -9455 |
| Cadence Bank, N.A. | Mauricio A. Chavez (savings) | -5647 |
| Cadence Bank, N.A. | Maurizzio Group LLC | -7137 |
| Cadence Bank, N.A. | CryptoFX LLC | -7103 |
| Cadence Bank, N.A. | CryptoFX LLC | -7129 |
| First Citizens Bank | Maurizzio Group LLC | -6456 |
| J.P. Morgan Chase Bank, N.A. | Mauricio Antonio Chavez DBA Maurizzio Group | -0950 |
| J.P. Morgan Chase Bank, N.A. | Mauricio A. Chavez | -6989 |
| Lone Star Bank | Maurizzio Group LLC | -0419 |
| People's Trust Credit Union | Mauricio Antonio Chavez | -2018 |
| People's Trust Credit Union | Maurizzio Group LLC | -4909 |
| PNC Bank | Mauricio Chavez | -1156 |
| Cadence Bank, N.A. | CBT Group LLC | -7654 |

| Lone Star Bank | CBT Group LLC | -0427 |
| Simmons Bank | CBT Group LLC | -9557 |

and further to any and all accounts held by any online platform including but not limited to Coinbase, Inc.

## III.

### Document Preservation Order

24. Except as otherwise ordered by this Court, each of the Defendants and Relief Defendant be and hereby are temporarily restrained and enjoined from, directly or indirectly: destroying, mutilating, concealing, transferring, altering, or otherwise disposing of, in any manner, any documents, which includes all books, records, computer programs, computer files, computer printouts, contracts, emails, correspondence, memoranda, brochures, or any other documents of any kind in their possession, custody or control, however created, produced, or stored (manually, mechanically, electronically, or otherwise), and any accounts, account passwords, computer passwords, device PINs and passwords, cryptographic keys, or digital wallets, pertaining in any manner to Defendants and Relief Defendant.

25. As provided in FED. R. CIV. P. 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Order by personal service or otherwise: (a) officers, agents, servants, employees, and attorneys of either of the Defendants and Relief Defendant; and (b) other persons in active concert or participation with either of the Defendants or Relief Defendant or with anyone described in (a).

# IV.

## Sworn Accounting

26.     Defendants and Relief Defendant shall provide a sworn accounting, under oath, within ten (10) days of the issuance of this Order or three (3) days prior to any hearing on the Commission's Motion for Preliminary Injunction and other relief, whichever is sooner. The accounting shall detail by amount, date, method and location of transfer, payee and payor, purpose of payment or transfer: (a) all investor monies and other benefits received, directly and indirectly, from or as a result of the activities alleged in the Complaint or thereafter transferred; (b) all monies and other assets received, directly or indirectly, from investors; (c) all of their current assets wherever they may be located and by whomever they are being held, and their current liabilities; and (d) all accounts with any bank, credit union, trust company, financial or brokerage institution maintained for the Defendants or Relief Defendant at any point during the period from January 1, 2020 to the present. The accounting shall be sufficient to permit a full understanding of the flow of investor funds from the investor to its present location to the extent known by the Defendants or Relief Defendant or within their power to learn. The accounting and all documents reviewed in the course of the preparation thereof or otherwise pertaining thereto shall be filed with the Court and delivered by email or overnight courier to:

Matthew J. Gulde
U.S. Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, Texas 76102

by the deadline set forth above. After completion of the accounting, each of the Defendants and Relief Defendant shall produce to the SEC, at a time agreeable to the SEC, all books, records, and other documents supporting or underlying their accounting.

## V.

### Expedited Discovery

27.  Commencing with the time and date of this Order, in lieu of the time periods, notice provisions, and other requirements of Rules 26, 30, 33, 34, 36, and 45 of the Federal Rules of Civil Procedure and the corresponding Local Rules of this Court, discovery shall proceed as follows:

A.  All parties shall comply with the provisions of Rule 45 of the Federal Rules of Civil Procedure regarding issuance and service of subpoenas unless the person designated to provide testimony or to produce documents or things agrees to provide the testimony or to produce the documents or things without the issuance of a subpoena and/or to do so at a place other than one at which testimony or production can be compelled.

B.  Any party may notice and conduct depositions upon oral examination subject to minimum notice of 72 hours.

C.  All parties shall produce for inspection and copying all documents and things that are requested within 72 hours of service of a written request for those documents and things.

