IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | |
| MAURICIO CHAVEZ, GIORGIO BENVENUTO and CryptoFX, LLC, | § § § | CIVIL ACTION NO. 4:22-CV-03359 |
| | § § | JUDGE ANDREW S. HANEN |
| *Defendants.* | § § | |
| CBT Group, LLC, | § § | |
| *Relief Defendant.* | § § | |

## NOTICE OF FILING OF THE RECEIVER'S LIQUIDATION PLAN

John Lewis, Jr., the Court-appointed Receiver over the assets of the above-captioned defendants and relief defendant (the "Receiver" and "Receivership Estate"), submits this Liquidation Plan as required by paragraph 51 of the Order Appointing Receiver, dated September 29, 2022 (Doc. No. 11) (the "Receivership Order").

1.  On September 29, 2022, upon motion by the Securities and Exchange Commission ("SEC"), this Court entered its Receivership Order for all four Defendants—Maurizio Chavez ("Chavez") and Giorgio Benvenuto ("Benvenuto"), individually, and the two corporate Defendants CryptoFX LLC ("CFX") and CBT Group, LLC (CBT") (collectively "Receivership Estate") (Doc. No. 11). In the Receivership Order, among other things, the Court took exclusive jurisdiction and possession of all of the assets of the Receivership Estate of whatever kind and wherever situated. *Id.* at ¶ 1.

**THE RECEIVER'S LIQUIDATION PLAN**

2. The Receivership Order mandates that "all Receivership Assets are frozen" and "all persons and entities with direct or indirect control over any Receivership Assets, other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling pledging, assigning, liquidating, or otherwise disposing of or withdrawing such assets." *Id*. at ¶ 3.

3. Among other things, the Receivership Order authorizes and directs the Receiver to:

> i. take custody, control, and possession of all records, assets, and other property of the Receivership Estate;
>
> ii. administer the assets of the Receivership Estate, including the authority to liquidate assets;
>
> iii. perform an accounting of the receipt, disposition, and use of the subject investment proceeds; and
>
> iv. investigate any matters that the Receiver deems appropriate in connection with the Receivership Estate.

*Id*. at ¶¶ 14 – 20, 36 – 38, 40 - 41.

4. On September 29, 2022, immediately following the hearing resulting in the Receiver's appointment, the Receiver, SEC attorneys and professional staff, with the assistance of U.S. Marshall Service, arrived at the corporate offices of CFX at 1124 Blalock, Rd., Houston, Texas ("Blalock"), where the Receiver began to effectuate his mandate to seize and secure the Receivership assets located therein, including cash, electronic devices, and other personal property.

5. The Receiver has also identified real estate that belongs in the Receivership Estate. These include three lots in Waller County, Texas and five residential properties in Fort Bend County, TX. The Receiver filed his First Interim Report detailing these efforts in

**THE RECEIVER'S LIQUIDATION PLAN**

accordance with Receivership Order ¶ 51. (Doc. No. 33). Additional efforts by the Receiver to locate and secure Receivership assets will be included in the Receiver's First Quarterly Report, which will be filed by January 31, 2023. *See* Receivership Order ¶¶ 52 ad 53.

6. For purposes of this Liquidation Plan, the Receiver has already determined the Receivership Estate contains cash, crypto currency, and valuable non-cash assets, including real estate, luxury automobiles, and personal property. The Receiver is still evaluating additional possible Receivership assets, including assets currently held by third parties as well as improper payments made by the Defendants to third parties.

7. As set forth below, this Liquidation Plan explains the general procedures pursuant to which the Receiver has employed and will employ to sell, transfer, or otherwise dispose of the assets in the Receivership Estate. At the appropriate time, the Receiver will also seek Court approval of his proposed disposition of specific assets, as required by this Liquidation Plan, the Receivership Order, and pertinent law.

### I.   CASH AND CRYPTO CURRENCY ASSETS

8. Soon after his appointment, the Receiver established contact with Coinbase, Blockchain, and depository institutions regarding Defendants' accounts frozen by SEC to advise of the Receiver's appointment and began the process of collecting relevant records and sweeping those accounts, transferring the balance to trust accounts opened by the Receiver under the name of each Receivership Defendant. *See* Receivership Order ¶ 33; *see also* Receiver's First Interim Report (Doc. No. 33).

9. Further, during the initial sweep of the Blalock office, the Receiver and his team seized $53,345 in cash. An additional $392,765 was seized after the opening of the two safes at Blalock. These amounts have been deposited in the Receivership accounts.

3

**THE RECEIVER'S LIQUIDATION PLAN**

10. Additionally, during discovery, the Receiver identified another cryptocurrency account used by a former CFX employee to make payments to CFX investors. This account was also seized and liquidated by the Receiver.

