IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | |
| MAURICIO CHAVEZ, GIORGIO BENVENUTO and CryptoFX, LLC, | § § § | CIVIL ACTION NO. 4:22-CV-03359 |
| | § | JUDGE ANDREW S. HANEN |
| *Defendants.* | § § | |
| CBT Group, LLC, | § § | |
| *Relief Defendant.* | § § | |

**REPLY IN SUPPORT OF RECEIVER'S MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT MAURICIO CHAVEZ SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR FAILING TO COMPLY WITH THIS COURT'S <u>ORDER APPOINTING RECEIVER</u>**

John Lewis, Jr., the Court-appointed Receiver in the above-referenced action, files this Reply in Support of his Motion for an Order to Show Cause ("Motion") why Defendant Mauricio Chavez should not be held in civil contempt for failing to comply with this Court's September 29, 2022 Order Appointing Receiver ("Receivership Order") Doc. No. 39.

## INTRODUCTION

While Chavez's Response to the Receiver's Motion ("Response" Doc. No. 45) attempts to portray him as a hardworking businessman, who unwittingly became involved in something bigger than him, while also going through some personal issues, the business records of CryptoFX LLC ("CryptoFX") and witness testimony show a different picture.

As is relevant to this Motion, CryptoFX contemporaneous business records establish that

1

from September 20, 2022, after the entry of the asset freeze, and September 29, 2022, when the Receivership Order was entered, at least $7,106,867 (primarily in cash) were collected by Chavez and CryptoFX. *See* Motion at 6, **Exhibit E** Hays Affidavit (Doc. No. 39-5 at 3).[1] This money was removed from the CryptoFX Blalock offices before the Receiver took over and swept the premises.[2] Pictures from the security system at Blalock show Chavez counting cash the night before the Receiver was appointed.

The record is also uncontroverted that Chavez violated the Receivership Order and the asset freeze by collecting funds and making Ponzi payments after September 29, 2022. Similarly, it is undisputed that Chavez and his associates continued to misinform investors about the case, promise payments, and run other schemes similar to CryptoFX. Further, Chavez has failed to comply with this Court's Receivership Order by refusing to turn over Receivership assets, including CryptoFX records, his personal computer and phone, his cars, as well as provide documents and information about his other assets.[3]

---

[1] Contrary to Chavez's statement that "CryptoFX's operation had no real management structure and almost no systems or formal procedures" (*see* Response at 6), the company had in place several formal procedures, including a well-designed two-tiered referral scheme, which included payments of commission of first and second level sponsors and bonuses for sponsors who introduced more people to the company. *See* Response at 8. Importantly, the company had an accounting department that ensured that all investments (the majority of which were made in cash) were accurately recorded daily. Many of the sponsors (or leaders as they were referred to at CryptoFX) were given excel spreadsheets by Chavez and Norma Chavez (head of the accounting team) to record all payments received as well as payments made to investors in the form of returns or commissions. Chavez still has access to the Google drive that contains these spreadsheets. *See* 2021 Email correspondence from Chavez to G. Castaneda sending from his CryptoFX Google drive an Excel spreadsheet she used to record CFX contracts and related payments, attached herein as **Exhibit J**. In addition, contracts and payments were recorded into Salesforce, a customer management software. The Receiver is in the process of accessing and retrieving this data.

[2] The Receiver took possession of $53,345.56 in cash found in small denominations in various locations in the Blalock office during the initial sweep and $392,765.37 from the two safes.

[3] Chavez's complaint that these violations of the Order were in part because of his "inability to retain counsel" (Response at 1, 11-12) is another red herring—Chavez was unrepresented for less than two weeks in November 2022. The Court granted Mr. Sklar's Motion to Withdraw on November 14, 2022 (Doc. No. 30), and Mr. Flack, Chavez's current counsel, worked on this case in November 2022 and entered an appearance on December 2, 2022 (Doc. No. 34).

