IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § § | CIVIL ACTION NO. 4:22-CV-03359 |
| MAURICIO CHAVEZ, GIORGIO BENVENUTO and CryptoFX, LLC, | § § § | JUDGE ANDREW S. HANEN |
| *Defendants.* | § § | |
| CBT Group, LLC, | § § § | |
| *Relief Defendant.* | § | |

**RECEIVER'S SECOND INTERIM STATUS REPORT**

John Lewis, Jr. ("Receiver"), the court-appointed Receiver for Mauricio Chavez ("Chavez"), Giorgio Benvenuto ("Benvenuto"), CryptoFX, LLC ("CryptoFX") and CBT Group, LLC ("CBT"), pursuant to the Order Appointing Receiver ("Receivership Order") (Doc. No. 11) files his Second Interim Status Report ("Report"), showing the Court as follows:

I.      INTRODUCTION

1.     The Receiver filed his First Interim Report ("FIR") on November 28, 2022 (Doc. 33). This Second Interim Status Report is being submitted in accordance with the Receivership Order ¶ 52-53. The FIR and all eleven exhibits thereto are available for all investors on the Receiver's website. This Report covers the period between November 28, 2022 (the filing of the "FIR") to December 31, 2022.

2.     This Report is based upon the continued investigation conducted by the Receiver and his team, which has included witness depositions and interviews, forensic analysis of financial

records, including crypto currency records, review of CryptoFX documents maintained by the Defendants and obtained from investors, employees, sales agents, and third parties, site inspection, communications with investors, monitoring of media coverage of this case, and motion practice.

3.  The Report includes (a) a general summary of the work done since the FIR by the Receiver and his team; (b) cash on hand and estimated accrued expenses; (c) schedule of receipts and disbursements; (d) description of all known receivership property; (e) description of liquidated and unliquidated claims; (f) list of all known creditors; and (g) Receiver's proposed plan for administering the Receivership.

4.  The Receiver will provide further quarterly reports as provided for in the Receivership Order. *Id*. at ¶¶ 52-53.

## II. SUMMARY OF RECEIVERSHIP OPERATIONS

5.  During the period covered by this Report, the Receiver and his team continued to analyze CryptoFX business documents (both paper and electronically stored) and documents produced by CryptoFX employees, sales agents, and third parties.

6.  The Receiver has uncovered forensic evidence indicating that the Defendants have defrauded over 40,000 victims in excess of $300 million. Specifically, a review of the CryptoFX accounting records identified as Monthly and Daily Revenue Reports for the time period of January 1, 2021 to September 28, 2022 shows that CryptoFX raised $300,445,728 in total funds less rollovers and that Chavez received $41,034,014. *See* Analysis by Gregory Hays, attached as Exhibit A, ¶¶ 5 – 9 and the following chart.



7.      The Receiver has not been able to account for the $41 million in cash delivered to Chavez, and Chavez has failed and refused to cooperate in producing computer hardware, electronically stored information, passwords to company devices, credentials to enterprise data management solutions utilized by CryptoFX, including Salesforce and Microsoft 365 among others.

8.      Since the filing of the FIR, the Receiver's team deposed several CryptoFX sales agents, employees, Chavez's wife ("Vargas") and Chavez's reported "girlfriend" ("Gonzalez"). In addition, the Receiver's team conducted interviews with additional sales agents and investors and collected CryptoFX business documents in their possession.

9. The Receiver continued to issue third-party subpoenas for the collection of documents and information to additional financial institutions, crypto currency platforms, professionals retained by the Defendants, internet services, Salesforce, and other fact witnesses.

10. Of note, CryptoFX used Salesforce, a customer management platform, to record investor data. The Receiver's team is working directly with Salesforce to access and retrieve this information in the absence of any cooperation from Chavez. The Receiver views this information as critical to determine the sales commission paid and establish investors' claims against the receivership estate.

11. Additionally, the Receiver has issued subpoenas for the deposition of key CryptoFX employees.

12. In addition to some of the devices seized from the CryptoFX offices, the Receiver has imaged cellphones of two CryptoFX sales agents or sponsors and Defendant Benvenuto's laptop. A list of the computers the Receiver has was included as Exhibit C to the FIR. (Doc. No. 33).

13. The Receiver also served subpoenas with requests for documents and information to Vargas and Gonzalez and requested turnover of Receivership assets from them. Each has produced documents, but neither has turned over any receivership assets. Both Vargas and Gonzalez appear to be in possession of Receivership assets, including real estate and automobiles.

