IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | |
| MAURICIO CHAVEZ, GIORGIO BENVENUTO and CryptoFX, LLC, | § § § | CIVIL ACTION NO. 4:22-CV-03359 |
| *Defendants.* | § § | JUDGE ANDREW S. HANEN |
| CBT Group, LLC, | § § | |
| *Relief Defendant.* | § § | |

## RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION

Pursuant to paragraphs 57-62 of this Court's Order Appointing Receiver ("Receivership Order") in this case [Doc. No. 11], John Lewis, Jr. ("Receiver"), the Court-appointed Receiver for Mauricio Chavez ("Chavez"), Giorgio Benvenuto ("Benvenuto"), CryptoFX, LLC ("CFX") and CBT Group, LLC ("CBT") (collectively, the "Receivership Defendants"), files his first certified fee application, showing the Court as follows:

### SUMMARY OF FEE REQUEST

1.      This first fee application covers the period from September 29, 2022 to December 31, 2022 (the "Application Period") and is submitted in accordance with the Receivership Order, the local rules of this Court, and the Billing Instructions for Receivers in Civil Actions Commenced by the United States Securities and Exchange Commission (the "Billing Instructions").

2.      The Receivership Order provides that the fees incurred by the Receiver and other professionals retained by the Receiver in the administration and liquidation of the Receivership

estate are capped at $120,000.00 during the initial 60-day period of the Receiver's appointment (September 29, 2022 – November 29, 2022) ("First 60 Day Fee Cap").  Receivership Order ¶ 51. Additionally, the Order provides that fee applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court.  *Id*. at ¶ 60.

3.     The total fees incurred during the Application Period by the Receiver and professionals retained by the Receiver are as follows:  $89,722.50 by the Receiver John Lewis, Jr.; $213,538.00 by Shook, Hardy & Bacon L.L.P. ("SHB"); $720.00 by Pugh Accardo, LLC ("Pugh Accardo"); and $132,832.40 by Hays Financial Consulting, LLC ("Hays") for a total of $436,812.90.

4.     The fees incurred by the Receiver and his team during the first 60 days are higher than the First 60 Day Fee Cap.  Despite the Receiver and his team's best efforts to work within the First 60 Day Fee Cap, the unanticipated breadth and scope of the Receiver and his team's work resulted in reasonable and necessary fees that exceed the First 60 Day Fee Cap.  *See* Receiver's First and Second Interim Reports (Doc. Nos. 33, 50) and Receiver's Motion for an Order to Show Cause (Doc. No. 39).

5.     The Receiver served a copy of this First Certified Interim Fee Application ("FCIFA"), together with all exhibits and billing information to counsel for the SEC.  The Receiver and counsel for the SEC have conferred about the FCIFA and its compliance with the SEC Billing Guidelines and this Court's Receivership Order, including the First 60 Day Fee Cap.  To satisfy the First 60 Day Fee Cap and the discretionary 20% fee holdback provisions under the Receivership Order, the Receiver has agreed to a total holdback of $130,607.06 ("Holdback Amount") equaling a 29.9% of this aggregate fee request with the balance of this FCIFA to be immediately payable.  The Receiver reserves all rights to seek relief from the First 60 Day Fee Cap including allowance and

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**

payment of the Holdback Amount at a later time.  The SEC does not oppose Receiver's proposal as to this FCIFA.

6.      The Receiver respectfully requests that this Court enter an order approving and authorizing, on an interim basis, the payment of fees incurred during the FCIFA as follows: to the Receiver in the amount of $62,895.47; to Shook Hardy and Bacon, LLP in the amount of $149,690.14; to Hays in the amount of $93,115.51; and to Pugh Accardo in the amount of $504.72, all of which are subject to the 29.9% holdback discussed in the previous paragraph.  The Receiver further asks that the Court authorize the Receiver to reimburse the out-of-pocket costs and expenses incurred by the Receiver in the ordinary course of the administration and operation of the Receivership in the aggregate amount of $68,430.66.

