IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § § § § § § § § § § § § § | |
| *Plaintiff,* | | |
| vs. | | |
| MAURICIO CHAVEZ, GIORGIO BENVENUTO and CryptoFX, LLC, | | CIVIL ACTION NO. 4:22-CV-03359 |
| | | JUDGE ANDREW S. HANEN |
| *Defendants.* | | |
| CBT Group, LLC, | | |
| *Relief Defendant.* | | |

### RECEIVER'S RESPONSE TO MAURICIO CHAVEZ'S MOTION FOR PAYMENT OF ATTORNEY'S FEES

John Lewis, Jr., the Receiver appointed by the Court for all four Defendants—Mauricio Chavez ("Chavez") and Giorgio Benvenuto ("Benvenuto"), individually, and the two corporate Defendants CryptoFX, LLC ("CFX") and CBT Group, LLC (CBT") (collectively "Receivership Estate")—files this Response to Mauricio Chavez's Motion for Payment of Attorney's Fees (Doc. No. 61). This Response was previously provided to the Court on February 3, 2023 in response to Mr. Flack's letter requesting payment of Chavez's attorney's fees from recovered receivership funds. A copy of the Receiver's letter is attached herein as Exhibit A.

#### INTRODUCTION

At issue here is not Mr. Flack's expertise or whether it was reasonable for him to attend depositions or perform other activities in representing his client. The issue instead is what constitutes "reasonable attorney's fees" in this case in light of the fact that Chavez still has not

accounted for the $7,106,867.00 that he and CryptoFX collected from September 20, 2022, when this Court ordered the asset freeze, to September 28, 2022, the day before the entry of the Receivership Order (Receivership Order, Doc. No. 11),[1] and the fact that Chavez has failed to cooperate with the Receiver in direct violation of this Court's Receivership Order, thus causing undue burden and expense on the estate.[2]

## FACTUAL BACKGROUND

On December 1, 2022, Mr. Flack notified counsel for the Receiver that he had been retained by Chavez and that he "plan[ned] to file an appearance and notify the Court of [his] rate and request a retainer of $25,000." He also asked for the Receiver's position on his rate and retainer. *See* December 1, 2022 e-mail from Flack to Themeli, attached to Mr. Flack's Letter to the Court (Doc. No. 61-5). In accordance with the Receivership Order, which provides that the Receiver "shall make allowances . . . for reasonable attorneys' fees for the Defendants," the Receiver approved $14,500 if Chavez turned over three of his four automobiles and provided information the Receiver had repeatedly requested from Chavez since early October. *See* Motion to Show Cause generally. The Receiver also approved an additional $14,500 retainer for Mr. Flack conditioned on Chavez's cooperation with the Receiver. *Id*. Mr. Flack did not file a motion for approval of his rate or request a retainer with the Court when he entered this case.

On January 24, 2023, as stated in Mr. Flack's Motion and letter, he requested the Receiver's position on the fees and expenses incurred in his representation of Chavez in this case—$6,050 for November and $56,155 for work done in December 2022. The Receiver responded that he did not think the fees were reasonable considering Chavez's lack of

---

[1] This amount does not include the funds that were collected after the entry of the Receivership Order. *See* Motion for Show Cause at 6.
[2] Soon after his appointment, the Receiver clawed back the retainers from the Defendants' prior lawyers. *See* Receiver First and Second Status Reports (Doc. Nos. 33 and 50).

**RECEIVER'S RESPONSE TO MAURICIO CHAVEZ'S MOTION FOR PAYMENT OF ATTORNEY'S FEES**

cooperation since the start of this case, which is the subject of the Receiver's Motion for Show cause (Doc. No. 39) and discussed in the Receiver's First and Second Reports (Doc. Nos. 33, 50). The Receiver however approved $30,000 in attorney's fees to be paid quarterly with a 20% hold back and subject to a 30-day approval. The Receiver thinks this is a reasonable amount of attorney's fees and it is in accordance with the Receivership Order on how professionals, including the Receiver, are to be paid. *See* January 24, 2023 e-mail from Themeli to Flack, attached to Mr. Flack's letter to the Court and Motion for Fees (Doc. No. 61-1). Chavez submitted the summary of additional invoices with his Motion.[3] *See* Chavez's Motion for Fees (at 61-3). The total of the attorney fees requested by Chavez is $129,364.45. *See id.*

