# EXHIBIT A



February 3, 2023

*Via E-mail*

Hon. Andrew S. Hanen
United States Courthouse
515 Rusk Street, Room 9110
Houston, Texas 77002
Email: Rhonda_Hawkins@txs.uscourts.gov

**Sonila Themeli**
Senior Counsel

JPMorgan Chase Tower
600 Travis St., Suite 3400
Houston, Texas 77002
**t** 713.227.8008
**d** 713.546.5656
**f** 713.227.9508
sthemeli@shb.com

    RE:    Receiver's Response to Mr. Flack's Letter to the Court Requesting Prehearing Conference
*Securities and Exchange Commission v. Mauricio Chavez, Giorgio Benvenuto, CryptoFX, LLC (Defendants) and CBT Group, LLC (Relief Defendant)*; Case No. 4:22-CV-03359

Dear Judge Hanen:

    I represent John Lewis, Jr., who has been appointed by the Court as the Receiver for Mauricio Chavez and Giorgio Benvenuto, individually, and for CryptoFX, LLC, and CBT Group, LLC (collectively "Defendants"). This letter responds to Mr. Flack's January 26, 2023 letter regarding payment of Mr. Chavez's attorney's fees from recovered receivership assets.

    At issue here is what constitutes "reasonable attorney's fees" in this case in light of the fact that Mr. Chavez still has not accounted for the $7,106,867.00 that he and CryptoFX collected from September 20, 2022, when this Court ordered the asset freeze (Receivership Order, para. 3), to September 28, 2022, the day before entry of the Receivership Order,[1] and the fact that Mr. Chavez has failed to cooperate with the Receiver in direct violation of this Court's Receivership Order, thus causing undue burden and expense on the estate.[2]

    On December 1, 2022, Mr. Flack notified the undersigned that he had been retained by Mr. Chavez and that he "plan[ned] to file an appearance and notify the Court of [his] rate and request a retainer of $25,000." He also asked

---

[1] This amount does not include the funds that were collected after the entry of the Receivership Order. *See* Motion for Show Cause at 6.

[2] Soon after his appointment, the Receiver clawed back the retainers from the Defendants' prior lawyers. *See* Receiver First and Second Status Reports (Doc. Nos. 33 and 50).



February 3, 2023
Page 2

for the Receiver's position on his rate and retainer. *See* December 1, 2022 Email attached to Mr. Flack's Letter. In accordance with the Receivership Order, which provides that the Receiver "shall make allowances . . . for reasonable attorneys' fees for the Defendants," the Receiver approved $14,500 *if* Mr. Chavez turned over three of his four automobiles and provided information the Receiver had repeatedly requested from Mr. Chavez. The Receiver also approved an additional $14,500 retainer for Mr. Flack conditioned on Mr. Chavez's cooperation with the Receiver. *Id*. Mr. Flack did not file a motion for approval of his rate or request a retainer with the Court when he entered this case.

On January 24, 2023, as stated in Mr. Flack's letter, he requested the Receiver's position on the fees and expenses incurred in his representation of Mr. Chavez in this case—$6,050 for November and $56,155 for work done in December 2022. The Receiver responded that he did not think the fees were reasonable considering Mr. Chavez's lack of cooperation since the start of this case, which is the subject of the Receiver's Motion for Show cause (Doc. No. 39) and discussed in the Receiver's First and Second Reports (Doc. Nos. 33, 50). While the Receiver is not opposed to the payment of a "reasonable" fee to Mr. Flack out of recovered funds that would pay victims of Mr. Chavez's alleged fraud, the Receiver finds Mr. Chavez's continued refusal to provide basic information such as turnover of a computer and delivery of passwords based upon an untenably broad claim of 5th Amendment privilege contrary to applicable law, public policy, and the equities in this case.[3] Regardless, the Receiver approved $30,000 in attorney's fees to be paid quarterly with a 20% hold back and subject to a 30-day approval. The Receiver thinks this is a reasonable amount of attorney's fees and it is in accordance with the Receivership Order on how professionals, including the Receiver, are to be paid. *See* January 24, 2023 email from undersigned to Mr. Flack, attached to Mr. Flack's letter.