D.  All parties shall serve written responses to any other party's request for discovery within 72 hours. The documents, responses, and other things being

produced in response to requests described above shall be sent to the SEC addressed as follows:

> Securities and Exchange Commission
> Fort Worth Regional Office
> Attention: Matthew J. Gulde
> Burnett Plaza, Suite 1900
> 801 Cherry Street, Unit #18
> Fort Worth, TX 76102-6882
> Email: GuldeM@SEC.gov

The SEC's responses shall be sent to the other parties at such address(es) as may be designated by them in writing.

E.    All discovery requests and responses may be served by the most expeditious means available, including by email and facsimile.

F.    Written discovery propounded and depositions taken pursuant to this section of this Order shall not count against the limitations on the number or duration of written discovery and depositions set forth in the Federal Rules of Civil Procedure.

## VI.

## Alternative Means of Service

28.    The United States Marshal in any District in which the Defendants and Relief Defendant reside, transact business, or may be found, is hereby authorized and directed to make service of process at the request of the SEC or any duly appointed agent of the Court in this case. Alternatively, if the U.S. Marshal is unavailable, any federal, state, county, or city law enforcement officer(s) is hereby authorized and directed to make service of process at the request of the SEC or any duly appointed agent of the Court in this case. Furthermore, the SEC is permitted to effect service upon the Defendants and Relief Defendant, their agents, or

their attorneys of all pleadings and other papers, including the Summons, the Complaint, the emergency motion, supporting brief and appendix, and court orders, personally, by facsimile, by electronic mail, by overnight courier, by mail, or by any other alternative provision for service permitted by Rule 4 of the Federal Rules of Civil Procedure, or as this Court may direct by further order.

## VII.

### Expiration of Temporary Restraining Order Only

29.    The portion of this Order that constitutes a temporary restraining order shall expire at 12:00 noon on October 1, 2022, unless for good cause shown it is extended or the parties against whom it is directed consent that it may be extended for a longer period. All other provisions of this Order, including the asset freeze, shall remain in full force and effect until specifically modified by further order of this Court.

## VIII.

### Preliminary Injunction Hearing

30.    At 10:00 a.m. on September 27, 2022, or as soon thereafter as the parties may be heard, the Defendants and Relief Defendant, and each of them, shall appear before the Honorable Andrew S. Hanen, Judge of the United States District Court for the Southern District of Texas, to show cause, if there be any, why this Court should not enter a preliminary injunction extending the asset freeze and other relief granted in this Order until a final adjudication on the merits may be had and to show cause why a receiver should not be appointed for all of the assets of Defendants and Reliant Defendant. Any declarations, affidavits, points and authorities, or other submissions in support of, or in opposition to, the issuance of such an Order shall be filed with the Court and delivered to Matthew J. Gulde;

U.S. Securities and Exchange Commission; Burnett Plaza, Suite 1900; 801 Cherry Street, Unit 18; Fort Worth, Texas 76102 and served via email, facsimile, or by hand to the offices of the Defendants or their attorneys no later than four (4) full business days before the hearing. Any reply papers shall be filed with the Court and served via email, facsimile, or by hand to opposing counsel no later than 24 hours before the hearing.

## IX.

### Retention of Jurisdiction

31.     This Court shall retain jurisdiction over this action for the purpose of implementing and carrying out the terms of all orders and decrees which may be entered herein and to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## X.

### Service

32.     This order and all filings preceding this order shall be immediately served, by hand delivery, email, or fax, on the attorney representing Defendants and Relief Defendant. If not represented by counsel or if the identity of counsel is unknown to the SEC, then these documents shall immediately be served on that Defendant or one of its officers.

IT IS SO ORDERED.

Signed at 4:15 p.m. on this 19th day of September, 2022.

UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 4:22-cv-3359 |
| MAURICIO CHAVEZ, GIRGIO BENVENUTO, and CryptoFX, LLC, | § § § | JURY TRIAL DEMANDED |
| *Defendants*. | § § § | |
| CBT GROUP, LLC, | § § | |
| *Relief Defendant*. | | |

## ORDER ON PRELIMINARY INJUNCTION

Pending before the Court is the United States Securities and Exchange Commission's ("SEC" or "Plaintiff") motion for preliminary injunction (Doc. No. 1-8) against Defendants Mauricio Chavez ("Chavez"), Girgio Benvenuto ("Benvenuto"), and CryptoFX, LLC. ("CryptoFX"). Having considered Plaintiff's motion, the supporting declarations and exhibits, and other evidence and argument presented to the Court, the Court hereby **GRANTS** Plaintiff's motion for preliminary injunction, adopts its Temporary Restraining Order ("TRO") (Doc. No. 2) as the preliminary injunction, and by separate order, appoints a receiver.