## II. SALES OF REAL PROPERTY PURSUANT TO 28 U.S.C. § 2001

11. As noted above, the Receivership Estate contains several parcels of real property, which include three undeveloped lots in Waller County, TX and five single-family residences in Fort Bend County, TX. The Receiver has filed lis pendens notices on all properties.

12. Paragraph 37 of the Receivership Order requires the Receiver to seek the Court's approval of any sale of real property: "Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates." *Id*. at ¶ 37.

13. Public and private sales of real property in a receivership are governed by 28 U.S.C. § 2001 ("Section 2001"). The procedures applicable to public sales – *i.e.*, auctions – are set forth in Section 2001(a):

> Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs. Such sale shall be upon such terms and conditions as the court directs.
>
> Property in the possession of a receiver or receivers appointed by one or more district courts shall be sold at public sale in the district wherein any such receiver was first appointed, at the courthouse of the county, parish, or city situated therein in which the greater part of the property in such district is located, or on the premises or some parcel thereof located in such county, parish, or city, as such court directs, unless the court orders the sale of the property or one or more parcels thereof in one or more ancillary districts.

4

**THE RECEIVER'S LIQUIDATION PLAN**

28 U.S.C. § 2001(a). Public sales also generally require compliance with the statutory notice requirements set forth in 28 U.S.C. § 2002:

> A public sale of realty or interest therein under any order, judgment or decree of any court of the United States shall not be made without notice published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district of the United States wherein the realty is situated. If such realty is situated in more than one county, state, district or circuit, such notice shall be published in one or more of the counties, states, or districts wherein it is situated, as the court directs. The notice shall be substantially in such form and contain such description of the property by reference or otherwise as the court approves. The court may direct that the publication be made in other newspapers.

28 U.S.C. § 2002.

14. The procedures applicable to private sales of receivership real estate are set forth in Section 2001(b):

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale.

28 U.S.C. § 2001(b).

15. For purposes of this Liquidation Plan, the Receiver intends to comply with the statutory provisions, but under pertinent law, the Court has the authority to modify or waive the appraisal and publication requirements in Section 2001(b) should the circumstances warrant. If

**THE RECEIVER'S LIQUIDATION PLAN**

the Receiver deems such relief necessary with respect to a particular asset, he will seek the Court's authorization in connection with his motion to approve the sale of that asset.

16.     Paragraph 36 of the Order Appointing Receiver provides that, "the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estate, either at public or private sale on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property." Receivership Order, at ¶ 36.

17.     Pursuant to this authorization, the Receiver has engaged Appraisal MC for the appraisal of the three Waller County properties. Additionally, the Receiver has engaged Mark Dimas Properties to develop a marketing plan and offer for sale the Waller County properties, two of which have already been listed. *See* Receiver's website, https://cryptofxreceiver.com/.

18.     In addition, the Receiver will take the following steps in connection with the sale of any real property:

- Determine whether a public or private sale is most appropriate, given the circumstances of the property and the pertinent real estate market;

- Review and negotiate offers to effectuate the sale in a commercially reasonable manner and in the best interests of the Receivership Estate;

- Enter into a purchase agreement with any successful buyer;

- Determine whether the circumstances warrant modification or waiver of any statutory provisions, and if so, seek such relief from the Court;

- Move the Court to approve the purchase agreement and proposed sale; and

- After obtaining the Court's approval, close the transaction and transfer the net sale proceeds to the appropriate bank account.

19. In the Receiver's experience, private sales typically generate a greater benefit to the Receivership Estate than public sales, but as noted above, the Receiver will consider both options in light of the unique circumstances of each property. If a property is encumbered by a mortgage, lien, or other impediment to sale, the Receiver might ask the Court to transfer the encumbrance to the proceeds of the sale and to resolve the encumbrance in connection with any Court-approved claims process or other litigation. The Court has that authority under relevant legal and equitable principles, but any determination regarding the necessity of invoking that authority would be premature.

### III. SALES OF PERSONAL PROPERTY PURSUANT TO 28 U.S.C. § 2004

20. As noted above, the Receivership Estate contains automobiles, personal property, electronic devices, and might also contain jewelry, and other valuables. The Receivership Order authorizes the Receiver to sell such personal property (as opposed to real property) without obtaining leave of Court:

> The Receiver may without further order for this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership property. *Id*. at ¶ 35.

Receivership Order ¶ 35.

21. As a matter of prudence and transparency, however, the Receiver will only exercise that authority in connection with items valued individually at $10,000 or less. For items valued above that amount – *e.g.*, automobiles – the Receiver intends to seek Court approval pursuant to 28 U.S.C. § 2004 ("Section 2004"), which provides: "Any personalty sold under any

7

**THE RECEIVER'S LIQUIDATION PLAN**

order or decree of any court of the United States shall be sold in accordance with section 2001 of this title, unless the court orders otherwise." 28 U.S.C. § 2004.