**ARGUMENT**

**A. Chavez's Violations of the Receivership Order**

It is undisputed that Chavez has failed to comply with several provisions of the Receivership Order.

    a. <u>Ongoing CryptoFX-related activities after the entry of the Receivership Order</u>.

Eye witness testimony and company documents show payments collected and made well after the September 20, 2022 asset freeze and entry of the Receivership Order on September 29, 2022. *See* Motion at 6 - 8. Additionally, Chavez and persons associated with him,[4] including Juan Puac, continued to operate schemes similar to CryptoFX and promising payments if people joined the new "academy." One of these schemes is called 247 Academy. *See* 247 Academy WhatsApp group created by Mauricio Chavez, attached herein as **Exhibit K;** *see also* Messages by Chavez in the 247 Academy WhatsApp group, attached as **Exhibit L**.[5] In his response, Chavez states that the website for this scheme is now disabled. *See* Response at 13. Yet, this website[6] was active at least until January 3, 2023. *See* Print of La Academia 247 webpage dated Jan. 3, 2023, attached as **Exhibit M**.

    b. <u>Cash</u>

CryptoFX records show that from September 20, 2022 to September 28, 2022, CryptoFX received a total of $7,106,867.00. *Id.* It is unclear at this point how much money was collected

---

[4]  Witnesses have informed the Receiver's team that Juan Puac, previously involved with CryptoFX, is also involved with this scheme.

[5]  In these messages, Chavez promises investors and sponsors that "they can withdraw referral bonuses every Wednesday and will receive them in bitcoin on Fridays." ("BONOS DE REFERIDO LOS PUEDES RETIRAR TODOS LOS MIÉRCOLES Y LOS RECIVES EN BITCOIN LOS VIERNES").

[6]  https://laacademia247.com/mioficina/aut/register?ref=334

by Chavez and CryptoFX after September 28, 2022.[7] *See* Motion at 6, **Exhibit E**. Hays Declaration and exhibits therein. In his Response, Chavez states he does not have any cash. Response at 19. Yet, he fails to provide any information or documents about where these funds are or how and/or whether they were spent.

    c. <u>Cars and other Assets</u>

Despite repeated demands beginning immediately after entry of the Receivership Order, as of this date, Chavez has turned over only one of his five cars. *See* Motion at 5. In his Response, he asks the Receiver to "coordinate" taking possession of these vehicles with counsel for his wife, A. Vargas, and reported "girlfriend," Janette Gonzalez. *See* Resp. at 15-16. Chavez and his wife have in their possession four cars: a Volkswagen Atlas, a Volkswagen Tiguan, a Mercedes, and a BMW, all purchased by Chavez (Chavez spent $114,000 to purchase the Mercedes). *See* **Exhibit I**. The Receiver has demanded the turnover of the Mercedes from Ms. Vargas, but she has failed and refused, and continues to fail and refuse to surrender the car. Chavez also states that Ms. Gonzalez has possession of a Lexus, which Chavez has attempted to transfer to JM Monarchy, a previously undisclosed LLC controlled by him and Gonzalez. The Receiver has demanded turnover of the Lexus from Ms. Gonzalez, but she has refused to turn over the car claiming that JM Monarchy, an entity owned in part by Chavez, purchased the car from Chavez.

The Receiver understands from Chavez's counsel that Chavez pays $674 a month for the BMW and an additional $337 a month in insurance premiums. As of the filing of this brief, Chavez has not provided any documents related to this car (other than an insurance card), nor has he made the BMW available for inspection by the Receiver team, despite several requests for the same.

---

[7] The Receiver continues to interview CryptoFX sales agents. On December 28, 2022, during the interview, one of them informed the undersigned counsel that in October 2022, after the Receiver's appointment, she sent Chavez $19,995 in cash. Chavez sent one of his armed security guards, identified as Adam, to pick up the money. *See* Receipt for $19,995, attached as **Exhibit N**.