14. The Receiver avers that the commissions and bonuses paid to all sales agents/sponsors/leaders were unlawfully obtained from investors by means of artifice and fraud. Therefore, sales commissions and bonuses paid to sponsors should be turned over to the Receiver. The Receiver has identified approximately 100 key sales agents for CryptoFX, located primarily in Texas, Illinois, Louisiana, California, and Florida. The Receiver is in the process of sending

demand letters to them requesting an accounting of all monies received from CryptoFX in the form of commissions, bonuses, and Ponzi payments, the completion of W9 form, return of all CryptoFX documents as well as return of all CryptoFX assets, including cash in their possession. *See* Sample demand letter, attached as Exhibit B. Additional demand letters will be sent in the coming weeks as more sales agents and/or sponsors are identified in the CryptoFX records.

15. On December 27, 2022, the Receiver filed a Motion to Show Cause why Defendant Mauricio Chavez should not be held in civil contempt for failing to comply with this Court's September 29, 2022 Receivership Order (Doc. No. 27). Chavez filed his Response on January 17, 2023 (Doc. 45); and the Receiver filed his Reply in support of the Motion on January 27, 2023 (Doc. No. 49). This issue is fully briefed and ready for the Court's determination.

16. On January 5, 2023, the Receiver, together with undersigned counsel, counsel for Chavez, and Webster Auctions, a professional appraiser/auctioneer retained by Receiver, inspected Chavez's residence. An inventory of the items found at his residence is being prepared by the appraiser.

17. The Receivership Order provides for reasonable attorney's fees for the Defendants. However, reasonable attorney fees to Defendants presumed that Chavez would cooperate with the Receivership estate in carrying out the Receiver's duties. Chavez has not done so. Chavez's counsel is requesting $62,205 in fees and $6,050 for expenses for five weeks of work. Chavez's counsel sent correspondence to the Court requesting a pre-motion conference regarding the fees and expenses incurred in his representation of Chavez. Receiver's opposition that Chavez's defense should be paid with investor funds will be submitted to the Court by Friday February 3, 2023.

18. Additionally, Chavez, through counsel, served discovery requests on the Receiver requesting access to all CryptoFX records in the Receiver's possession as well as records received in response to third-party subpoenas. The Receiver is considering Chavez's requests and working on a reasonable document sharing agreement that is not unduly burdensome on the estate and that also safeguards personally identifiable information ("PII") as well as confidential information attributable to investors/victims. Receiver also needs to ensure that information regarding Chavez and CryptoFX provided to the Receivership team confidentially by investors/victims/whistleblowers is kept in confidence as not to expose cooperating witnesses from reprisal.

19. Chavez has also made a request for an allowance for reasonable monthly living expenses. The amount requested by Chavez is unreasonably high, particularly given the millions of unaccounted for funds that the Receivership team has traced back to Chavez in the months between his first SEC deposition in March 2022 and the entry of the Receivership Order on September 29, 2022. Chavez has provided no supporting documentation for his allowance request and has also failed to turn over a substantial amount of cash that surveillance photos show that Chavez removed from Blalock into the late hours of the evening before the Receiver's appointment. The Receiver will address this issue with the Court in his response to Mr. Flack's letter regarding attorney's fees.

20. Pursuant to the Receivership Order ¶ 56, the Receiver employed BlockTrace, LLC to serve as the Receiver's cryptocurrency consultants in this matter. The Court granted Receiver's Motion to Employ BlockTrace on January 6, 2023. (Doc. No. 43). BlockTrace has conducted an analysis of the available crypto currency records and has only verified six crypto trading accounts. Those accounts have 468 crypto transactions totaling $7 million despite CryptoFX receiving over

**RECEIVER'S SECOND INTERIM STATUS REPORT**

$300 million from investors for investment in cryptocurrencies. The net trading profits from 2020 to 2022 were only $2.6 million. The Receiver's team has not identified any records reporting these trading profits to the IRS or investors. The Receiver has determined over $300 million was invested into CryptoFX, and Chavez was paying 10% to 20% bonuses and commissions to sales agents/sponsors/"leaders." Chavez's crypto trading certainly did not support the commissions or the 15% a month profits/returns being paid/promised to investors.