**STANDARDIZED FUND ACCOUNTING REPORT**

7.      Attached as Exhibit A is the Standardized Fund Accounting Report (SFAR) for the Receivership for the Application Period.

**CASE STATUS**

8.      <u>Cash on Hand</u>: The Receivership Estate has $3,762,529.64 deposited in four trust accounts named for each of the Defendants as of the end of the Application Period (December 31, 2022). These funds were received by (i) taking possession of cash located at the Defendants' office located at 1124 Blalock, Houston, Texas 77055 ($53,345.56); (ii) taking possession of safes located at the Defendants' office ($392,765.37); (iii) taking possession of First Community Credit Union bank accounts owned by Benvenuto ($451,448.14); (iv) taking possession of Bank of America bank accounts owned by Benvenuto ($21,325.14); (v) taking possession of a Simmons bank account owned by Benvenuto ($80,763.55); (vi) taking possession of a Simmons bank account owned by CBT ($247,916.46); (vii) taking possession of a Regions bank account owned by Chavez ($781.62); (viii) proceeds from liquidating Coinbase, Inc. account ($982,924.31); (ix)

3

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**

proceeds from liquidating Blockchain.com account ($1,161,140.95); (x) taking possession of the balance of a retainer from Burford Perry LLC ($155,631.00); and (xx) taking possession of the balance of retainers from Gerger Hennessy & Martin LLP ($214,487.50).

9.    Other Assets: In addition to the cash on hand listed above, as of the end of the Application Period (December 31, 2022), the Receiver has on hand the following assets.

| Asset | Estimated Amount/Value |
|---|---|
| 2021 Mercedes-Benz GLE AMG | $    60,000.00 |
| Various Laptops and desktop computers | $      5,000.00 |
| Real Property: 28 Lawrence Marshall, Dr. Hempstead TX | $    70,000.00 |
| Real Property: Hogan Lane, Hempstead, TX | $    70,000.00 |
| Real Property: Mack Washington, Hempstead, TX | $1,150,000.00 |
| Bitcoin (BTC) | $    14,031.12 |
| Tether (USDT) | $    62,923.86 |
| Solana (SOL) | $          0.10 |

10.    It is the Receiver's plan to prudently market real estate and other assets of the Receivership for the highest prices obtainable. The Receiver plans to file a motion with the Court requesting approval of any real estate sales. *See* Receiver's Liquidation Plan, Doc. No. 47.  At this preliminary stage, the Receiver is continuing its investigation to locate additional assets of the Receivership Estate and will develop a distribution plan, subject to the Court's approval.

11.    Expenses: The Receiver and his team have incurred administrative expenses in the amount of $68,430.66 as a result of his efforts to marshal and preserve the assets of the Receivership. For the Application Period, most of these expenses were advanced by SHB. *See* Exhibits B (SHB expenses), E (Pugh Accardo expenses), and F (Hays expenses).

12.    Investor/Creditor Claims: At this point, the Receiver has not promulgated a claims procedure or determined the validity of any possible investor claims. The Receiver is still evaluating contributions made to CFX based upon information collected from laptops, smart

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**

phones, produced documents, deposition testimony, and from investor interviews. At present, the Receiver, through an incomplete forensic review, has credible evidence that estimates that approximately 40,000 individuals invested in CFX.

13.     The Receiver is working on formulating a claims process, including procedures for (i) providing notice to potential claimants, (ii) receiving and reviewing claims, (iii) recommending to the court payment or denial of claims; and (iv) disposing of claims. To date, the Receiver has not dispersed any funds to any investors or creditors.

14.     At this early stage, it is difficult to predict how long it will take for the Receiver to complete his work. As the Receivership moves forward, the Receiver and his team will continue their efforts to most efficiently recover and realize the value of assets for the benefit of the Receivership Estate.

15.     <u>Receiver Claims</u>: The Receiver's investigation of claims against third parties is in its early stages.  Recovered CFX business records indicate transfers of large amounts of money to CFX senior employees and sales persons, related business entities, and other third parties, all of which support the strong likelihood that the Receivership Estate will have substantial causes of action of significant amount against these third parties.