## AUTHORITIES AND ARGUMENT

The Court has authority to freeze assets in a civil enforcement action, and "it also has the discretion to unfreeze those assets when equity requires.'" *F.T.C. v. Liberty Supply Co.*, No. 4:15-CV-829, 2016 WL 4182726, at *2 (E.D. Tex. Aug. 8, 2016) (quoting *F.T.C. v. Vantage Point Servs., LLC*, No. 15-65-6S, 2016 WL 1745514, at *1 (W.D.N.Y. May 3, 2016)). When determining the release of frozen assets, the Court must balance the interests of investors in preserving the assets for possible later restitution with the interests of the parties seeking release from the freeze. *Id.* (citing *SEC v. Dobbins*, No. 3:04-CV-0605-H, 2004 WL 957715, at *2 (N.D. Tex. Apr. 14, 2004)). In balancing these interests, the Court considers "whether the defendants have other available funds by which to pay their attorneys, which requires full financial disclosure by the defendants as well as the claims of the consumers who were the victims of the defendants [alleged] wrongdoing." *Vantage Point*, 2016 WL 1745514, at *2 (internal quotations omitted). Further, "'the burden . . . will be on the defendant to satisfy the

---

[3] Mr. Flack has not provided the actual invoices.

**RECEIVER'S RESPONSE TO MAURICIO CHAVEZ'S MOTION FOR PAYMENT OF ATTORNEY'S FEES**

court that he can secure the services of an attorney only if assets subject to the freeze order are released.'" *Liberty Supply*, 2016 WL 4182726, at *3 (quoting *Fed. Savings & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987)). Additionally, "[t]o persuade a court to unfreeze assets, the defendant must establish that the funds he seeks to release are untainted and that there are sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a violation is established at trial." *SEC v. Stein*, No. 07 Civ. 3125 (GEL), 2009 WL 1181061, at *1 (S.D.N.Y. Apr. 30, 2009).

Here, Chavez requests that his attorney's fees be paid out of the Receivership estate;[4] thus, there is a strong interest in preserving the assets to compensate the victims in this case. Additionally, Chavez has not demonstrated a need to access frozen funds to pay for his attorney's fees choosing instead to attempt to hide behind a seemingly unlimited blanket claim of 5th Amendment privilege that, in his view, protects him from turning over a computer and cellphone, providing any personal financial disclosure or providing any accounting, banking, employee data, insurance or any information regarding his other business ventures. As stated above and in the Receiver's Motion for Show Cause, he has not provided an accounting of his assets and the funds he took from CryptoFX.

Nor has Chavez made a showing that he is not able to obtain (or even seeking) gainful employment to cover his attorney's fees (as well as his living expenses). Nothing in the Receivership Order prohibits Chavez from obtaining gainful employment. *See F.T.C. v. ACRO Servs. LLC*, No. 3:22-CV-00895, 2023 WL 351202, at *5 (M.D. Tenn. Jan. 20, 2023) (stating that "courts have found that failure to show an effort to obtain gainful employment to cover

---

[4] Although the Receivership Order provides that "the Receiver shall make allowances for reasonable living expenses for the individual Defendants and for reasonable attorney's fees," *see* Order at ¶ 3, it does not specify whether those funds should come from the Receivership Estate, or from money Mr. Chavez earns through legitimate employment.

RECEIVER'S RESPONSE TO MAURICIO CHAVEZ'S MOTION FOR PAYMENT OF ATTORNEY'S FEES

living expenses generally weighs against unfreezing of assets."); *F.T.C. v. Telestar Consulting, Inc.*, No. CV 16-00555 SJS (SSx), 2017 WL 11632797, at *5 (C.D. Cal. March 22, 2017) ("Perhaps the most problematic aspect of Defendant's request [to unfreeze assets] is his failure to make any showing either that his wife or his daughters have made efforts to obtain gainful employment sufficient to cover their expenses or that these individuals are incapable of working."). Indeed, unfreezing assets becomes significantly less necessary where a defendant can earn a living.[5] Further and importantly, Chavez has not shown that the funds he seeks to release are untainted and that there are sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a violation is established at trial.