Mr. Flack complains that the Receiver should not condition payment of the attorney's fees on Mr. Chavez's cooperation with the Receiver and turnover of Receivership assets. Yet, the Receivership Order specifically requires Mr. Chavez, among other things, to "[c]ooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver." Order at ¶ 16.D. The Order also requires Mr. Chavez to stop all activities related to CryptoFX, which undisputedly continued

---

[3] Receiver's position regarding Chavez's impermissibly broad 5th Amendment assertion is briefed in more detail in Receiver's Reply to Chavez's Response to Receiver's Show Cause Motion (Doc. N0. 49)

ATLANTA | BOSTON | CHICAGO | DENVER | HARTFORD | HOUSTON | KANSAS CITY | LONDON | LOS ANGELES | MIAMI | NEW YORK |
ORANGE COUNTY | PHILADELPHIA | SAN FRANCISCO | SEATTLE | ST. LOUIS | TAMPA| WASHINGTON, D.C.



after the appointment of the Receiver and appear to still continue.[4] Mr. Chavez cannot pick and choose which provisions of the Order he likes to comply with.

February 3, 2023
Page 3

The Court has authority to freeze assets in a civil enforcement action, and "it also has the discretion to unfreeze those assets when equity requires.'" *F.T.C. v. Liberty Supply Co.*, No. 4:15-CV-829, 2016 WL 4182726, at *2 (E.D. Tex. Aug. 8, 2016) (quoting *F.T.C. v. Vantage Point Servs., LLC*, 15-65-6S, 2016 WL 1745514, at *1 (W.D.N.Y. May 3, 2016)). When determining the release of frozen assets, the Court must balance the interests of investors in preserving the assets for possible later restitution with the interests of the parties seeking release from the freeze. *Id*. (citing *S.E.C. v. Dobbins*, No. 3:04-CV-0605-H, 2004 WL 957715, at *2 (N.D. Tex. Apr. 14, 2004)). "In balancing the defendants' right to fund their defense against the preservation of assets to compensate potential victims, the Court considers 'whether the defendants have other available funds by which to pay their attorneys, which requires full financial disclosure by the defendants' as well as 'the claims of the consumers who were the victims of the defendants' [alleged] wrongdoing." *Vantage Point Servs.*, L.L.C., 2016 WL 1745514, at *2. "Therefore, while 'some kind of allowance must be made to permit each defendant to pay reasonable attorneys' fees if [the defendant] is able to show that he cannot pay them from new or exempt assets; the burden . . .will be on the defendant to satisfy the court that he can secure the services of an attorney only if assets subject to the freeze order are released.'" *Liberty Supply*, 2016 WL 4182726, at *3 (quoting *Fed. Savings & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987). Additionally, "[t]o persuade a court to unfreeze assets, the defendant must establish that the funds he seeks to release are untainted and that there are sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a violation is established at trial." *SEC v. Stein*, 2009 WL 1181061, at *1 (S.D.N.Y. Apr. 30, 2009).

---

[4] Investors brought to the attention of the Receiver yesterday afternoon, that CryptoFX sales agents and/or former employees are speaking on behalf of the SEC and Receiver and sending investors the following message: "Important announcement: CFX Academy sends this communication to inform you that the waiting time to start processing payments will be approximately 60 days or more. In the event that you do not want to wait, you can communicate directly with the SEC at the number 7135465653 (Receiver's number) so that you can start your payment process on your contract through that number; they will give you the instructions to follow. If you want more information, you can contact the CFX academy Customer Service main line at 7134290262." *See* attached copies of these messages in Spanish.