### I.      Background

This matter came before the Court upon the *Ex Parte* Motion of Plaintiff for a Preliminary Injunction, TRO, Asset Freeze, Appointment of Receiver, and Other Emergency Relief and Brief in Support. (the "TRO Application"). The Court refused to enjoin the Defendant in an *ex parte*

1

fashion and held a hearing at which all the principals attended. Plaintiff alleges that since early 2020, Defendants have raised at least $12 million from investors through continuous misrepresentations of fact to solicit investments in cryptocurrency and foreign exchange trading. Plaintiff alleges that Defendants have generally solicited and offered to sell securities to mostly Latino-immigrant investors. Instead of using investor funds to conduct crypto asset and foreign exchange trading as promised, Defendants diverted a majority of the proceeds to unrelated purposes, such as real estate development, personal expenditures, and Ponzi payments to investors. Plaintiff alleges that because Defendants have engaged in extensive and are continuing to engage in fraud and misappropriation, emergency relief is necessary to preserve the assets of investors.

This Court initially granted a Temporary Restraining Order ("TRO") that among other rulings ordered (1) assets to be frozen, (2) prohibited the destruction of documents, (3) granted expedited discovery, (4) required sworn accountings, (5) permitted alternative means of service, and (6) set a hearing date on Plaintiff's motion for preliminary injunction. That hearing has now been held.

## II.    Legal Standard

A preliminary injunction is an extraordinary remedy that should only be granted if the movant has clearly carried the burden of persuasion on all four factors. *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003). The movant need not prove its entire case. *Lakedreams v. Taylor*, 832 F.2d 1103, 1109 (5th Cir. 1991). To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood they will prevail on the merits, (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted, (3) their substantial injury outweighs the threatened harm to the party whom they seek to enjoin, and (4)

granting the preliminary injunction will not disserve the public interest. *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018).

### III.    Analysis

A. <u>Plaintiff Has a Substantial Likelihood of Prevailing on the Merits</u>

The Court finds that Plaintiff has made a sufficient and proper showing in support of the relief granted herein, as required by Section 20(b) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77t(b), and Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act,") through evidence establishing a *prima facie* case and reasonable likelihood that Defendants have engaged in, are engaging in, are about to engage in, and unless restrained and enjoined will continue to engage in transactions, acts, practices, and courses of business that constitute violations of Section 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a) and (c) and 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1) ad (2) of the Advisers Act [15 U.S.C. §§ 80b-6(1)-(2)]. The only evidence before the Court is what Plaintiffs have brought forth. Clearly, Plaintiff has shown a likelihood of success. In fact, the evidence before the Court was so clear, Defendants did not make any objections to the conversion of the TRO into a preliminary injunction.

B. <u>There is a Substantial Threat of Irreparable Injury</u>

Based on Plaintiff's pleadings and evidence, good cause exists to find that Defendants used improper and unlawful means to obtain investor funds and that these assets have been and are at risk for being lost, misappropriated, and/or misapplied. Furthermore, there is good cause to find that Defendants, unless enjoined by order of this court, will continue to dissipate, conceal, or transfer assets to the detriment of investors. Without a preliminary injunction, many investors face the risk of losing their investments and more individuals might invest money under the impression

that Defendants' operation is successful—and potential investors are at risk of being misled. Consequently, the element of irreparable injury exists in this case.

C. Investors' Substantial Injury Outweighs the Threatened Harm

With millions of dollars belonging to numerous investors at stake and in danger of being dissipated, it is clear that investors' and potential investors' substantial injury outweighs the threatened harm to Defendants. In addition, this Court's Appointment of a Receiver includes provisions specifically allowing Chavez and Benvenuto reasonable living expenses and attorney's fees, so the granting of the preliminary injunction would cause minimal disruption to these individual Defendants' daily financial needs.