22. In the Receiver's experience, personal property tends to fall into three general categories. The first category relates to specialized or luxury items like cars, certain jewelry, original artwork, or antiques and collectibles. The Receiver has typically used brokers or auction houses to sell such items. The second category relates to items that are valuable but perhaps not unique and are thus appropriate for sale using eBay or local consignment shops. The third category relates to items like office furniture, phones, and old computers and other electronics that typically have little resale value. The methods the Receiver uses to liquidate such items vary depending on their nature and quantity but could include consignment, bulk sale, bulk auction, or even donation.

23. Section 2004 requires the Receiver to follow the procedures set forth in Section 2001 "unless the Court orders otherwise." 28 U.S.C. § 2004. The Court has already "ordered otherwise" in paragraph 35 of the Receivership Order, but as explained above, the Receiver only intends to invoke that authority in connection with items valued individually at less than $10,000. The Receiver nevertheless reserves the right to move the Court to modify or waive the provisions of Section 2001 should circumstances warrant. For example, the marginal cost/benefit of obtaining three appraisals or publishing a notice of sale in multiple papers for multiple weeks might not warrant strict compliance with the statute. The Receiver will address these issues on an individualized basis as they arise.

24. In accordance with the Receivership Order, paragraph 35, the Receiver has retained car broker, Michael Poutous Car Sales for the sale of one of the automobiles.

8

**THE RECEIVER'S LIQUIDATION PLAN**

Additionally, the receiver has retained Webster Auction Palace for the appraisal and sale of other personal property.

25. Further, certain assets were used to offset the amount due to the Blalock office landlord under the lease.[1]

## IV. DONATION OR ABANDONMENT OF ASSETS

The Receiver is mindful of the directives in the Receivership Orders and elsewhere to manage the Receivership Estate in an efficient and cost-effective matter. In some cases, assets in the Receivership Estate could have little to no commercial value, or the cost of maintaining and securing the assets could exceed any amounts reasonably recoverable from the sale of the assets. In such cases, the Receiver will likely abandon the assets or donate them to an appropriate charity, pursuant to the authority set forth in paragraph 35 of the Receivership Order. The Receiver might also seek the Court's approval to abandon or donate such assets if the circumstances warrant.

## CONCLUSION

This Liquidation Plan describes the general procedures the Receiver has employed to-date and intends to employ to sell or otherwise dispose of the assets in the Receivership Estate. More detail on those assets was provided in the Receiver's First Interim Report (Doc. No. 33) and additional detail will be provided in the Receiver's first and subsequent quarterly reports, as well as in subsequent motions seeking the approval of specific transactions. The Receiver encourages individuals interested in purchasing any such assets to monitor https://cryptofxreceiver.com/.

---

[1] A list of these items will be included with the Receiver's First Quarterly Report to be filed by January 31, 2023.

**THE RECEIVER'S LIQUIDATION PLAN**

Dated:  January 20, 2023

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ Sonila Themeli*
    Sonila Themeli
    Texas Bar No. 24073588
    S.D. Tex. Bar No. 2828237
    600 Travis Street, Suite 3400
    Houston, TX 77002
    Telephone:  713.227.8008
    Facsimile:   713.227.9508
    sthemeli@shb.com

    Caroline M. Gieser
    (admitted *pro hac vice*)
    1230 Peachtree Street, NE, Suite 1200
    Atlanta, GA  30309
    Telephone:  470.867.6000
    mcgieser@shb.com

    *Counsel for Court-Appointed Receiver John Lewis, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 20th day of January, 2023, the above and foregoing document was filed electronically through the CM/ECF system, which sent notification of such filing to all counsel of record:

Matthew J. Gulde
UNITED STATES SECURITIES
AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX  76102
Telephone:   817.978.1410
Facsimile:   817.978.4927
guldem@sec.gov

*Attorney for Plaintiff*

Paul D. Flack
PRATT & FLACK, LLP
4306 Yoakum Blvd., Suite 500
Houston, TX  77006
Telephone:     713.705.3087
pflack@prattflack.com

*Attorney for Defendant,*
*Mauricio Chavez*

Dan L. Cogdell
Jones, Walker L.L.P.
811 Main Street, Suite 2900
Houston, TX  77002
Telephone:  713.437.1869
Facsimile:   713.437.1810
dcogdell@joneswalker.com

*Attorney for Defendant,*
*Giorgio Benvenuto*

*/s/ Sonila Themeli*
Sonila Themeli