4

Nor has Chavez provided the requested documents or information about his other businesses and the assets they own: Maurizzio Group, JM Monarchy, Luxury Real Estate, Hair News Color N Cuts, or any others. The Receiver has gathered the available public filings for these companies, and Gonzalez provided some documents about JM Monarchy after the filing of this Motion. However, Chavez has yet to provide accounting, bank, employee (including required tax forms 1099, W-2, insurance proof protecting receivership assets from damage or loss, and other records and information about the assets these businesses own or the liabilities they face. Chavez claims that he cannot provide *any* information or documents about his assets "since his records were all seized." Response at 14. The Receiver has not seized any records related to these non-party businesses.

Chavez's failure to cooperate with the Receiver in providing the requested information and documents and turning over Receivership assets are in violation of the Order and have caused undue delay and expense on the Receivership.

**B.   Receiver's Requests for Turn Over of Business Records, Computer and Cellphone**

The Receiver has requested all CryptoFX and CBT records still in Chavez's possession as well as his computer and cell phone. *See* Motion at 5. Chavez refuses to produce such records and the devices arguing that the computer and cellphone were purchased with his own and not CryptoFX funds; they contain privileged and "personal and intimate information;" and that this production is protected by his Fifth Amendment privilege. *See* Response at 19.

First, it is undisputed that Chavez has used this computer and cell phone for CryptoFX- and CBT-related activities and that they contain company records belonging to the Receiver. *See* Motion at 5; *see also* **Exhibit J**. (Chavez's CryptoFX Google drive). Second, Chavez has made no showing that these devices were not purchased with CryptoFX funds, that he had a source of

5

income outside CryptoFX at any point during the months leading up to the filing of this matter. Regardless, both devices are Receivership assets pursuant to the Receivership Order, which applies to Chavez individually.

1. Attorney-client privilege

The Receivership Order specifically authorizes and orders the Receiver to take possession, custody and control over all CryptoFX and CBT records and to preserve the same. These records include paper and electronic files, including email communications, banking and accounting records. Further, the Receiver is the holder of the attorney-client privilege with respect to CryptoFX and CBT, the two entities subject to the receivership, and he is the only party authorized to act on behalf of these two entities. *See* Receivership Order at ¶¶ 4-6; *S.E.C. v. Ryan*, 747 F. Supp. 2d 355, 368 (N.D.N.Y. 2010); *S.E.C. v. Bravata*, No. 09-12950, 2011 WL 606745, at *2 (E.D. Mich. Feb. 11, 2011). As the holder of the privilege, the Receiver also has the power to waive the privilege for CryptoFX and CBT, and hereby provides notice that the Receiver waives that privilege. *Ryan*, 747 F. Supp. 2d at 368; *S.E.C. v. Elfindepan, S.A.*, 169 F. Supp. 2d 420, 431 (M.D.N.C. 2001) (receiver can waive attorney-client privilege on behalf of companies subject to receivership). Thus, Chavez cannot refuse to turn over CryptoFX and CBT records based on a claim of attorney-client privilege. To the extent that Chavez claims that legitimately privileged material is comingled with business records belonging to the Receiver, preparation of a privilege log is his remedy. He may not, however, assert a blank claim of privilege as attempted here. Similarly, the "personal and intimate" material on Chavez's computer and phone, to the extent that such actually exists, can also be redacted.[8]

2. The Fifth Amendment Does Not Apply to the Receiver's Requests for Turnover of Business Records, Computer and Cellphone.

---

[8] The Receiver is also agreeable to engaging a third party to handle the review and redaction of the privileged and/or personal documents.

Additionally, Chavez objects to turning over not only business records in his possession and/or control, but he also somehow asserts a Fifth Amendment privilege over a computer and cell phone, purchased with Receivership money, refusing to turnover, make available for inspection, or any effort whatsoever to account for information contained therein. The fundamental flaw in Chavez's argument is that he has not made any required showing that turning over the electronic devices is testimonial in nature and, therefore, subject to the protections of the Fifth Amendment. The Fifth Amendment provides that "[n]o person shall be compelled in any criminal case to be a witness against himself." U.S. CONST. AMEND. V. The Fifth Amendment's protections therefore arise only "when the accused is compelled to make a Testimonial Communication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408 (1976); *see United States v. Hubbell*, 530 U.S. 27, 34 (2000) ("The word 'witness' in the constitutional text limits the relevant category of compelled incriminating communications to those that are 'testimonial' in character"); *United States v. Cheng*, No. 4:20-CR-455, 2022 WL 112025, at *6 (S.D. Tex. Jan. 12, 2022).