21. Additionally, pursuant to the Receivership Order at ¶ 7(f), the Receiver employed Michael Poutous Auto Sales to assist with the evaluation and sale of automobiles. One car (Mercedes) is currently listed for sale.[1] The Receiver has also employed Appraisal MC to provide independent appraisals of real estate Receivership property. Further, the Receiver has employed Webster Auction Palace to assist with the appraisal and sale of Receivership personal property.

22. The Receiver and his team have continued to maintain and regularly update the Receiver's website (http://cryptofxreceiver.com/) with new court filings, media coverage, and other information pertinent to this case. The information is provided in both English and Spanish. In addition, the website provides answers to frequently asked questions and access to the complete court docket with no PACER charges. The Receiver and his team are also working with KCC to optimize the website with key words for easier Google search by "investors" and others.

23. The Receiver's team also continues to monitor the Receiver's email and phone number, both of which are posted on the Receiver's website, for "investors"/victims to contact the Receiver and his team. As of the filing of this Report, the Receiver's team has received approximately 1,285 calls and 1,068 emails from investors.

---

[1] *See* https://www.poutousautosales.com/details.php?vehicle=420612.

**RECEIVER'S SECOND INTERIM STATUS REPORT**

24.  Public awareness of this case continues to grow. The Receiver's team continues to monitor the media coverage of this case, and links to news articles discussing this case have been posted on the Receiver's website as well. Currently, there are fourteen links to news articles and TV stories on the Receiver's website.

25.  Additional work performed by the Receiver and his team since the filing of the FIR includes:

   a. File with the Internal Revenue Service ("IRS") extensions of the deadline to submit W2 and 1099 forms for CryptoFX and CBT employees and contractors;

   b. Registration of the Receivership Order in the Central District of California;

   c. Conducting public records searches and related due diligence to affiliated parties, entities, and other potential relief defendants;

   d. Coordinate valuation and sale of Receivership personal property.

26.  As a result of these and other activities, the Receiver and his team believe that they have gained a good understanding of the facts and issues that will be most critical to the effective administration of this Receivership, many of which are set forth in the FIR (Doc. No. 33) and this Report.

## III.  CASH ON HAND AND ESTIMATED ACCRUED ADMINISTRATIVE EXPENSES

27.  As of December 31, 2022, the Receivership Estate has the following cash on hand: The Receivership Estate has $3,762,529.64 deposited in four trust accounts named for each of the Defendants. These funds were received by (i) taking possession of cash located at the Defendants' office located at 1124 Blalock, Houston, Texas 77055 ($53,345.56); (ii) taking possession of cash in two safes located at the Defendants' office ($392,765.37); (iii) taking possession of First Community Credit Union bank accounts owned by Benvenuto ($451,448.14); (iv) taking possession of Bank of America bank accounts owned by Benvenuto ($21,325.14); (v) taking

possession of a Simmons bank account owned by Benvenuto ($80,763.55); (vi) taking possession of a Simmons bank account owned by CBT ($247,916.46); (vii) taking possession of a Regions bank account owned by Chavez ($781.62); (viii) proceeds from liquidating Coinbase, Inc. account ($982,924.31); (ix) proceeds from liquidating Blockchain.com account ($1,161,140.95); (x) taking possession of the balance of a retainer from Burford Perry LLC ($155,631.00); (xx) and taking possession of the balance of retainers from Gerger Hennessy & Martin LLP ($214,487.50).

28. Other Assets: In addition to the cash on hand listed above, the Receiver has on hand the following assets. *See also* List of Receivership Liquidated and Unliquidated Assets, attached as Exhibit C; Inventory of items collected from Blalock office and estimated resale value, attached as Exhibit D.

| Asset | Estimated Amount/Value |
|---|---:|
| 2021 Mercedes-Benz GLE AMG | $60,000 |
| Various Laptops and desktop computers | $5,000 |
| Real Property: 28 Lawrence Marshall, Dr. Hempstead TX | $70,000 |
| Real Property: Hogan Lane, Hempstead, TX | $70,000 |
| Real Property: Mack Washington, Hempstead, TX | $1,150,000 |
| Bitcoin (BTC) | $14,031.12 |
| Tether (USDT) | $62,923.86 |
| Solana (SOL) | 0.10 |

29. It is the Receiver's plan to prudently market real estate and other assets of the Receivership for the highest prices obtainable. The Receiver plans to file a motion with the Court requesting prior approval of any real estate sales. *See* Receiver's Liquidation Plan. (Doc. No. 47). At this preliminary stage, the Receiver is continuing his investigation to locate additional assets of the Receivership Estate and will develop a distribution plan, subject to the Court's approval.