Additionally, because the Ponzi scheme was primarily an all-cash scheme, it is going to require significant forensic and/or investigatory resources to unravel the claims of the Receivership estate. Forensic accounting data indicates that 90% of the investments in available records were in cash. The Receiver will have substantial claims for bonuses and commissions for a large number of third parties and will have to evaluate collectability from these parties. Other claims will have to be researched in the collected paper and electronic data.

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**

16.     The Receiver filed a notice of receivership in all relevant jurisdictions where assets of the Receivership are believed to be located.

## FEE APPLICATION

17.     On September 19, 2022, the United States Securities and Exchange Commission (SEC) filed a Complaint against Defendants Chavez, Benvenuto, CFX, and CBT, along with an application for the appointment of a receiver for the Receivership Entities. [Doc. Nos. 3 & 6]. On September 29, 2022, the Court appointed John Lewis, Jr. to serve as Receiver over all the assets of the Receivership Defendants [Doc. No. 11].

18.     On October 7, 2022, the Court entered orders authorizing the Receiver to employ SHB as legal counsel [Doc. No. 16] and Hays, as financial consultants and accountants [Doc. No. 17]. On November 10, 2022, the Court entered an order authorizing the Receiver to employ Pugh Accardo as legal counsel in Louisiana. [Doc. No. 26]. SHB began working on this matter on September 29, 2022.  Hays began working on this matter on September 30, 2022. Pugh Accardo began working on this matter on November 11, 2022.

19.     The names, hours worked, professionals' profiles, hourly billing rates, and total fees of all SHB professionals who have billed time to this matter are listed in Exhibit C. The flat hourly rate of each SHB attorney working on this matter is $425.00. The flat hourly rate of SHB timekeepers who are not attorneys is their standard rate.

20.     The hours worked, hourly billing rate, and total fees of the Receiver are listed in Exhibit D. The flat hourly billing rate of the Receiver is $525.00.

21.     The names, hours worked, hourly billing rates, and total fees of all Pugh Accardo professionals who have billed time to this matter are listed in Exhibit E. The hourly billing rate for partner-level work for attorneys at Pugh Accardo is $350.00 and $225.00 for other attorneys

working on this matter. The billing rate of Pugh Accardo timekeepers who are not attorneys is their standard rate.

22.     The names, hours worked, professionals' profiles, hourly billing rates, and total fees of all Hays professionals who have billed time to this matter are listed in Exhibit F.

23.     The total actual fees and expenses incurred for the Application Period are summarized as follows:

### Receiver- Fees for Application Period

| Hours | Hourly Rate | Total Fees |
|---|---|---|
| 170.90 | $525.00 | $ 89,722.50 |

### Receiver's Counsel, Shook, Hardy & Bacon L.L.P. – Fees and Expenses for Application Period

| Hours | Hourly Rates | Total Fees | Total Expenses | Fees and Expenses |
|---|---|---|---|---|
| 519.50 | See Ex. C at 30-31. | $213,538.00 | $66,233.52 | $ 279,771.52 |

### Receiver's Counsel (Louisiana), Pugh Accardo, LLC – Fees and Expenses for Application Period

| Hours | Hourly Rates | Total Fees | Total Expenses | Fees and Expenses |
|---|---|---|---|---|
| 2.20 | See Ex. E at 2. | $720.00 | $49.00 | $ 769.00 |

### Receiver's Forensic Accounting Consultant, Hays Financial Consulting, LLC - Fees and Expenses for Application Period

| Hours | Hourly Rates | Total Fees | Total Expenses | Fees and Expenses |
|---|---|---|---|---|
| 447.90 | See Ex. F at 2. | $132,832.40 | $2,148.14 | $ 134,980.54 |

24.     The Receiver asks the Court to approve payments to SHB, on an interim basis in the amount of $279,771.52 for the Application Period. The Receiver asks the Court to approve payments to the Receiver, on an interim basis in the amount of $89,722.50 for the Application Period. The Receiver asks the Court to approve payments to Pugh Accardo, on an interim basis in

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**

the amount of $769.00 for the Application Period. The Receiver asks the Court to approve payment

to Hays, on an interim basis in the amount of $134,980.54 for the Application Period.