Chavez complains that the Receiver should not condition payment of the attorney's fees on his cooperation with the Receiver and turnover of Receivership assets. Yet, the Receivership Order specifically requires Chavez, among other things, to "[c]ooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver." Order at ¶ 16.D. The Order also requires Chavez to stop all activities related to CryptoFX, which undisputedly continued after the appointment of the Receiver and

---

[5] *SEC v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993) ("Parties to litigation usually may spend their resources as they please to retain counsel. 'Their' resources is a vital qualifier. Just as a bank robber cannot use the loot to wage the best defense money can buy, so a swindler in securities markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime.") (citations omitted). Numerous other courts agree. *See, e.g., CFTC v. Wilson*, No. 11CV1651 WQH BLM, *3 (S.D. Cal. Dec. 20, 2011) ("When funds are linked directly to the fraud, it would frustrate the purpose of the regulation to allow the defendant to use funds for attorney fees."); *SEC v. Merrill Scott & Assocs.*, No. 2:02-CV-39-TC, 2008 WL 80257, at *1 (D. Utah Jan. 7, 2008) (defendant "is not entitled to fund his defense costs in this litigation from funds he acquired through fraud."); *SEC v. Grossman*, 887 F. Supp. 649, 661 (S.D.N.Y. 1995) ("it is well established that there is no right to use the money of others for legal services").

RECEIVER'S RESPONSE TO MAURICIO CHAVEZ'S MOTION FOR PAYMENT OF ATTORNEY'S FEES

appeared to continue even until a month ago.[6]  Chavez cannot pick and choose which provisions of the Order he likes to comply with.

## CONCLUSION

The Receiver does not doubt Mr. Flack's expertise and takes no issue, generally, with the fees he claims to have incurred.  The question here is whether it is reasonable for the estate to pay for Chavez's attorney's fees on these facts.  Without an accounting of Chavez's assets and a showing that he is unable to work, there is no basis on which to determine what is "reasonable" and what is not.  Therefore, the Receiver asks that the Court clarify the provision in the Receivership Order that allows for reasonable attorney's fees and living expenses for the Defendants and not allow for the payment of such fees and expenses until Chavez has provided a complete accounting of his assets.

Dated:  March 22, 2023

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: /s/ Sonila Themeli
Sonila Themeli
Texas Bar No. 24073588
S.D. Tex. Bar No. 2828237
600 Travis Street, Suite 3400
Houston, TX 77002
Telephone:  713.227.8008
Facsimile:   713.227.9508
sthemeli@shb.com

---

[6] Last month, investors brought to the attention of the Receiver, that CryptoFX sales agents and/or former employees were still communicating with investors and even speaking on behalf of the SEC and Receiver and sending investors the following message: "Important announcement: CFX Academy sends this communication to inform you that the waiting time to start processing payments will be approximately 60 days or more. In the event that you do not want to wait, you can communicate directly with the SEC at the number 7135465653 [Receiver's number] so that you can start your payment process on your contract through that number; they will give you the instructions to follow.  If you want more information, you can contact the CFX academy Customer Service main line at 7134290262." *See* Ex. A Letter to the Court and attached copies of these messages in Spanish.

**RECEIVER'S RESPONSE TO MAURICIO CHAVEZ'S MOTION FOR PAYMENT OF ATTORNEY'S FEES**

Caroline M. Gieser
(admitted *pro hac vice*)
1230 Peachtree Street, NE, Suite 1200
Atlanta, GA 30309
Telephone: 470.867.6000
mcgieser@shb.com

***Counsel for Court-Appointed
Receiver John Lewis, Jr.***

## CERTIFICATE OF SERVICE

I hereby certify that on this the 22nd day of March, 2023, the above and foregoing document was filed electronically through the CM/ECF system, which sent notification of such filing to all counsel of record:

| | |
|---|---|
| Matthew J. Gulde<br>UNITED STATES SECURITIES<br>AND EXCHANGE COMMISSION<br>Burnett Plaza, Suite 1900<br>801 Cherry Street, Unit 18<br>Fort Worth, TX 76102<br>Telephone: 817.978.1410<br>Facsimile: 817.978.4927<br>guldem@sec.gov<br><br>*Attorney for Plaintiff*<br>*U.S. Securities and Exchange Commission* | Paul D. Flack<br>PRATT & FLACK, LLP<br>4306 Yoakum Blvd., Suite 500<br>Houston, TX 77006<br>Telephone: 713.705.3087<br>pflack@prattflack.com<br><br>*Attorney for Defendant,*<br>*Mauricio Chavez*<br><br>Dan L. Cogdell<br>COGDELL LAW FIRM, PLLC<br>1000 Main Street, Suite 2300<br>Houston, TX 77002<br>Telephone: 713.426.2244<br>Dan@cogdell-law.com<br><br>*Attorney for Defendant,*<br>*Giorgio Benvenuto* |

*/s/ Sonila Themeli*
Sonila Themeli