February 3, 2023
Page 4

Here, Mr. Chavez requests that the attorney's fees be paid out of the Receivership estate;[5] thus, there is a strong interest in preserving the assets to compensate the victims in this case. Additionally, Mr. Chavez has not demonstrated a need to access frozen funds to pay for his attorney's fees choosing instead to attempt to hide behind a seemingly unlimited blanket claim of 5th Amendment privilege that, in his view, protects him from turning over a computer and cellphone, providing *any* personal financial disclosure or providing *any* accounting, banking, employee data (including required tax forms 1099, W-2), insurance or any information regarding the myriad of other (non-receivership) affiliated business ventures  As stated above and in the Receiver's Motion for Show Cause, he has not provided an accounting of his assets and the funds he took from CryptoFX. Nor has he made a showing that he is not able to obtain (or even seeking) gainful employment to cover his attorney's fees (as well as his living expenses). Nothing in the Receivership Order prohibits Mr. Chavez from obtaining gainful employment. *See F.T.C. v. ACRO Servs. LLC*, No. 3:22-CV-00895, 2023 WL 351202, at *5 (M.D. Tenn. Jan. 20, 2023); *F.T.C. v. Telestar Consulting, Inc*., 2017 WL 11632797, at *5 (C.D. Cal. March 22, 2017) ("Perhaps the most problematic aspect of Defendant's request [to unfreeze assets] is his failure to make any showing either that his wife or his daughters have made efforts to obtain gainful employment sufficient to cover their expenses or that these individuals are incapable of working."). Indeed, unfreezing assets becomes significantly less necessary where a defendant can earn a living.[6] Further and importantly, he has not shown that the funds he seeks to release are untainted and that there are

---

[5] Although the Receivership Order provides that "the Receiver shall make allowances for reasonable living expenses for the individual Defendants and for reasonable attorney's fees," *see* Order at ¶ 3, it does not specify whether those funds should come from the Receivership Estate, or from money Mr. Chavez earns through legitimate employment.

[6] *SEC v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993) ("Parties to litigation usually may spend their resources as they please to retain counsel. 'Their' resources is a vital qualifier. Just as a bank robber cannot use the loot to wage the best defense money can buy, so a swindler in securities markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime.") (citations omitted). Numerous other courts agree. *See, e.g., CFTC v. Wilson*, No. 11CV1651 WQH BLM, *3 (S.D. Cal. Dec. 20, 2011) ("When funds are linked directly to the fraud, it would frustrate the purpose of the regulation to allow the defendant to use funds for attorney fees."); *S.E.C. v. Merrill Scott & Assocs.*, S.E.C. v. Merrill Scott & Assocs., Ltd., No. 2:02-CV-39-TC, 2008 WL 80257, at *1 (D. Utah Jan. 7, 2008) (defendant "is not entitled to fund his defense costs in this litigation from funds he acquired through fraud."); *S.E.C. v. Grossman*, 887 F. Supp. 649, 661 (S.D.N.Y. 1995) ("it is well-established that there is no right to use the money of others for legal services").



sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a violation is established at trial.

February 3, 2023
Page 5

The Receiver does not doubt Mr. Flack's expertise and takes no issue, generally, with the fees he claims to have incurred. The question here is whether it is reasonable for the estate to pay for Mr. Chavez's attorney's fees on these facts.

Mr. Chavez has also requested an allowance for living expenses in the amount of $11,430.29 a month. The Receiver finds this amount highly unreasonable. For example, the IRS national standard for personal expenses is only $785 a month for an individual and $1,410 for a family of two.[7] The undersigned and Mr. Flack are working on resolving some of the issues raised by Mr. Chavez's request for living expenses (such as his BMW for which he appears to pay over $1000/month in car payments and insurance); however, without an accounting of Mr. Chavez's assets and a showing that he is unable to work, there is no basis on which to determine what is "reasonable" and what is not.[8]

Therefore, the parties seeks the Court's guidance on the above issues.

Sincerely,

*/s/ Sonila Themeli*

Sonila Themeli
Counsel for Receiver John Lewis, Jr.

---

[7] https://www.irs.gov/businesses/small-businesses-self-employed/national-standards-food-clothing-and-other-items (last accessed Feb. 2, 2023).

[8] It is also important to note that the other individual defendant in this matter, Mr. Benvenuto, presented, through counsel, a request for reasonable monthly living expenses of $6,000 providing with his request, related substantiation of the claimed expenses. The Receiver accepted this proposal and has been providing the requested allowance because 1) the Receiver found this proposal reasonable and 2) Mr. Benvenuto, has, without waiving any privileges, been cooperative with the Receiver and his team thus far in this case.

# EXHIBIT A