D. Granting the Preliminary Injunction Will Not Disserve the Public Interest

According to Plaintiff's pleadings and evidence, Defendants targeted the Latino community and raised more than $12 million from as many as 5,000 investors. (Doc. Nos. 1, 1-8). In addition, millions of dollars of investor funds were used by Defendants to pay for expenses unrelated to crypto asset and foreign exchange transactions. (*Id.*). Expenditures were made on cars, luxury retail purchases, travel, restaurants, jewelry, and adult entertainment establishments. (*Id.*). Since Defendants did not disclose to investors that there was a continuous and unauthorized use of investor funds, there is a significant public as well as private interest in preventing further dissipation, concealment, or transfer of funds. (*Id.*).

In addition to protecting the interests of investors already affected by Defendants' actions, granting Plaintiff's motion for preliminary injunction is a step toward protecting the public's best interests from further losses. After all, there is a strong public interest against alleged Ponzi schemes. The evidence supports the conclusion that the scheme weaponized the attraction and novelty of crypto assets to solicit investments from unsophisticated investors with little knowledge

4

of crypto asset markets. Furthermore, Defendants offer virtual courses with significant potential reach to a much larger audience beyond the jurisdiction of this Court. In fact, Plaintiff specifically claims in its Complaint that Defendants used the courses as a medium to solicit more investments. (*Id.*). Thus, in the absence of an injunction from this Court, those already affected and many more potential investors beyond the scope of this dispute could be prone to the risk of an ongoing, multi-million dollar securities fraud. An injunction is necessary to protect those members of the public.

## IV. Conclusion

That being the case, the Court hereby converts the previously entered Temporary Restraining Order (TRO) into a preliminary injunction, and, by separate order, appoints a Receiver. This injunction will remain in place until further Order from this Court. The Court further finds that no bond is needed at this time.

Signed at Houston, Texas, this 2ᵗ day of September, 2022.

Andrew S. Hanen
United States District Judge

5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. 4:22-cv-3359 |
| MAURICIO CHAVEZ, GIRGIO BENVENUTO, and CryptoFX, LLC, | § § § | JURY TRIAL DEMANDED |
| *Defendants.* | § § | |
| CBT GROUP, LLC, | § | |
| *Relief Defendant.* | § | |

## <u>ORDER APPOINTING RECEIVER</u>

**WHEREAS** this matter has come before this Court upon motion of the Plaintiff Securities and Exchange Commission ("SEC," "Commission," or "Plaintiff") to appoint a receiver in the above-captioned action; and

**WHEREAS** the Court having held a hearing with all principals present, finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the Defendants and Relief Defendant ("Receivership Assets"); and

**WHEREAS** this Court has subject matter jurisdiction over this action and personal jurisdiction over the Defendants and Relief Defendant, and venue properly lies in this district.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.     This Court hereby takes exclusive jurisdiction and possession of the assets, of

1

whatever kind and wherever situated, of the following Defendants: Mauricio Chavez, Giorgio Benvenuto, CryptoFX, LLC and Relief Defendant CBT Group, LLC (collectively, the "Receivership Defendants").

2. Until further Order of this Court, John Lewis is hereby appointed to serve without bond as receiver (the "Receiver") for the estates of the Receivership Defendants.

## I. <u>Asset Freeze</u>

3. Except as otherwise specified herein, all Receivership Assets are frozen until further order of this Court. Accordingly, all persons and entities with direct or indirect control over any Receivership Assets, other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating, or otherwise disposing of or withdrawing such assets. This freeze shall include, but not be limited to, Receivership Assets that are on deposit with financial institutions such as banks, brokerage firms, and mutual funds. The Court hereby orders that the receiver shall make allowances for reasonable living expenses for the individual Defendants and for reasonable attorneys' fees for the Defendants. He shall also use his best judgment and efforts to preserve and maintain all of the assets and the Court recognizes that in certain circumstances, this may entail the expenditure of certain resources.

## II. <u>General Powers and Duties of Receiver</u>

4. The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers, and general and limited partners of the entity Receivership Defendants under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and

FED. R. CIV. P. 66.

5.      The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents of the Receivership Defendants are hereby dismissed and the powers of any general partners, directors and/or managers are hereby suspended. Such persons and entities shall have no authority with respect to the Receivership Defendants' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume and control the operation of the Receivership Defendants and shall pursue and preserve all of their claims.

6.      No person holding or claiming any position of any sort with any of the Receivership Defendants shall possess any authority to act by or on behalf of any of the Receivership Defendants.