The Supreme Court has held that "the Fifth Amendment privilege against self-incrimination is not violated when the government compels a person to turn over incriminating evidence, unless the act of production is both 'testimonial' and 'incriminating.'" *Cheng*, 2022 WL 112025, at *6 (quoting *Fisher*, 425 U.S. at 409-10).

It is well-established that the Fifth Amendment does not apply to the contents of voluntarily prepared documents. *Hubbell*, 530 U.S. at 35-36, 120 S. Ct. 2037. The Supreme Court has consistently held that when a person has voluntarily created a document, that person may be compelled to produce the document even though it may contain incriminating information. *See, e.g.*, *United States v. Doe*, 465 U.S. 605, 612 n. 10 (1984). In *Hubbell*, the Supreme Court reaffirmed "the settled proposition that a person may be required to produce specific documents

7

even though they contain incriminating assertions of fact . . . because the creation of those documents was not compelled within the meaning of the privilege." *Hubbell*, 530 U.S. at 35-36; *accord In re Grand Jury Subpoena Duces Tecum Dated March 25*, 2011, 670 F.3d 1335, 1342 (11th Cir. 2012). Additionally, the Fifth Amendment privilege against self-incrimination does not apply to incriminating evidence that was generated prior to the demand that this evidence be produced. *Fisher*, 425 U.S. at 391 (holding that papers which were voluntarily prepared prior to the issuance of the summons could not contain compelled testimonial evidence). "Thus, once an individual chooses voluntarily to prepare a written account, the act of preparation serves as an effective waiver of the Fifth Amendment protections, and the resulting document is a physical object that can be acquired." *Fed. Trade Comm'n v. PointBreak Media, LLC*, 343 F. Supp. 3d 1282, 1292 (S.D. Fla. 2018). Here, the Receiver seeks the production of all the records of CryptoFX and CBT, as well as all records about the other businesses and/or assets in which Chavez has an interest that were voluntarily prepared prior to the entry of the Receivership Order. Chavez, therefore, does not enjoy any Fifth Amendment protection in the content of these business records. *See id.* at 1293.

In his Response, Chavez appears to erroneously suggest that the very act of turning over the devices to the Receiver would be testimonial in nature. *See* Response at 19. In *In re Grand Jury Subpoena*, 670 F.3d at 1345–46, the Eleventh Circuit explained those circumstances in which the act of production would—and would not—have a testimonial quality sufficient to trigger the protections of the Fifth Amendment:

> [A]n act of production can be testimonial when that act conveys some explicit or implicit statement of fact that certain materials exist, are in the subpoenaed individual's possession or control, or are authentic. The touchstone of whether an act of production is testimonial is whether the government compels the individual to use "the contents of his own mind" to explicitly or implicitly communicate some statement of fact.

8

> Put another way, the Court has marked out two ways in which an act of production is not testimonial. First, the Fifth Amendment privilege is not triggered where the Government merely compels some physical act, i.e. where the individual is not called upon to make use of the contents of his or her mind. The most famous example is the key to the lock of a strongbox containing documents, but the Court has also used this rationale in a variety of other contexts. Second, under the "foregone conclusion" doctrine, an act of production is not testimonial—even if the act conveys a fact regarding the existence or location, possession, or authenticity of the subpoenaed materials—if the Government can show with "reasonable particularity" that, at the time it sought to compel the act of production, it already knew of the materials, thereby making any testimonial aspect a "foregone conclusion."

*In re Grand Jury Subpoena*, 670 F.3d at 1345–46; *see also Cheng*, 2022 WL 112025, at *8.