30. As of the filing of this Report, the Receivership Estate has incurred administrative expenses in the amount of $65,987.76 as a result of his efforts to marshal and preserve the assets

of the Receivership. Most of these expenses were advanced by SHB. *See* Table describing administrative expenses incurred by the Receivership between September 29, 2022 and December 31, 2022, attached as Exhibit E.

31. The Receiver and the professionals working with him are well aware that the fees and expenses associated with the administration of the Receivership are paid from the assets of the Receivership Estate. The goal of all involved professionals is to conclude this Receivership as quickly and efficiently as can be reasonably accomplished thereby maximizing recovery to victims.

32. As of December 31, 2022, the unbilled professional fees incurred are $89,722.50 John Lewis, Jr.; $279,771.52 Shook, Hardy & Bacon L.L.P.; $769.00 Pugh Accardo, LLC; and $134,980.54 Hays Financial Consulting, LLC.

33. As provided for in the Receivership Order, the Receiver and the professionals working with him will apply to the Court for approval to pay professional fees and expenses. Pursuant to paragraphs 57-62 of the Receivership Order, on January 25, 2023, the Receiver submitted his first certified fee application to counsel for the SEC. The Receiver will file a detailed fee application in accordance with the Receivership Order as soon as the application is approved by the SEC.

34. Receiver advises that administration of the estate is expensive because there has been no cooperation from Chavez and the on-going activities in violation of the Order. *See* Motion to Show Cause and Reply in support. (Doc. Nos. 39, 49).

**RECEIVER'S SECOND INTERIM STATUS REPORT**

10

### IV. SCHEDULE OF RECEIPTS AND DISBURSEMENTS

35. As of the filing of this Report, no disbursements to "investors"/victims or creditors have taken place. For a more detailed description of Receivership receipts, *see* supra, Section III, ¶¶ 27.

### V. DESCRIPTION OF ALL KNOWN RECEIVERSHIP PROPERTY

36. At this preliminary stage, the Receiver estimates a total of $ 9,442,726 in known liquidated and unliquidated Receivership assets. For a more detailed description of currently known Receivership property and corresponding approximate value, *see* supra, Section III, ¶¶ 27 – 28.

37. It is the Receiver's plan to prudently market and sell the real estate and other assets of the Receivership for the highest prices obtainable. All sales of real estate must be approved by the Court, following a motion to the Court and hearing if necessary. *See* Receiver's Liquidation Plan (Doc. No. 47).

38. The Receiver and his team's investigation is continuing; however, the investigation shows additional Receivership property held by third parties. The Receiver plans to seek a turnover of all of these assets and also move for the expansion of the Receivership Order to include other persons and/or entities known to hold Receivership assets.

39. Depending on the equity in each of the properties, appropriate action will be taken to either sell, hold, donate, or abandon properties in order to maximize the return of cash to the estate. It is too early to tell at this time what price the assets will sell for, the relative costs associated with the sales, or the potential recovery benefit to the Receivership estate.

## VI. DESCRIPTION OF LIQUIDATED AND UNLIQUIDATED CLAIMS

40. This Ponzi scheme was primarily an all-cash scheme, and it is going to require significant resources to unravel the claims of the Receivership estate. A review of the available records indicates that 90% of the investments in available records were in cash.

41. The Receiver will have substantial claims for bonuses and commissions for a large number of third parties and will have to evaluate collectability from these parties. The Receiver team continues to research additional claims against third parties.

## VII. LIST OF ALL KNOWN CREDITORS

42. At this preliminary stage, the only known commercial creditor is BZO Custom Wheels, LLC, the landlord of the CryptoFX's offices on Blalock ("Landlord"). Landlord has an unliquidated claim for approximately $20,239.18 against the Receivership estate, which includes rent and utility bills. The Receiver and his team negotiated the sale of certain Receivership personal property at Blalock to set off Landlord's claim, bringing the final settlement amount to $17,209.18. The Receiver's team also negotiated and the Landlord agreed to terminate the lease on October 31, 2022, although the Receiver vacated the premises of the Blalock office on December 7, 2022. *See* Settlement Agreement with BZO Wheels, attached as Exhibit F.