25.     In accordance with the Billing Instructions, the Receiver and his advisors have

separately categorized their services by task. The following table summarizes the respective

number of hours incurred relative to each task category during the Application Period:

### Receiver John Lewis, Jr.

| Task Description | Hours Worked | Total Fees |
|---|---|---|
| Asset Analysis | 39.10 | $ 20,527.50 |
| Asset Disposition | 9.40 | $  4,935.00 |
| Business Operations | 8.70 | $  4,567.50 |
| Case Administration | 55.80 | $ 29,295.00 |
| Status Reports | 14.60 | $  7,665.00 |
| Litigation | 43.30 | $ 22,732.50 |

### Receiver's Counsel, Shook, Hardy & Bacon L.L.P.

| Task Description | Hours Worked | Total Fees |
|---|---|---|
| Asset Analysis | 73.70 | $ 31,322.50 |
| Asset Disposition | 40.80 | $ 17,340.00 |
| Business Operations | 24.80 | $ 10,540.00 |
| Case Administration | 87.10 | $ 31,883.50 |
| Accounting/Auditing | 0.20 | $      85.00 |
| Status Reports | 19.80 | $  8,415.00 |
| Litigation | 270.40 | $112,804.50 |
| Litigation Consulting | 2.70 | $  1,147.50 |

### Receiver's Counsel (Louisiana), Pugh Accardo, LLC

| Task Description | Hours Worked | Total Fees |
|---|---|---|
| Litigation | 2.20 | $     769.00 |

### Receiver's Forensic Accounting Consultant, Hays Financial Consulting, LLC

| Task Description | Hours Worked | Total Fees |
|---|---|---|
| Accounting | 17.50 | $  4.830.00 |
| Asset Analysis & Recovery | 39.70 | $ 10,952.80 |
| Asset Disposition | 7.90 | $  2,214.80 |

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**

| Business Analysis | 71.10 | $ 19,127.40 |
|---|---|---|
| Business Operations | 43.40 | $ 13,999.40 |
| Case Admin | 54.20 | $ 17,351.00 |
| Claims Admin & Objections | 1.30 | $     358.80 |
| Data Analysis | 61.30 | $ 17,829.80 |
| Forensic Accounting | 7.00 | $   1,932.00 |
| Litigation Consulting | 117.70 | $ 35,059.40 |
| Status Reports | 22.20 | $   7,907.40 |
| Tax Issues | 4.6 | $   1,269.60 |

26.     This interim application is the first application that the Receiver has made. No prior orders have been entered, no amounts have been allowed or disallowed, and no previous payments have been made.

27.     The Receivership Order provides, "Receiver's fees—including all fees and costs for the Receiver and others retained to assist in the administration and liquidation of the Receivership estate—are capped at $120,000 during the initial 60-day period." Receivership Order ¶ 52. The Receiver's First Interim Report detailed that as of November 28, 2022, the Receiver's fees incurred were approximately $245,800.00. *See* First Interim Report ¶33.

28.     As more fully described in the Receiver's First Interim Report, the geographic scope, complexity, and financial impact of the fraud are much larger and much more complex than initially anticipated by the SEC; thus, requiring significantly more of the Receiver and his team's time and expertise than initially foreseen.  In this case, the Receiver's ongoing investigation has revealed that this case is twenty-five times larger and more extensive than could be known to the SEC at the time the action was filed. Instead of fraud in the $12 million range, the Receiver has uncovered forensic evidence establishing that the Defendants have defrauded over 40,000 victims in excess of $300 million. *See* Exhibit G.