7.      Subject to the specific provisions in Sections III through XIV, below, the Receiver shall have the following general powers and duties:

A.      To use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Defendants, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estates");

B.      To take custody, control and possession of all Receivership Property and records relevant thereto from the Receivership Defendants; to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records relevant thereto;

C.      To manage, control, operate and maintain the Receivership Estates and hold in his possession, custody and control all Receivership Property, pending further Order of this Court;

D.      To use Receivership Property for the benefit of the Receivership Estates, making payments and disbursements and incurring expenses as may be

necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E.      To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees and agents of the Receivership Defendants;

F.      To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

G.      To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

H.      To issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

I.      To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

J.      To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estates; and,

K.      To take such other action as may be approved by this Court.

L.      He shall not have the power to waive the Fifth Amendment rights of the individual Defendants; nor can he compel a waiver of their attorney-client privilege.

### III. Access to Information

8.      The individual Receivership Defendants and the past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants and employees of the entity Receivership Defendants, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Defendants and/or all Receivership Property;

4

such information shall include but not be limited to books, records, documents, accounts and all other instruments and papers.

9.      Within 20 days of the entry of this Order, the Receivership Defendants shall file with the Court and serve upon the Receiver and the Commission a sworn statement, listing: (a) the identity, location and estimated value of all Receivership Property; (b) all employees (and job titles thereof), other personnel, attorneys, accountants and any other agents or contractors of the Receivership Defendants; and, (c) the names, addresses and amounts of claims of all known creditors of the Receivership Defendants.

10.      Within 30 days of the entry of this Order, the Receivership Defendants shall file with the Court and serve upon the Receiver and the Commission a sworn statement and accounting, with complete documentation, covering the period from January 1, 2020 to the present:

<blockquote>

A.      Of all Receivership Property, wherever located, held by or in the name of the Receivership Defendants, or in which any of them, directly or indirectly, has or had any beneficial interest, or over which any of them maintained or maintains and/or exercised or exercises control, including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry and other assets, stating the location of each; and (b) any and all accounts, including all funds held in such accounts, with any bank, brokerage or other financial institution held by, in the name of, or for the benefit of any of them, directly or indirectly, or over which any of them maintained or maintains and/or exercised or exercises any direct or indirect control, or in which any of them had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage or other financial institution;

B.      Identifying every account at every bank, brokerage or other financial institution: (a) over which Receivership Defendants have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Defendants;

C.      Identifying all credit, bank, charge, debit or other deferred payment card issued to or used by each Receivership Defendant, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement,

</blockquote>

and all statements for the last twelve months;

D.  Of all assets received by any of them from any person or entity, including the value, location, and disposition of any assets so received;

E.  Of all funds received by the Receivership Defendants, and each of them, in any way related, directly or indirectly, to the conduct alleged in the Commission's Complaint. The submission must clearly identify, among other things, all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

G.  Of all expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity; and

H.  Of all transfers of assets made by any of them.

11.  Within 20 days of the entry of this Order, the Receivership Defendants shall provide to the Receiver and the Commission copies of the Receivership Defendants' federal income tax returns for the years 2020 - 2021 with all relevant and necessary underlying documentation.

12.  The individual Receivership Defendants and the entity Receivership Defendants' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Defendants, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Defendants. In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make its discovery requests in accordance with the Federal Rules of Civil Procedure.

13.  The Receivership Defendants are required to assist the Receiver in fulfilling his duties and obligations. As such, they must respond promptly and truthfully to all requests for

information and documents from the Receiver.

## IV. <u>Access to Books, Records, and Accounts</u>

14.     The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments relating to the Receivership Defendants. All persons and entities having control, custody or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.

15.     The Receivership Defendants, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Defendants, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having possession of the property, business, books, records, accounts, or assets of the Receivership Defendants are hereby directed to deliver the same to the Receiver, his agents and/or employees.

16.     All banks, brokerage firms, financial institutions, crypto asset trading platforms, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, and of the Receivership Defendants that receive actual notice of this Order by personal service, facsimile transmission or otherwise shall:

    A.     Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Defendants except upon instructions from the Receiver;

    B.     Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

    C.     Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the Commission a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business

7

on the date of receipt of the notice; and,

D.    Cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

## V. Access to Real and Personal Property

17.    The Receiver is authorized to take immediate possession of all personal property of the Receivership Defendants, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment.