Here, Chavez's act of producing the devices as required by this Court's Receivership Order is not a question of testimony but of surrender of property that now belongs to the Receiver. *See Fisher*, 425 U.S. at 411 ("Where the existence and location of the subpoenaed documents are a 'foregone conclusion' and the witness 'adds little or nothing' by conceding he has the documents, there is no Fifth Amendment privilege against production because the production becomes a 'question . . . not of testimony but of surrender.'"). Further, the act of producing these devices does not require Chavez to reveal the contents of his mind or to exercise any judgment or discretion to comply with the requests; he is merely surrendering business records, computer and cellphone to the Receiver as required by the Court's Order.[9]

Further, it is undisputed that Chavez has these records and devices and that they contain CryptoFX- and CBT-related materials "thereby making any testimonial aspect a 'foregone conclusion.'" *In re Grand Jury Subpoena*, 670 F.3d at 1345–46; *see also Cheng*, 2022 WL 112025, at *8; *see* Motion for Show Cause at 5. Additionally, it is a foregone conclusion that Chavez has the ability to unlock the devices. *See Cheng*, 2022 WL 112025, at *8 (where "mere possession of the devices/contents" was not a factor in the alleged crimes and that defendant could

---

[9] *See Sallah v. Worldwide Clearing LLC*, 855 F. Supp. 2d 1364 (S.D. Fla. 2012).

9

decrypt the devices could be demonstrated "independent knowledge . . . negat[ed] any question concerning Fifth Amendment privilege."). Therefore, Chavez's surrender of the devices is not a testimonial communication for which he can successfully invoke the protections of the Fifth Amendment. *See Pointbreak Media*, 343 F. Supp. 3d at 1294 (granting Receiver's request for turnover of the defendants' laptop and cell phones and holding that "because the information on the electronic devices was voluntarily created prior to the Receiver's request for turnover and because compliance with the turnover order does not require that [defendants] exercise any judgment or discretion, their surrender of the devices is not a testimonial communication for which they can successfully invoke a Fifth Amendment objection.").[10]

## CONCLUSION

For the foregoing reasons and as established in Receiver's Motion for Show Cause, the Receiver respectfully asks that the Court grant the Motion and require that Chavez comply with all the provisions of the Receivership Order.

Dated: January 27, 2022

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ Sonila Themeli*
    Sonila Themeli
    Texas Bar No. 24073588
    S.D. Tex. Bar No. 2828237
    600 Travis Street, Suite 3400
    Houston, TX 77002
    Telephone: 713.227.8008
    Facsimile: 713.227.9508
    sthemeli@shb.com

---

[10] The same analysis applies to the passwords for the security system at Blalock. The security system was turned on when the Receiver first seized the premises. But a password/code is needed to access the system once it is disconnected.

        Caroline M. Gieser
(admitted *pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
1230 Peachtree Street, NE, Suite 1200
Atlanta, GA  30309
Telephone:  470.867.6000
mcgieser@shb.com

***Counsel for John Lewis, Jr.***
***Court-Appointed Receiver***

## CERTIFICATE OF SERVICE

I hereby certify that on this the 27th day of December, 2022, the above and foregoing document was filed electronically through the CM/ECF system, which sent notification of such filing to all known counsel of record.

Matthew J. Gulde
UNITED STATES SECURITIES
AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX  76102
Telephone:  817.978.1410
Facsimile:   817.978.4927
guldem@sec.gov

*Counsel for Plaintiff SEC*

Paul D. Flack
PRATT & FLACK, LLP
4306 Yoakum Blvd., Suite 500
Houston, TX  77006
Telephone:  713.705.3087
pflack@prattflack.como

*Counsel for Defendant Mauricio Chavez*

Dan L. Cogdell
JONES, WALKER L.L.P.
811 main Street, Suite 2900
Houston, TX  77002
Telephone: 713.437.1869
Facsimile:   713.437.1810
dcogdell@joneswalker.com

*Counsel for Defendant Giorgio Benvenuto*

*/s/ Sonila Themeli*
Sonila Themeli