43. The Receiver is not aware of other commercial creditors at this stage.

## VIII. RECEIVER'S PROPOSED PLAN FOR ADMINISTERING THE RECEIVERSHIP

44. The Receiver recommends the continuation of the Receivership.

45. The Receiver's key focus for the next 90 days will be on the following tasks:

- Review documents collected from CryptoFX employees, sponsors, and other third parties
- Retrieve data and documents from Salesforce
- Determine other third parties who may possess relevant information and/or documents and serve additional freeze letters and subpoena such records and witness testimony, including from CryptoFX former employee and/or agents

**RECEIVER'S SECOND INTERIM STATUS REPORT**  12

- Trace funds to locate additional assets
- Determine commissions paid and if those will be pursued
- Determine the Net Winners
- Develop electronic claim form for investors
- Establish claims verification process
- Continue working with realtors and appraisers to sell the real properties
- Determine resale value of personal property and the appropriate method of sale in order to maximize the benefit to the Receivership estate
- Continue communications with sales agents and "investors" and/or their counsel
- Depose or interview CryptoFX and CBT employees and sales agents
- File motions for turnover of Receivership assets

46. In addition, the Receiver and his counsel will determine whether there are claims against third parties that could result in meaningful recovery to the Receivership Estate.

47. The Receiver also intends to file a motion to expand the Receivership estate to include entities that hold Receivership assets and/or funds.

48. Further, the Receiver and his team will continue to conduct a factual and legal analysis of issues that could affect whether tracing should be applied to certain investments. Based on the information and documents reviewed to date with estimated 40,000 investors and over $300 million in investments, with 90% of that in cash, and some payments in cryptocurrency, a complete tracing of investments may not possible and/or practicable.

49. In addition to analyzing the sources and uses of cash, the Receiver and his team will continue to analyze transactions through the Defendants' cryptocurrency and bank accounts. The Receiver is in possession of transaction reports from Coinbase and Blockchain.com, which appear to be the primary platforms used to invest in cryptocurrencies, as well as the Defendants' bank account records.

50. To date, the Receiver has not located a set of books and records that tracked CryptoFX's cash, banking, investments and investor activity. Instead, the transactions are scattered among various reports, which must be analyzed by the Receiver's team and compiled to

complete the Receiver's analysis. If the Receiver is unable to locate a set of books or transaction ledgers, the funds tracing analysis may be a lengthy manual process.

51. Additionally, as already reported in the FIR and Receiver's Motion to Show Cause, Chavez and persons associated with him continued to operate by soliciting investments and promising payments to investors after the entry of the Receivership Order. *See* Motion for Show Cause at 6-8, and Reply in Support of the Motion at 3. (Doc. Nos. 39, 49).

52. At this early stage, it is difficult to predict how long it will take for the Receiver to complete his work. As the Receivership moves forward, the Receiver and his team will continue their efforts to most efficiently recover and realize the value of assets for the benefit of the Receivership Estate.

Respectfully submitted, this January 31, 2023.

SHOOK, HARDY & BACON L.L.P.

By: */s/ Sonila Themeli*
Sonila Themeli
Texas Bar No. 24073588
S.D. Tex. Bar No. 2828237
600 Travis Street, Suite 3400
Houston, TX 77002
Telephone: 713.227.8008
Facsimile: 713.227.9508
sthemeli@shb.com

Caroline M. Gieser
(admitted *pro hac vice*)
1230 Peachtree Street, NE, Suite 1200
Atlanta, GA 30309
Telephone: 470.867.6000
mcgieser@shb.com

***Counsel for Court-appointed Receiver***

## CERTIFICATE OF SERVICE

I hereby certify that on this the 31st day of January, 2023, the above and foregoing document was filed electronically through the CM/ECF system, which sent notification of such filing to all known counsel of record, addressed as follows:

Matthew J. Gulde
UNITED STATES SECURITIES
AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX  76102
Telephone:   817.978.1410
Facsimile:    817.978.4927
guldem@sec.gov

***Attorney for Plaintiff***

Paul D. Flack
PRATT &FLACK, LLP
4306 Yoakum Blvd., Suite 500
Houston, TX 77006
Telephone: 713.705.3087
pflack@prattflack.com

***Counsel for Defendant Mauricio Chavez***

Dan L. Cogdell
Jones, Walker L.L.P.
811 Main Street, Suite 2900
Houston, TX  77002
Telephone:  713.437.1869
Facsimile:   713.437.1810
dcogdell@joneswalker.com

***Attorney for Defendant,***
***Giorgio Benvenuto***

　　　　　　　　　　　*/s/ Sonila Themeli*
　　　　　　　　　　　Sonila Themeli

15

**RECEIVER'S SECOND INTERIM STATUS REPORT**