29.     Additionally, the lack of any organized accounting records, ongoing fraudulent activities well-after the entry of the Receivership Order, the violations of this Court's Order by

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**

Defendant Chavez and his associates, and Chavez's lack of cooperation with the Receiver have also required more work. *See id.*; *see also* Receiver's Motion for Order to Show Cause (Doc. No. 39). The Receiver and his advisors have worked diligently to investigate the Defendants' fraudulent Ponzi scheme, which continued even after the entry of the Receivership Order. As detailed in the Receiver's First Interim Report filed on November 28, 2022, and the Receiver's Motion for Show Cause (Doc. No. 39), a preliminary review of CFX's business records and witness testimony have established that CFX, Chavez, and persons controlled by or affiliated with Defendants have continued—in violation of the Court's Receivership Order—to conduct "business," including soliciting and accepting "investor" money in the form of cash. *See* First Interim Report at ¶2; *see also* Motion for Show Cause at 6-8. Deposition testimony of several CFX sales persons and employees, as well as interviews the Receiver has conducted with additional sales persons and victims have revealed that Mr. Chavez and persons associated with him continued to make and promise "payments" as recently as December of 2022. As part of the Receiver's ongoing investigation, the Receiver has investigated the Defendants' ongoing fraud scheme in Texas, California, New Jersey, Louisiana, and Illinois. The Receiver's ongoing investigation has revealed that after the entry of the Receivership Order, Chavez and some of his associates began operating other "academies/"schemes similar to CFX, in order to collect more funds and circumvent the Court's Receivership Order. The Receiver and his team quickly identified and deployed resources across the country, interviewed victims willing to do so, and continued to search business records, public records, social media, and issue third-party subpoenas requesting information and documents. The Defendants' ongoing fraudulent activity was not anticipated at the outset of this case and has caused the Receiver and his advisors to spend countless hours investigating such activities.

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**

30.     Additionally, as detailed at great length in the Receiver's Motion for an Order to Show Cause, Chavez has refused to comply with several provisions of the Court's Receivership Order and this has added another layer of complexity to the Receiver's duties. As a result, the Receiver has spent significant time requesting that Chavez produce information, documents, and Receivership assets, on multiple occasions, and the Receiver's requests have been blatantly ignored. Chavez's continued lack of cooperation has caused the Receiver and his advisors to perform additional investigatory work in order to identify and collect said information from various third parties.

### ARGUMENT AND AUTHORITES IN SUPPORT OF REQUEST

31.     In support of this request for allowance of compensation and reimbursement of expenses, the Receiver and his advisors respectfully direct this Court's attention to those factors generally considered by Courts in awarding compensation to professionals for services performed in connection with the administration of a receivership estate. As stated by the Sixth Circuit Court of Appeals in *Reed v. Rhodes*, 179 F.3rd 453, 471 (6th Cir. 1999), "the primary concern in an attorney's fee case is that the fees awarded be reasonable." A reasonable fee is "one that is adequate to attract competent counsel. . ." *See Blum v. Stenson*, 465 U.S. 886, 893-94 (1984). (internal citation omitted). Under the twelve factor test enunciated by the Fifth Circuit in *Johnson v. Georgia Hwy. Express, Inc*., 488 F.2d 714, 717 (5th Cir. 1974), and adopted by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983), a court must first determine the loadstar amount by multiplying the reasonable number of hours billed by a reasonable billing rate. *Johnson*, 488 F.2d at 717. That amount can then be adjusted by the "Johnson Factors."

32.     The compensation requested is allowable pursuant to the twelve-factor test (the "Johnson Factors") set forth in *Johnson,* 488 F.2d at 717-19. The Johnson Factors and their applicability in this case are as follows:

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**

33.   <u>Time and Labor Required</u>: The Receiver and his advisors expended the hours detailed in the attached exhibits in performing Services during the Application Period. In support of this application, the Receiver submits the following exhibits for the Court's review.