18.    The Receiver is authorized to take immediate possession of and enter all real property of the Receivership Defendants, wherever located, including but not limited to all ownership and leasehold interests and fixtures, and all residences, dwellings, offices, warehouses, buildings, or other structures whatsoever owned, leased, controlled, or occupied by the Receivership Defendants. Upon receiving actual notice of this Order by personal service, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing or erasing anything on such premises.

19.    In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receiver shall have exclusive control of the keys. The Receivership Defendants, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have

duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

20.     The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Defendants, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

21.     Upon the request of the Receiver, the United States Marshal Service in any judicial district is hereby ordered to assist the Receiver in carrying out duties to take possession, custody and control of, or identify the location of, any assets, records or other materials belonging to the Receivership Estate.

## VI. Notice to Third Parties

22.     The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers and general and limited partners of the Receivership Defendants, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

23.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

24.     In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the

Receivership Estates. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

25.     The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Receivership Defendants (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Defendants. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Defendants shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any individual Receivership Defendants, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented or used by the Receivership Defendants. The Receivership Defendants shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

26.     Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to the Receivership Defendants shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

## VII. **Injunction against Interference with Receiver**

27.     In addition to the terms and conditions found in this Court's Temporary Restraining Order that the Court converted today into a temporary injunction, the Receivership Defendants and all persons receiving notice of this Order by personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

A.      Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

B.      Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

C.      Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property; or,

D.      Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates.

28.     The Receivership Defendants shall cooperate with and assist the Receiver in the performance of his duties.

29.     The Receiver shall promptly notify the Court and SEC counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## VIII. **Stay of Litigation**

30.     As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further Order of this Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Defendants, including subsidiaries and partnerships; or, (d) any of the Receivership Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

31.     The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

32.     All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.    Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Defendants against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

## IX. **Managing Assets**

33.     For each of the Receivership Estates, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

34.     The Receiver's deposit account shall be entitled "Receiver's Account, Estate of

Mauricio Chavez, Giorgio Benvenuto, CryptoFX, LLC and CBT Group, LLC" together with the name of the action.

35.    The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

36.    Subject to Paragraph 37, immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

37.    Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates.

38.    The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estates, including making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

39.    The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable.

## X. <u>Investigate and Prosecute Claims</u>

40.     Subject to the requirement, in Section VII above, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Property.

41.     Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered and directed to investigate the manner in which the financial and business affairs of the Receivership Defendants were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order.  Where appropriate, the Receiver should provide prior notice to Counsel for the Commission before commencing investigations and/or actions.

42.     The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all entity Receivership Defendants.

43.     The receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

## XII. **Bankruptcy Filing**

44.     The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Defendants. If a Receivership Defendant is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. Pursuant to Paragraph 4 above, the Receiver is vested with management authority for all entity Receivership Defendants and may therefore file and manage a Chapter 11 petition.

45.     The provisions of Section VIII above bar any person or entity, other than the Receiver, from placing any of the Receivership Defendants in bankruptcy proceedings.

## XII. **Liability of Receiver**

46.     Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

47.     The Receiver and his agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel.

48.     This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

49.     In the event the Receiver decides to resign, the Receiver shall first give written notice to the Commission's counsel of record and the Court of its intention, and the resignation

shall not be effective until the Court appoints a successor.  The Receiver shall then follow such instructions as the Court may provide.

## XIII. Recommendations and Reports

50.  The Receiver is authorized, empowered and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property (the "Liquidation Plan").

51.  Within 60 days of the entry date of this Order, the Receiver shall file a status report with the Court.  The status report will include a summary of receivership activities to date.  It will also include a proposed plan for administering the receivership going forward, as well as a proposed deadline by which the Receiver will submit the Liquidation Plan.  The Receiver's fees— including all fees and costs for the Receiver and others retained to assist in the administration and liquidation of the Receivership estate—are capped at $120,000 during the initial 60-day period.

52.  Within 30 days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

53.  The Quarterly Status Report shall contain the following:

A.  A summary of the operations of the Receiver;

B.  The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C.  A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly

period covered and a second column for the entire duration of the receivership;

D.  A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.  A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F.  A list of all known creditors with their addresses and the amounts of their claims;

G.  The status of Creditor Claims Proceedings, after such proceedings have been commenced; and

H.  The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

54.  On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

## XIV. Fees, Expenses and Accountings

55.  Subject to Paragraphs 56-62 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

56.  Subject to Paragraph 57 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any Retained Personnel

17

without first obtaining an Order of the Court authorizing such engagement.