- Exhibit C demonstrates professional fees (including (i) the date the services were rendered, (ii) the nature of the services rendered, (iii) the time required for the performance of such services, and (iv) the fees charged for each service rendered) and expenses of SHB in connection with the administration of the Receivership;

- Exhibit D demonstrates professional fees (including (i) the date the services were rendered, (ii) the nature of the services rendered, (iii) the time required for the performance of such services, and (iv) the fees charged for each service rendered) and expenses of the Receiver in connection with the administration of the Receivership;

- Exhibit E demonstrates professional fees (including (i) the date the services were rendered, (ii) the nature of the services rendered, (iii) the time required for the performance of such services, and (iv) the fees charged for each service rendered) and expenses of Pugh Accardo in connection with the administration of the Receivership;

- Exhibit F demonstrates professional fees (including (i) the date the services were rendered, (ii) the nature of the services rendered, (iii) the time required for the performance of such services, and (iv) the fees charged for each service rendered) and expenses of Hays in connection with the administration of the Receivership;

- Certification of John Lewis, Jr. stating the reasonableness of the rates charged and hours billed by professionals at SHB, Pugh Accardo, and Hays.

a.   <u>Novelty and Difficulty of Questions Presented</u>: The Services performed involved issues of varying complexity, as set forth in substantial detail in the billing statements attached to this Application.

b.   <u>Skill Requisite to Perform Professional Services</u>: The Receiver and his professional team possess substantial expertise and experience in bankruptcy, receiverships, litigation, and related fields and are well-qualified to perform the professional Services.

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**

     c.    <u>Preclusion of Other Employment Due to Acceptance of the Cases</u>: The Receiver and his team devoted time and resources to this case to the possible preclusion of involvement in other matters.

     34.    <u>Customary Fees for the Type of Services Rendered</u>:  SHB, Pugh Accardo, and Hays have charged fees that are at or below the standard billing rates for the professionals working on this matter, and those fees are at or below customary fees charged by like professionals in their respective markets. SHB's flat rate of $425.00 per hour is a significant discount to the normal billing rate of $600.00-$730.00 per hour for the attorneys working on this matter. Further, Hays' rate of $362.00 per hour for Greg Hays and $170.00 to $276.00 per hour for other professionals is a 15% discount from the standard hourly rate of $200.00 to $425.00 per hour.

     35.    SHB, Pugh Accardo, and Hays have billed all expenses at their actual costs with no mark-up added and they are not seeking overhead charges. The fees and expenses sought in this application are reasonable and were necessary for the proper administration of the duties of the Receiver.

     d.    <u>Whether the Fee is Fixed or Contingent</u>: The requested fees are subject to Court approval and are primarily based upon hourly rates without any fixed or flat fees. Compensation is "contingent" only in the sense that there are risks of non-allowance or non-payment.

     e.    <u>Time Limitations Imposed by the Client or Other Circumstances</u>:  The time requirements during the period covered by this application have been substantial. The Receiver and his team are constantly investigating, locating, and taking possession of Defendants' assets, responding to investors, analyzing new information learned from the ongoing investigation, monitoring and updating the Receiver's website, reviewing company documents collected at the

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**

CFX office or produced by witnesses at depositions or interviews, responding to investor questions and concerns, and reporting information as necessary to the Court.

36.    <u>The Amount Involved and Results Obtained</u>:  Furthermore, the Receiver and his advisors have performed tasks that have added value to the Receivership by locating, taking possession of, and liquidating Receivership assets. Specifically, On September 29, 2022, the Receiver, SEC attorneys and professional staff, with the assistance of the U.S. Marshall Service arrived at the corporate offices of CFX and took custody, possession, and control of the CFX leased business premises and all the contents therein. The Receiver took custody of computers, I-pads, a cell phone, electronic devices, the office's security system, furniture, and two safes. The Receiver also took possession of cash detailed in paragraph 4 of this report. The following day, and over the course of the following days, the Receiver returned to the location and completed a sweep of the premises and collected 32 devices and 55 boxes of business records. Additional actions the Receiver and his advisors have taken during the Application Period include, but are not limited to, the following:

a.    Maintaining a Receiver Website (cryptofxreceiver.com), email address (receivership@shb.com), and phone number (713-546-5614) so that investors can receive information pertaining to the receivership in both English and Spanish.