57.      Subject to the limitations in Paragraph 56 above, the Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver.  Such compensation shall require the prior approval of the Court.

58.      Within 45 days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications").  At least 30 days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

59.      All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership.  At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

60.      Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court.  The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

61.      Each Quarterly Fee Application shall:

A.      Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

B.      Contain representations (in addition to the Certification required by the

18

Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

62.     At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by SEC staff, as well as the Receiver's final application for compensation and expense reimbursement.

**IT IS SO ORDERED.**

Signed at Houston, Texas, this 29th day of September, 2022.

Andrew S. Hanen
United States District Judge



January 5, 2023

Sonila Themeli
*Senior Counsel*

JPMorgan Chase Tower
600 Travis St., Suite 3400
Houston, Texas 77002
**t** 713.227.8008
**d** 713.546.5656
**f** 713.227.9508
sthemeli@shb.com

<u>**Via Email**</u>

Vantage Post Oak Apartments, LLC
c/o Aimal Wardak
The Cweren Law Firm, PLLC
3311 Richmond Ave., Suite 305
Houston, TX 77098
Email: awardak@cwerenlaw.com

RE:     ***Securities and Exchange Commission v. Mauricio Chavez, Giorgio Benvenuto, CryptoFX, LLC, and CBT Group, LLC,*** in the United States District Court for the Southern District of Texas, Houston Division, Civil Action No. 4:22-CV-03359

Dear Aimal,

As you know, this firm represents John Lewis, Jr., the Receiver appointed by the Court in the above referenced matter. *See* Order Appointing Receiver ("Receivership Order"), which was previously served with the subpoena to Post Oak Advantage/Aspire Post Oak and is enclosed herein. Enclosed herein are also the Court's Temporary Restraining Order, Order Freezing Assets and Granting Expedited Discovery, and Order on Permanent Injunction entered in this case.

Mr. Lewis has been appointed Receiver for Mauricio Chavez and Giorgio Benvenuto, <u>individually</u>, and for CryptoFX, LLC and CBT Group, LLC (collectively "Defendants"). *Id.* Pursuant to the Receivership Order, the "Receivership Estate" includes all of the Defendants' assets, "of whatever kind and wherever situated." *See* Receivership Order ¶ 1. Pursuant to the Court's Temporary Restraining Order and Receivership Order, among other things, all assets of the Receivership Estate are frozen, with the Receiver being the only party authorized to administer those assets.

Moreover, the Receivership Order grants the Receiver various powers, including, but not limited to take control of any assets in the possession of or in the direct and/or indirect control of the Receivership Estate. *See* Receivership Order.

ATLANTA | BOSTON | CHICAGO | DENVER | HARTFORD | HOUSTON | KANSAS CITY | LONDON | LOS ANGELES | MIAMI | NEW YORK |
ORANGE COUNTY | PHILADELPHIA | SAN FRANCISCO | SEATTLE | ST. LOUIS | TAMPA | WASHINGTON, D.C.

January 5, 2023
Page 2

We understand from your client's discovery responses that Defendant Mauricio Chavez rents an apartment and storage unit at Vantage Post Oak at 1616 Post Oak Blvd. Houston, TX 77056.  Pursuant to the Receivership Order and the Order for Expedited Discovery in place in this case, the Receiver requests access to Mr. Chavez's apartment (Apt. # 3904) and storage area (storage unit # 27), as well as any garage and/or parking area under the control and/or use of Mr. Chavez.

In addition, the Receiver requests electronic access to any electronic accounts maintained by you on behalf of or in relation to Mr. Chavez.

Further, any funds or other assets received by Vantage Post Oak after December 14, 2022—the date Vantage Post Oak received notice of the Receivership Order and the asset freeze—from any of the Receivership Defendants, on behalf of the Defendants, or for the benefit of any of the Defendants, is part of and belongs in the Receivership Estate.

If you have questions or believe that you have information that would facilitate the Receiver's performance of his duties under the Receivership Order, please contact me at the number or email indicated above.

Thank you for your assistance and cooperation in this matter.  Please note that the Receivership Order may require action in addition to that specified in this letter.

Sincerely,

Sonila Themeli
Counsel for Receiver, John Lewis, Jr.