b.    Taking strategic control of Receivership Defendants' offices, company documents, and accounting records;

c.    Communicating with investors by phone and email;

d.    Conducting interviews of investors;

e.    Taking depositions of CFX sales agents and employees;

f.    Conducting interviews of additional sales agents;

g.    Identifying and securing receivership assets;

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**

h.   Maintaining cryptocurrency wallets and/or accounts containing Bitcoin cryptocurrency;

i.   Analyzing public blockchain records to trace assets received by investors in connection with Receivership Defendants and sent out of Receivership Defendants accounts and wallets;

j.   Coordinating valuation and sale of Receivership personal property, such as television sets, cash-counting machines, computer monitors, and others;

k.   Corresponding with third parties to identify potential receivership assets;

l.   Analyzing emails, text messages, and other records to evaluate Receivership Defendant assets;

m.   Preparing charts showing amount of assets received by CFX;

n.   Preparing of paper and electronic records for a detailed forensic analysis;

o.   Reviewing CFX and CBT business records obtained from investors or in response to third-party subpoenas;

p.   Serving subpoenas to third parties for the collection of documents and information to financial institutions, crypto currency platforms, professionals retained by the Defendants, and other fact witnesses in order to locate additional assets;

q.   Analyzing company records to evaluate potential claims against third parties;

r.   Establishing and managing a Relativity database in order to store and review company documents.

s.   Conducting public records searches and related due diligence to affiliated parties, entities, and other potential relief defendants;

t.   Preparing Receiver's Motion to Show Cause of Chavez's violation of Receivership Order;

u.   Preparing discovery requests to CFX sales agents in order to locate additional assets;

v.   Preparing and filing *lis pendens* notices for all Receivership real estate assets;

w.   Preparing freeze letters to third parties in order to provide notice of receivership and locate additional assets;

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**

     x.     Reviewing records received from third parties to perform asset tracing analysis;

     y.     Negotiating with Blalock office landlord about the amount due under the lease;

     z.     Working with real estate broker and real estate appraisers to evaluate and liquidate real property; and

     aa.     Filing notices of the Receivership Order in federal courts where possible Receivership assets are located.

     f.     <u>The Experience, Reputation, and Ability of the Professional</u>: The Receiver and his team have extensive experience in receivership, bankruptcy, and litigation matters.

     g.     <u>Undesirability of the Case</u>: This factor is inapplicable to the present case.

     h.     <u>Nature and Length of Professional Relationship with the Client</u>: SHB and Hays have worked with the Receiver prior to being retained in these proceedings and maintain an ongoing relationship.

     i.     <u>Awards in Similar Cases</u>: The Receiver and the professionals of the Receiver are sregularly awarded compensation in receivership cases on the same basis as requested herein.

     37.     Each of these tasks detailed in the Receiver's First Interim Fee Application was reasonably necessary to secure assets of the Receivership and to evaluate potential sources of other assets. Further, each task was performed efficiently by the Receiver or his advisors at SHB, Pugh Accardo, and Hays.

<b>CONFERRAL WITH THE SEC</b>

     38.     The Receiver and counsel for the SEC have conferred regarding the Receiver's FCIFA and its compliance with the SEC's Billing Guidelines and this Court's Receivership Order, including the $120,000 First 60 Day Fee Cap, the reasonableness of the costs and expenses incurred in the ordinary course of the administration and operation of the Receivership, and the 20% fee holdback discretionary provision under the Receivership Order.

16

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**

39.     To satisfy the First 60 Day Fee Cap and the 20% fee holdback provisions under the Receivership Order, the Receiver has agreed to a total holdback of $130,607.06, equaling a 29.9% of this aggregate fee request with the balance of this FCIFA, including all costs and expenses, to be immediately payable.

40.     Based upon its conferrals with the Receiver, in light of the increased scope of work and the complexity of this matter, counsel for the SEC does not oppose the Receiver's request for an order approving and authorizing, on an interim basis, the payment of fees and expenses as follows:

(a)     That the Receiver be conditionally awarded fees incurred during the First Interim Fee Application in the amount of $89,722.50;

(b)     That the Receiver's Retained Professionals be awarded fees incurred during the First Interim Fee Application as follows:   Shook Hardy & Bacon, LLC for $213,538.00; Hays Financial for $132,832.40; and Pugh Accardo (Louisiana co-counsel) for $720.00;

(c)     That the fees awarded in paragraphs (a) and (b) above be authorized conditionally and subject to a total holdback of $130,607.06 equaling a 29.9% of this aggregate fee request with the balance of this First Certified Interim Fee Application to be immediately payable; and

(d)     That the out-of-pocket costs and expenses incurred by the Receiver in the ordinary course of the administration and operation of the Receivership, as set out more fully in this FCIFA in the aggregate amount of $68,430.66, are reasonable and necessary, and that they be approved for immediate reimbursement by the Receiver.

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**

41.     The Receiver reserves all rights to seek relief from the 60-day fee cap at a future date.  Additionally, pursuant to the Receivership Order, the Receiver agrees to file a final fee application at the close of the Receivership requesting final approval of this and all other fees that may be subject to hold back during the pendency of this Receivership.

**CONCLUSION**

42.     Based on the foregoing, the Receiver respectfully requests that the Court enter an order approving the Receiver's First Certified Interim Fee Application and authorizing the Receiver to immediately pay the fees requested in the FCIFA as follows:  (1) to the Receiver in the amount of $62,895.47; (2) to Shook Hardy and Bacon, LLP in the amount of $149,690.14; (3) to Hays in the amount of $93,115.51; and (4) to Pugh Accardo in the amount of $504.72.

43.     The Receiver further asks that the Court find and determine that the costs and expenses incurred by the Receiver in the ordinary course of the administration and operation of the Receivership, as set out more fully in the FCIFA, were reasonable and necessary and that they be approved for immediate reimbursement by the Receiver in the aggregate amount of $68,430.66.

Dated: February 23, 2023

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By:  */s/ Sonila Themeli*
　　　Sonila Themeli
　　　Texas Bar No. 24073588
　　　S.D. Tex. Bar No. 2828237
　　　600 Travis Street, Suite 3400
　　　Houston, TX 77002
　　　Telephone:  713.227.8008
　　　Facsimile:  713.227.9508
　　　sthemeli@shb.com

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**

Caroline M. Gieser
(admitted *pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
1230 Peachtree Street, NE, Suite 1200
Atlanta, GA  30309
Telephone:  470.867.6000
mcgieser@shb.com

**Counsel for John Lewis, Jr.**
**Court-Appointed Receiver**

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that she has conferred with counsel for Plaintiff, and the

SEC does not oppose this Motion and supports granting the relief requested herein.


/s/ *Sonila Themeli*
Sonila Themeli

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 23rd day of February, 2023, the above and foregoing document was filed electronically through the CM/ECF system, which sent notification of such filing to all known counsel of record.

Matthew J. Gulde
UNITED STATES SECURITIES
AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX 76102
Telephone: 817.978.1410
Facsimile: 817.978.4927
guldem@sec.gov

*Counsel for Plaintiff*
*U.S. Securities and Exchange Commission*

Paul D. Flack
PRATT & FLACK, LLP
4306 Yoakum Blvd., Suite 500
Houston, TX 77006
Telephone: 713.705.3087
pflack@prattflack.como

*Counsel for Defendant Mauricio Chavez*

Dan L. Cogdell
COGDELL LAW FIRM, PLLC
1000 Main Street, Suite 2300
Houston, TX 77002
Telephone: 713.437.1869
Facsimile: 713.437.1810
dcogdell@joneswalker.com

*Counsel for Defendant Giorgio Benvenuto*

/s/ Sonila Themeli
Sonila Themeli

**RECEIVER'S FIRST CERTIFIED INTERIM FEE APPLICATION**