IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | |
| MAURICIO CHAVEZ, GIORGIO BENVENUTO and CryptoFX, LLC, | § § § | CIVIL ACTION NO. 4:22-CV-03359 |
| *Defendants.* | § § | JUDGE ANDREW S. HANEN |
| CBT Group, LLC, | § § § | |
| *Relief Defendant.* | § § | |

**RECEIVER'S MOTION TO COMPEL**

John Lewis, Jr., the Court-appointed Receiver in the above-referenced action, files this Motion to Compel Defendant Mauricio Chavez to turn over business records and electronic devices.

## <u>TABLE OF CONTENTS</u>

Table of Contents ................................................................................................................ i

Table of Authorities ............................................................................................................ ii

Introduction ........................................................................................................................ 1

Factual and Procedural Background .................................................................................... 1

    A.    Receivership Order ................................................................................... 1

    B.    CryptoFX Operations ............................................................................... 3

    C.    CryptoFX Accounting Records and Google Drive ................................... 6

    D.    Chavez's Computer and Cell Phone ......................................................... 8

    E.    Records About Chavez's Other Businesses ............................................... 9

Legal Authorities and Argument ......................................................................................... 11

    A.    The Records Requested by the Receiver Are Not Protected by Chavez's Attorney-Client Privilege. ........................................................................ 11

    B.    Under the Collective-Entity Doctrine, the Requested Business Records are Not Protected by the Fifth Amendment. ................................................... 12

    C.    Turning Over Business Records And Unencrypted Electronic Devices Is Not Testimonial In Nature. ....................................................................... 15

Conclusion .......................................................................................................................... 19

CERTIFICATE OF conference ........................................................................................... 21

CERTIFICATE OF SERVICE ............................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bellis v. United States*,
417 U.S. 85, 90 (1974)................................................................................12, 13, 14

*Braswell v. United States*,
487 U.S. 99, 102 (1988)..............................................................................12, 13, 15

*Doe v. United States*,
487 U.S. 201, 210 (1988).......................................................................................17

*Expert Janitorial v. Williams*,
No. 3:09-CV-283, 2010 WL 2854295, at *5 (E.D. Tenn. July 19, 2010) ..............13

*Fed. Trade Comm'n v. PointBreak Media, LLC*,
343 F. Supp. 3d 1282, 1292 (S.D. Fla. 2018) .................................................16, 18

*Fisher v. United States*,
425 U.S. 391, 408 (1976)...................................................................15, 16, 17, 18

*In re Grand Jury Proc.*,
814 F.2d 190, 192 (5th Cir. 1987), *aff'd sub nom. Braswell v. United States*,
487 U.S. 99, 108 (1988)....................................................................................13, 14

*In re Grand Jury Proceedings*,
727 F.2d 941, 945 (10th Cir. 1984) ......................................................................14

*In re Grand Jury Subpoena*,
973 F.2d 45, 48 (1st Cir. 1992)........................................................................13, 14

*In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011*,
670 F.3d 1335, 1342 (11th Cir. 2012) ..................................................................16

*Heinhold Hog Market, Inc. v. McCoy*,
700 F.2d 611, 613 (10th Cir. 1983) ......................................................................13

*S.E.C. v. Bravata*,
No. 09-12950, 2011 WL 606745, at *2 (E.D. Mich. Feb. 11, 2011)......................12

*S.E.C. v. Elfindepan, S.A.*,
169 F. Supp. 2d 420, 431 (M.D.N.C. 2001) .........................................................12

*S.E.C. v. Ryan*,
747 F. Supp. 2d 355, 368 (N.D.N.Y. 2010)..........................................................12

**RECEIVER'S MOTION TO COMPEL**

*United States v. Apple MacPro Computer*,
    851 F.3d 238, 247 (3d Cir. 2017)....................................................................17, 18

*United States v. B & D Vending, Inc.*,
    398 F.3d 728, 733 (6th Cir. 2004) ...................................................................13, 14

*United States v. Cheng*,
    No. 4:20-CR-455, 2022 WL 112025, at *6 (S.D. Tex. Jan. 12, 2022) .................15, 16, 17, 18

*United States v. Doe*,
    465 U.S. 605, 612 n.10 (1984).............................................................................16

*United States v. Feng Juan Lu*,
    248 F. App'x 806, 808 (9th Cir. 2007) ................................................................13

*United States v. Harrison*,
    653 F.2d 359, 361-62 (8th Cir. 1981) .................................................................13

*United States v. Hubbell*,
    530 U.S. 27, 34 (2000).....................................................................................15, 16, 18

*United States v. Richardson*,
    469 F.2d 349 (10th Cir. 1972) ...........................................................................13

*United States v. Roe*,
    421 F. App'x 881, 885 (10th Cir. 2011) ..............................................................13

## Statutes

TEX. BUS. ORGS. CODE ANN. § 101.001 *et seq.*.........................................................14

## Other Authorities

U.S. CONSTITUTION, AMEND. V ............................................................ *passim*

**RECEIVER'S MOTION TO COMPEL**

## INTRODUCTION

In this Motion, the Receiver respectfully requests that the Court compel Chavez to turn over CryptoFX, LLC ("CryptoFX") company records, including accounting records under his control, records related to other entities in which he has an interest, as well as his Mac-Mini computer, and his cell phone, both of which store CryptoFX business records. Despite several requests for these records and devices, Chavez refuses to produce them claiming that they are protected by the attorney-client privilege and his Fifth Amendment right against self-incrimination. However, CryptoFX company records and the two devices are Receivership Assets that belong in the Receivership Estate. Their production is not barred by the attorney-client privilege because the Receiver holds that privilege as to the CryptoFX company records, not Chavez. Further, under the collective-entity doctrine, the requested business records (both CryptoFX and other business records) are not protected by the Fifth Amendment. Additionally, the turning over of the business records and the devices is not testimonial in nature, and thus not in violation of Chavez's Fifth Amendment rights.

The Court should compel Chavez to turn over the CryptoFX records under his control, records related to other entities in which he has an interest, as well as his Mac-Mini computer, and his cell phone in an unencrypted state or with usernames and passwords required to access the same.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  Receivership Order

This is a securities fraud case brought by the Securities and Exchange Commission ("SEC") against Defendants Mauricio Chavez ("Chavez"), Giorgio Benvenuto ("Benvenuto"), CryptoFX, and Relief Defendant CBT Group LLC ("CBT"), who allegedly perpetrated a multimillion dollar Ponzi scheme directed at Latino investors. Specifically, Defendants raised

**RECEIVER'S MOTION TO COMPEL**

millions of dollars by promising investors to trade their funds on crypto assets and foreign exchange markets.  Compl. *generally* (Doc. No. 3).

On September 29, 2022, the Court entered an Order Appointing Receiver for all four Defendants—Chavez and Benvenuto, individually, and the two entity Defendants CryptoFX, and CBT (collectively "Receivership Estate") ("Receivership Order," Doc. No. 11).   In the Receivership Order, among other things, the Court took exclusive jurisdiction and possession of all of the assets of the Receivership Estate of whatever kind and wherever situated.  *Id*. at ¶ 1.

Among other things, the Receivership Order authorizes and directs the Receiver to:

    i.  take custody, control, and possession of all records, assets, and other property of the Receivership Estate;

    ii.  perform an accounting of the receipt, disposition, and use of the subject investment proceeds; and

    iii.  investigate any matters that the Receiver deems appropriate in connection with the Receivership Estate.

*Id*. at ¶¶ 14 – 20, 36 – 38, 40 - 41.

Pursuant to the Receivership Order, the Receiver took custody, possession, and control of the CryptoFX leased business premises in Houston, TX, and all the contents therein, including company records and computers.  *See* Declaration of Receiver John Lewis, Jr. in support of Motion to Show Cause (Doc. No. 39-2); *see also* Receiver's First Interim Report (Doc. No. 33).  Further, pursuant to the Order, the Receiver requested that Chavez produce information, documents, and Receivership assets, including CryptoFX records under his control, his computer and cell phone, both of which contain CryptoFX business records, as well as records related to entities he controls or in which he has an interest.  Receiver's Motion to Show Cause at 4-5 (Doc. No. 39).  Chavez has refused to turn over these Receivership assets claiming that production is protected by

**RECEIVER'S MOTION TO COMPEL**

attorney-client privilege and his Fifth Amendment right against self-incrimination.[1]  *See* Chavez's

Response to Motion for Show Cause at 19 and Sur-reply at 7 – 9 (Doc. Nos. 45, 51).

### B. CryptoFX Operations

CryptoFX is a limited liability company based in Houston, TX.  *See* CryptoFx, LLC,

Certificate of Formation, Texas Secretary of State, attached as **Exhibit A**.  Chavez is the founder

and only member of CryptoFX and served as its CEO.  *Id*.; *see also* SEC Motion for Preliminary

Injunction at 2 (citing Deposition of Mauricio Chavez, Feb. 10, 2022 at 27:4, 32:6, and Declaration

of Jillian Harris ("Harris Decl.") at ¶ 4, APP0002) (Doc. No. 6).[2]  CryptoFX sold cryptocurrency

investment packages to investors promising to trade their funds in cryptocurrency and/or foreign

exchange markets.  Affidavit by Greg Hays at ¶ 6, attached as **Exhibit B** ("Hays Affidavit"); *see*

*also* Harris Decl. at ¶ 4 (Doc. 3 - 1 APP0002); Declaration of Carol Hahn at ¶16 ("Hahn Decl.")

(Doc. No. 3 - 5, APP0221 - 22); Deposition of Orlin Turcios, Dec. 8, 2022, at 39:10 – 42:18

("Turcios Dep."), attached as **Exhibit C**.  Chavez was CryptoFX's sole trader.  *See D*eposition of

Mauricio Chavez, Feb. 10, 2022, at 60:13 - 18 ("Chavez Dep."), attached as **Exhibit D**; Harris

Decl. at ¶ 4 (Doc. 3-1 APP0002); *see also* Deposition of Julio Taffinder, Dec. 14, 2022, at 111:12

– 17 ("Taffinder Dep."), attached as **Exhibit E**.  Chavez promised to pay investors (and actually

paid many) 15% - 20% monthly returns on their investments.  **Exhibit B**, Hays Affidavit at ¶ 7;

*see also* **Exhibit E**, Taffinder Dep. at 29:14 - 30:24 (testifying that CryptoFX paid monthly 15%

---

[1]  Following Chavez's failure to comply with the Receivership Order, including producing the materials requested herein, the Receiver filed a Motion to Show Cause, which Chavez opposed.  (Doc. Nos. 39, 49). After oral argument, the Court denied the Receiver's Motion without prejudice to the refiling of a motion to compel.  (Doc. No. 67).

[2]  Chavez's deposition was taken by the SEC during the investigation of the case.  The SEC subpoenaed Chavez for a second deposition, but he refused to testify, citing his privilege against self-incrimination under the Fifth Amendment.  *See* SEC's Appendix in Support of Motion for Preliminary Injunction, Declaration of Jillian Harris (Harris Decl.), at ¶ 8 (Doc. No. 3-1, APP0003 - 4); *see also* Declaration of Mauricio Chavez, June 7, 2022 ("Chavez Decl.") (Doc. No. 3-1, APP0057 - 60).

**RECEIVER'S MOTION TO COMPEL**

returns on the investment and that payments were made every three months); **Exhibit C**, Turcios Dep., at 39:10 – 42:18, 44:21 – 48:1 (same); Deposition of Maria Saravia, Dec. 20, 2023 at 82:20 - 84:4 ("Saravia Dep."), attached as **Exhibit F** (testifying she received 20% monthly returns on her investment and that initially she was paid the returns on her CryptoFX contract monthly); Harris Decl. ¶ 10 (Doc. 3-1 APP0004).

CryptoFX investors were asked to sign a short contract called "Venture Agreement," which outlines the name and address of the investor, the names of the sponsors, the percentage each sponsor received in commissions on the contract, the amount invested, dates when the returns were due, and dates when payment of the returns were made. **Exhibit B**, Hays Affidavit at ¶ 8; Harris, Decl. at ¶ 11 (Doc. 3-1, APP0004); Hahn Decl. at ¶16 (Doc. 3-5, APP0221-22); *see also* **Exhibit C**, Turcios Dep. at 45:16 – 46:9. Payments of returns on prior contracts were made from funds invested by newer investors. *See* **Exhibit B**, Hays Affidavit at ¶ 9; **Exhibit F**, Saravia Dep. at 141:7 – 144:17 (discussing Ex. 47 to the deposition and testifying that payments of returns on prior contracts, commissions and bonuses were made from the same funds she collected from newer contracts). CryptoFX did not send investors any type of statement related to their investments or their performance. **Exhibit B**, Hays Affidavit at ¶¶ 10 – 11.

In order to solicit investments,[3] Chavez built the CryptoFX network referral program, where existing investors were paid to recruit new investors. *See* **Exhibit D**, Chavez Dep. at 92:16 – 94:12; **Exhibit C**, Turcios Dep. at 65:7 – 69:1 (testifying about the referral bonus he received

---

[3] Also for the purpose of soliciting investments, Chavez advertised CryptoFX as an academy offering classes or presentations where investors could learn about crypto assets and how to open crypto wallets. **Exhibit C**, Turcios Dep. at 39:10 – 39:24; Harris Decl. at ¶ 11 (Doc. No. 3-1, APP0004). Attendance of these presentations was not required to invest with CryptoFX. **Exhibit D**, Chavez Dep. at 38:22 – 39:2 (testifying that attendance of "classes" by investors was "optional."); **Exhibit C,** Turcios Dep. at 47:24 – 48:1. Many of the presentations were promotional in nature. *See* **Exhibit E**, Taffinder Dep. at 63:22 – 64:16; Harris Declaration at ¶¶ 30-31 (Doc. No. 3 – 1 APP0009 - 10).

**RECEIVER'S MOTION TO COMPEL**

for referring new investor to CFX); **Exhibit F**, Saravia Dep. at 81:19 – 82:9; 161:9 – 162:1.  These sales people were referred to as sponsors or "leaders."  **Exhibit B**, Hays Affidavit at ¶ 12.  The record shows that CryptoFX operated as a two-level pyramid scheme, where the "direct sponsor" was paid 7% of the invested capital, and the "indirect" sponsor 3%.  *Id.*; *see also* Turcios Dep. at 65:7 – 69:1.  In addition to these commissions, to further incentivize sponsors, CryptoFX paid them bonuses (two of these bonus programs were "Bono Doble" or "double bonuses" and "Bono Elite" or "elite bonus").  **Exhibit B**, Hays Affidavit at ¶ 12; **Exhibit C**, Turcios Dep. at 80:24 – 84:25 (testifying about the elite bonus); 120: 2 – 14 (testifying about double bunus); 176:1 – 177:11.  Payments of the commissions and bonuses were made from the same investor funds the leaders collected.  **Exhibit B**, Hays Affidavit at ¶ 12, *see also* **Exhibit F**, Saravia Dep. at 141:7 – 144:17.

Currently-available company records also show that the majority of the investments and payments on the contracts as well payments to sponsors were made in cash.  **Exhibit B**, Hays Affidavit at ¶ 13.  In fact, investors were specifically asked to bring cash or cryptocurrency to CryptoFX.  **Exhibit C**, Turcios Dep. at 44:21 – 45:15.  Some investments and Ponzi payments were made in cryptocurrency, wire transfers, money orders, checks, or Zelle transfers.  **Exhibit B**, Hays Affidavit  at ¶ 13; Hahn Decl. at ¶¶ 12 (Doc. 3-5, APP0220-21) (investors deposited checks, wire transfers, money orders, cash, Zelle transfers.); **Exhibit E**, Taffinder Dep. 31:18 – 34:14 (testifying about Ex. 31 to the deposition, which is a transcript of WhatsApp messages between Taffinder and Chavez related to payments on CryptoFX contracts made in cryptocurrency by Taffinder).

While the Complaint estimated the fraud to be approximately $12 million dollars and that it involved approximately 5000 investors, currently available CryptoFX records obtained by the

**RECEIVER'S MOTION TO COMPEL**

Receiver show that over $300 million dollars were raised by Chavez and CryptoFX and that the fraud involved over 40,000 investors in several states.  *See* Receiver's Second Interim Report at ¶ 6 (Doc. No. 50)

### C.  CryptoFX Accounting Records and Google Drive

CryptoFX records show that the company had an accounting group run by Norma Chavez, Defendant Chavez's aunt, (*see* **Exhibit F**, Saravia Dep. at 192:21 – 193:9) and a customer service division.  Records show that the accounting personnel recorded investments, payments made to leaders as commissions or bonuses, as well as payments of returns on the contracts.[4]  **Exhibit B**, Hays Affidavit at ¶¶ 14 - 15.  In addition to handling the company phone line, the customer service group assisted with scheduling appointments for existing investors to receive their return payments; taking and recording investor information related to payments in cryptocurrency; recording investor information in the company records; and opening new contracts.  *See* **Exhibit E**, Taffinder Dep. at 21:13 - 22:1, 22:23 - 23:13, 25:16 - 28:1.  Accounting records as well as spreadsheets used by customer service were stored in the CryptoFX Google Drive.  *Id*. at 102:20 - 103:4.

CryptoFX records and testimony show that many of the leaders were sent or given access to Excel spreadsheets, which are also stored in the CryptoFX Google Drive under the control of Chavez ("Leader spreadsheets.").  *See* Email from Chavez to G. Longoria, a CryptoFX Leader, attached as **Exhibit G**.  Leaders used these spreadsheets to record new contracts, names of investors, amounts invested, names of sponsors, amount of commissions and bonuses paid to

---

[4]  Among the CryptoFX accounting records seized by the Receiver are daily Revenue Reports, which recorded daily the amount of funds collected in new contracts, the names of the leaders who collected the funds, amounts given to the leaders to pay returns on previous contracts, commission payments, payments to CryptoFX, payments to Chavez, and other costs.  Examples of these reports are included with December 23, 2022 Affidavit by Greg Hays, in support of Receiver's Motion to Show Cause, Doc. No. 39-5.

**RECEIVER'S MOTION TO COMPEL**

leaders/sponsors, funds paid in returns on prior contracts, and the balance or amount of cash sent to CryptoFX each month. **Exhibit B**, Hays Affidavit. at ¶ 16.

While CryptoFX was based in Houston, it operated in other states as well, including in California, Louisiana, and Illinois. *Id.* at ¶ 17. Records and testimony show that CryptoFX leaders in those states operated the same way that CryptoFX operated in Houston. *Id.* They opened CryptoFX contracts, collected funds from investors, paid the sponsors out of the same funds, paid returns to earlier investors, and then sent the balance of the funds, if any, to Houston, generally every month. *Id.* Funds were transferred to Houston via cryptocurrency, or cash was brought to Houston by the out-of-state leaders themselves, or Chavez would send his driver, Man L. Wong (also known as "Chino") to pick up the cash. *See Id.*; **Exhibit E,** Taffinder Dep. at 180:10 – 186:14 (testifying that leaders would come to Houston to bring the money, and a California leader sent funds to Chavez in the form of cryptocurrency). Out-of-Texas leaders also used the Leader spreadsheets provided to them by the accounting team to record CryptoFX investor and sponsor transactions. **Exhibit B**, Hays Affidavit. at ¶ 17.

While the Receiver has collected many of these accounting and customer service documents from leaders, the Receiver still does not have all of them. *Id.* ¶ 18. The Receiver has requested that Chavez turn over CryptoFX records still in his possession, including giving the Receiver access to the CryptoFX Google Drive that contains company accounting and customer service records, including the Leader spreadsheets, which belong to the Receiver and are crucial to the performance of the Receiver's duties. *See also* Receiver's Motion for Show Cause at 4 - 5 (Doc. No. 39) and Reply in support of the Motion at 2 (Doc. No. 49). Chavez has refused to do so claiming that the production of CryptoFX company records is protected by attorney-client

**RECEIVER'S MOTION TO COMPEL**

privilege and the Fifth Amendment to the U.S. Constitution.  *See* Chavez's Response to Motion for Show Cause at 19 – 20 (Doc. No. 45) and Chavez's Sur-reply at 7 – 8 (Doc. No. 51).

### D.  Chavez's Computer and Cell Phone

Chavez has also refused to turn over his computer, an Apple Mac-Mini device, and his cell phone, which he has used to conduct CryptoFX-related activities.  **Exhibit E**, Taffinder Dep. at 11:5 – 24 (testifying about Ex. 31 to the deposition which consists of WhatsApp messages between Taffinder and Chavez related to payments on CryptoFX contracts made in cryptocurrency by Taffinder at the direction of Chavez); 12:25 – 13:6 (testifying about cell phone communications with Chavez via text messages and WhatsApp messages); 335:14 – 17 (testifying that Chavez used an Apple Mac-Mini computer, a desktop PC, and a phone to conduct CryptoFX activities, including communicating with CryptoFX employees and investors, and trading cryptocurrency). Chavez's Mac-Mini computer was observed on surveillance video of Chavez's CryptoFX office dated September 28, 2022, but was not recovered by the Receiver in his sweep of the CryptoFX business premises.  *See* Receiver's Motion to Show Cause at 7 (Doc. No. 39).  Chavez's Mac-Mini is in the possession of his counsel.  *See* Chavez's Response to Receiver's Motion to Show Cause. It is undisputed that Chavez can unlock this device—he does not claim he cannot.  Chavez refuses to turn over this device claiming it contains privileged information, "personal and intimate" material, and that the production of this computer is protected by the Fifth Amendment.  *See* Chavez's Response to Motion to Cause at 19 (Doc. No. 45).

Further, the record is uncontroverted that Chavez used his cell phone and WhatsApp[5] to communicate with his employees, business partners, sponsors, and investors.  For example,

---

[5]  WhatsApp is an internationally available freeware, cross-platform, centralized instant messaging and voice-over-IP service. It allows users to send text and voice messages, make voice and video calls, and share images, documents.

**RECEIVER'S MOTION TO COMPEL**

approval of payment of returns on CryptoFX contracts was done in part via WhatsApp messages. *See* **Exhibit E**, Taffinder Dep., 31:13 – 33:17 (testifying about Ex. 31, transcript of messages between Chavez and Taffinder requesting Chavez to transfer cryptocurrency to a CryptoFX Exodus[6] account Taffinder handled to make payments of returns on CryptoFX contracts to investors).  It is also undisputed that Chavez used WhatsApp to communicate with leaders and investors.  Further, it is undisputed that Chavez has the password or access code to his phone.

### E.  Records About Chavez's Other Businesses

Pursuant to the Receivership Order the Receiver has properly requested and Chavez has refused and continues to refuse to turn over records about his other businesses: Maurizzio Group LLC, JM Monarchy LLC, Luxury Real Estate LLC, and Hair News Color N Cuts LLC.  *See* Receiver's Motion to Show Cause at xxx at 4 – 5 (Doc. No. 39) and Reply in support of the Motion at 5 (Doc. No. 49).

Maurizzio Group LLC is a Texas limited liability company formed by Chavez in November 2020 (after he formed CryptoFX), and Chavez is its only member.  *See* Maurizzio Group LLC Certificate of Formation, Texas Secretary of State, attached as **Exhibit H**.  This is "a real estate marketing company," with no apparent independent sources of income.  **Exhibit D**, Chavez Dep. at 184:18 – 23; 185:8 - 15; 205:11 – 209:18.  Further, it is undisputed that Chavez deposited investor funds and "commissions and bonuses from CryptoFX" into the Maurizzio Group bank accounts.  *Id*. at 139:18-21; 210:5 - 11 ("**Q**: Help me understand in general where you would deposit [CryptoFX] investor checks? **A**: The CryptoFX account, Maurizzio Group account or CBT accounts as well. . . . So, I transferred money from my personal to -- to the crypto and from the crypto to the Maurizzio Group.");  *see also* Hahn Decl. at ¶¶ 4-5, 7-8, 24-26 (Doc. No. 3-5,

---

[6] Exodus is a cryptocurrency wallet.

**RECEIVER'S MOTION TO COMPEL**

APP0218-20, APP0225).  Other than some bank records, the Receiver has not received any business records related to the present or past operations of this company.

JM Monarchy LLC is also a Texas limited liability company formed by Chavez and his reported girlfriend, Janette Gonzalez, in May 2021.  *See* JM Monarchy LLC Certificate of Formation, Texas Secretary of State, attached as **Exhibit I**.  Chavez and Gonzalez are the only members of this LLC.  *Id*.  JM Monarchy owns a house at 24923 Tidmor Lane, Richmond, TX 77406, which was originally purchased by Chavez and then transferred to JM Monarchy, as well as a Lexus.  Based on current records, the Receiver believes that investor funds were improperly used to purchase these assets and that they are Receivership assets.  **Exhibit B**, Hays Affidavit at ¶¶ 19 - 21.  As such, Records related to this entity are relevant to the Receiver's work in investigating Receivership assets and possible claims the estate may have against third parties. The Receiver has not received any business records related to the present or past operations of this company.

Luxury Real Estate LLC and Hair News Color N Cuts LLC are Texas limited liability companies formed by Chavez in January 2022, and Chavez is the only member of each LLC.  *See* Luxury Real Estate LLC and Hair News Color N Cuts LLC Certificates of Formation, Texas Secretary of State, attached as **Exhibits J** and **K**, respectively.  Luxury Real Estate was also a "real estate marketing company," and similar to Maurizzio Group.  Deposition of Janette Gonzalez, Dec. 7, 2023 at 55:19-56:3 ("Gonzalez Dep."), attached as **Exhibit L**.  The Receiver has received no records related to the operations of this company or any of its sources of income other than CryptoFX investor funds.  Records show that Luxury Real Estate owned a house at 2030 Greenhaven Court, Missouri City, TX, purchased with CryptoFX funds, which Chavez

**RECEIVER'S MOTION TO COMPEL**

subsequently transferred to JJ Trust, Janette Gonzalez, Trustee. **Exhibit B**, Hays Affidavit at ¶¶ 22 - 23.

Hair News is a hair salon that Chavez purchased in 2022 with CryptoFX investor funds. *See* SEC Motion for Preliminary Injunction at 8 (Doc. No. 6); Hahn Decl. at ¶ 21 (Doc. 3-5, APP0224). It appears that Chavez rented the space where the hair salon operated; however, the Receiver has received no documents related to the purchase, operation of this business, or the leased premises.

The Receiver has gathered the available public filings for these companies, and Janette Gonzalez has provided some documents about JM Monarchy. However, Chavez has yet to provide accounting, bank, employee, or other records and information about the present and past operations of these businesses, their sources of income, assets these businesses own or the liabilities they face. The Receiver understands from currently available records that investor funds were improperly transferred to these entities and used to purchase real estate and other Receivership assets. **Exhibit B**, Hays Affidavit at ¶¶ 19 - 23. Therefore, production of records related to these entities is important in the Receiver's work in tracing funds and investigating claims against third parties for the benefit of the estate.

LEGAL AUTHORITIES AND ARGUMENT

**A. The Records Requested by the Receiver Are Not Protected by Chavez's Attorney-Client Privilege.**

The Receivership Order specifically authorizes and orders the Receiver to take possession, custody and control over all CryptoFX and CBT records and to preserve the same. These records include paper and electronic files, including email communications, banking and accounting records. Further, the Receiver is the holder of the attorney-client privilege with respect to CryptoFX and CBT, the two entities subject to the receivership, and he is the only party authorized

11

**RECEIVER'S MOTION TO COMPEL**

to act on behalf of these two entities.  *See* Receivership Order at ¶¶ 4-6; *S.E.C. v. Ryan*, 747 F. Supp. 2d 355, 368 (N.D.N.Y. 2010); *S.E.C. v. Bravata*, No. 09-12950, 2011 WL 606745, at *2 (E.D. Mich. Feb. 11, 2011).  As the holder of the privilege, the Receiver also has the power to waive the privilege for CryptoFX and CBT.  *Ryan*, 747 F. Supp. 2d at 368; *S.E.C. v. Elfindepan, S.A.*, 169 F. Supp. 2d 420, 431 (M.D.N.C. 2001) (receiver can waive attorney-client privilege on behalf of companies subject to receivership).  Thus, Chavez cannot refuse to turn over CryptoFX records based on a claim of attorney-client privilege.  To the extent that Chavez claims that legitimately privileged material is comingled with business records belonging to the Receiver, preparation of a privilege log is his remedy.  He may not, however, assert a blank claim of privilege as attempted here.  Similarly, the "personal and intimate" material Chavez claims is contained on his computer and phone, in addition to the business records, to the extent that such material actually exists, can also be redacted prior to production.

## B. Under the Collective-Entity Doctrine, the Requested Business Records are Not Protected by the Fifth Amendment.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. CONSTITUTION, AMEND. V.  "[T]he Fifth Amendment privilege is a purely personal one," which cannot be exercised on behalf of collective entities. *Bellis v. United States*, 417 U.S. 85, 90 (1974).  In fact, "[i]t is well established that . . . artificial entities are not protected by the Fifth Amendment."  *Braswell v. United States*, 487 U.S. 99, 102 (1988).  Moreover, an individual who holds records in a representative capacity cannot rely upon the privilege against self-incrimination to avoid producing the records of the collective entity.  *Id*. at 109 (explaining that the "constitutional privilege against self-incrimination is essentially a

**RECEIVER'S MOTION TO COMPEL**

personal one, applying only to natural individuals").[7]   The courts have long held that this

"collective-entity doctrine" precludes custodians of records of corporations, partnerships, limited

liability companies, or other collective entities, from relying on the Fifth Amendment to block

production of those records.  *See Bellis v. United States*, 417 U.S. 85, 88 (1974) (in a case dealing

with partnership records, explaining that a "long line of cases has established that an individual

cannot rely upon the [Fifth Amendment] privilege to avoid producing records of a collective entity,

which records are in his possession in a representative capacity, even if those records might

incriminate him personally"); *see also Braswell*, 487 U.S at 108-109 (corporate records); *United

States v. Roe*, 421 F. App'x 881, 885 (10th Cir. 2011) (limited liability company records); *United

States v. Feng Juan Lu*, 248 F. App'x 806, 808 (9th Cir. 2007) (single-member LLC, finding that

LCC's business records are not protected by the Fifth Amendment); *Expert Janitorial v. Williams*,

No. 3:09-CV-283, 2010 WL 2854295, at *5 (E.D. Tenn. July 19, 2010) (single-member LLC,

finding that LCC's business records "are not protected by the right against self-incrimination

provided for in the Fifth Amendment because they are the records of a collective entity.").[8]

A "collective entity is 'an organization which is recognized as an independent entity apart

from its individual members.'"  *In re Grand Jury Proc.*, 814 F.2d 190, 192 (5th Cir. 1987), *aff'd

sub nom. Braswell v. United States*, 487 U.S. 99, 108 (1988) (quoting *Bellis*, 417 U.S. at 92).

---

[7]  The definition of "representative capacity" reaches any organization whose records are held by a representative.  *United States v. B & D Vending, Inc.*, 398 F.3d 728, 733 (6th Cir. 2004) (quoting *Bellis*, 417 U.S. at 89).   "The rationale for barring Fifth Amendment claims in these circumstances is that 'individuals, when acting as representatives of a collective group, cannot be said to be exercising their personal rights and duties."  *Id*.  As a result, the records must be those of "an organization which is recognized as an independent entity apart from its individual members."  *Id*.
[8]   *Heinhold Hog Market, Inc. v. McCoy*, 700 F.2d 611, 613 (10th Cir. 1983) (records of unincorporated association); *United States v. Richardson*, 469 F.2d 349 (10th Cir. 1972) (records of Subchapter-S corporation); *In re Grand Jury Subpoena*, 973 F.2d 45, 48 (1st Cir. 1992) (records of nominee trust); *United States v. Harrison*, 653 F.2d 359, 361-62 (8th Cir. 1981) (records of family trust).

**RECEIVER'S MOTION TO COMPEL**

Further, "[w]hether an organization is properly deemed a collective entity has little to do with its size." *In re Grand Jury Subpoena*, 973 F.2d 45, 47 (1st Cir. 1992); *accord In re Grand Jury Proceedings*, 727 F.2d 941, 945 (10th Cir. 1984) ("in evaluating a Fifth Amendment claim, the critical factor was not the *size* of the organization the records of which were being subpoenaed") (internal quotation marks and citations omitted) (italics in original)).  Rather, "the critical factor . . . [is] the *nature* of the capacity—either personal or representational—with respect to the privilege which was claimed." *In re Grand Jury Proceedings*, 727 F.2d at 945 (internal quotation marks and citations omitted) (italics in original); *accord United States v. B & D Vending*, 398 F.3d 728, 734 (6th Cir. 2004) ("the key question is whether the records [being sought] are those of a 'collective entity' which are held by an individual in a representative capacity.").

Here, CryptoFX is a "collective entity."  It is a Texas limited liability company.  *See* **Exhibit A**.  Further, Texas law is clear that a limited liability company is a creature of law, with a legal identity separate and distinct from that of its owners.  *See* TEX. BUS. ORGS. CODE ANN. § 101.001 *et seq*.; *In re Grand Jury Proc.*, 814 F.2d 192.  In this case, the records requested by the Receiver are company records, which Chavez holds in his capacity as a member or representative of CryptoFX; they are not personal records.  As such, the Fifth Amendment does not bar the production of CryptoFX records.

Similarly, the production of records related Chavez's other businesses (Maurizzio Group, JM Monarchy, Luxury Real Estate, and Hair News Color N Cuts) are not protected by the Fifth Amendment.  Each of these entities is a Texas limited liability company, and thus, each is a "collective entity."  *See* **Exhibits H**, **I**, **J**, and **K**.  As such, their records are not protected by the Fifth Amendment and should be produced.  *Braswell*, 487 U.S. at 102.

**RECEIVER'S MOTION TO COMPEL**

Therefore, the Court should compel Chavez to produce all records in his possession and control related to CryptoFX, Maurizzio Group, JM Monarchy, Luxury Real Estate, and Hair News Color N Cuts.

### C. Turning Over Business Records And Unencrypted Electronic Devices Is Not Testimonial In Nature.

Additionally, Chavez's invocation of the Fifth Amendment privilege fails because producing CryptoFX records, providing access to the CryptoFX Google Drive, as well as turning over his computer and cell phone in an unencrypted state do not qualify as "testimonial communication[s] that [are] incriminating." *Fisher v. United States*, 425 U.S. 391, 408 (1976). The Fifth Amendment provides that "[n]o person shall be compelled in any criminal case to be a witness against himself." U.S. CONST. AMEND. V. The Fifth Amendment's protections therefore arise only "when the accused is compelled to make a Testimonial Communication that is incriminating." *Fisher*, 425 U.S. at 408; *see United States v. Hubbell*, 530 U.S. 27, 34 (2000) ("The word 'witness' in the constitutional text limits the relevant category of compelled incriminating communications to those that are 'testimonial' in character"); *United States v. Cheng*, No. 4:20-CR-455, 2022 WL 112025, at *6 (S.D. Tex. Jan. 12, 2022) (The Supreme Court has held that "the Fifth Amendment privilege against self-incrimination is not violated when the government compels a person to turn over incriminating evidence, unless the act of production is both 'testimonial' and 'incriminating.'") (quoting *Fisher*, 425 U.S. at 409-10).

First, it is well-established that the Fifth Amendment does not apply to the contents of voluntarily prepared documents. *Hubbell*, 530 U.S. at 35-36, 120 S. Ct. 2037. The Supreme Court has consistently held that when a person has voluntarily created a document, that person may be compelled to produce the document even though it may contain incriminating information. *See, e.g.*, *United States v. Doe*, 465 U.S. 605, 612 n. 10 (1984). In *Hubbell*, the Supreme Court

**RECEIVER'S MOTION TO COMPEL**

reaffirmed "the settled proposition that a person may be required to produce specific documents even though they contain incriminating assertions of fact . . . because the creation of those documents was not compelled within the meaning of the privilege." *Hubbell*, 530 U.S. at 35-36; *accord In re Grand Jury Subpoena Duces Tecum Dated March 25*, 2011, 670 F.3d 1335, 1342 (11th Cir. 2012). Additionally, the Fifth Amendment privilege against self-incrimination does not apply to incriminating evidence that was generated prior to the demand that this evidence be produced. *Fisher*, 425 U.S. at 391 (holding that papers which were voluntarily prepared prior to the issuance of the summons could not contain compelled testimonial evidence). "Thus, once an individual chooses voluntarily to prepare a written account, the act of preparation serves as an effective waiver of the Fifth Amendment protections, and the resulting document is a physical object that can be acquired." *Fed. Trade Comm'n v. PointBreak Media, LLC*, 343 F. Supp. 3d 1282, 1292 (S.D. Fla. 2018). Here, the Receiver seeks the production of all CryptoFX records, as well as all records about the other businesses and/or assets in which Chavez has an interest that were voluntarily prepared prior to the entry of the Receivership Order. Chavez, therefore, does not enjoy any Fifth Amendment protection in the contents of these business records. *See id.* at 1293.

Second, there is no Fifth Amendment protection where the act of production "adds little or nothing to the sum total of the Government's information because the means that the existence and the location of the documents sought to be produced are a 'foregone conclusion.'" *Cheng*, 2022 WL 112025, at *6 (quoting *Fisher*, 425 U.S. at 411). "A communicative act 'must itself, explicitly or implicitly, relate a factual assertion or disclose information' in order to be testimonial." *Id.* at *7 (quoting *Doe v. United States*, 487 U.S. 201, 210 (1988). Here, Chavez's compelled production of access to or the passwords to the CryptoFX Google Drive and the production of the unlocked

**RECEIVER'S MOTION TO COMPEL**

devices, would not disclose any information or relate any factual assertion, other than the undisputed fact that Chavez controls the CryproFX Google Drive and devices at issue here.  The record is undisputed that Chavez controls the CryptoFX Google Drive and that he has possession of the Mac-Mini computer and his cellphone, and that he has access to both devices—the computer is currently held by his counsel.  As a result, compelling Chavez to provide the passwords to the CryptoFX Google Drive and produce the unencrypted devices is not testimonial and, thus, does not infringe on Chavez's Fifth Amendment rights.

Further, Chavez's production of the passwords to the CryptoFX Google Drive and the devices is not testimonial because Chavez's knowledge of the passwords is a "foregone conclusion."

The Supreme Court has recognized that in some instances, the production of evidence can implicate the Fifth Amendment.  The Supreme Court has held that "[t]he act of producing evidence in response to a subpoena . . . has communicative aspects of its own, wholly aside from the contents of the papers produced."  *Fisher*, 425 U.S. at 410.  And "compliance with a request for evidence may 'tacitly concede[ ] the existence of the documents demanded and their possession and control by the [defendant]."  *Id*.  "When the production of evidence does concede the existence, custody, and authenticity of that evidence, the Fifth Amendment privilege against self-incrimination applies because that production constitutes compelled testimony."  *United States v. Apple MacPro Computer*, 851 F.3d 238, 247 (3d Cir. 2017).

However, "the Fifth Amendment does not protect an act of production when any potentially testimonial component of the act of production—such as the existence, custody, and authenticity of evidence—is a 'foregone conclusion' that 'adds little or nothing to the sum total of the Government's information.'"  *Id*.  For the rule to apply, "the Government must be able to 'describe

**RECEIVER'S MOTION TO COMPEL**

with reasonable particularity' the documents or evidence it seeks to compel." *Id.* (quoting *Hubbell*, 530 U.S. at 30; *see also Cheng*, 2022 WL 112025, at *7 ("The foregone conclusion doctrine teaches that, if the testimonial aspect of an act of production is already known to the government and is not proven to be a testimonial act, the testimony is a foregone conclusion and the Fifth Amendment privilege does not apply.") (internal quotations omitted).

Here, even if the Court finds that the Fifth Amendment may be implicated—which is it is not—any testimonial aspects of the production of the CryptoFX Google Drive and the unencrypted devices are a foregone conclusion. The record is clear and undisputed that the company records exist and Chavez can access them.

Here, Chavez's act of providing access to the CryptoFX Google Drive and turning over the unencrypted devices, as required by this Court's Receivership Order, is not a question of testimony but of surrender of property that now belongs to the Receiver. *See Fisher*, 425 U.S. at 411 ("Where the existence and location of the subpoenaed documents are a 'foregone conclusion' and the witness 'adds little or nothing' by conceding he has the documents, there is no Fifth Amendment privilege against production because the production becomes a 'question . . . not of testimony but of surrender.'"); *see also Apple MacPro Computer*, 851 F.3d at 248-49; *Cheng*, 2022 WL 112025, at *9; *Pointbreak Media*, 343 F. Supp. 3d at 1294 (granting Receiver's request for turnover of the defendants' laptop and cell phones and holding that their surrender of the devices "[was] not a testimonial communication for which they [could] successfully invoke a Fifth Amendment objection.").

As such, the Court should compel Chavez to turn over to the Receiver the Mac-Mini computer and the cell phone in an unencrypted state as well as provide the usernames and passwords to the CryptoFX Google Drive that contains CryptoFX accounting documents as well

**RECEIVER'S MOTION TO COMPEL**

as cooperate with the Receiver in any two step authorization required to access the same.[9]   The Court should further compel Chavez to produce records related to the past and present operations, if any, of Maurizzio Group, Luxury Real Estate, JM Monarchy, and Hair News Color N Cuts. These records are crucial to the performance of the Receiver's duties under the Receivership Order, especially in determining the nature and value of Receivership assets, the administration of the claims process, as well as the investigation of claims the estate may have against third parties. Access to these business records is even more critical in this case where most of the transactions were in cash and the company lacked a central accounting system.

CONCLUSION

The Receiver respectfully requests that the Court grant the Receiver's Motion to Compel and enter an Order compelling Chavez to turn over the CryptoFX records under his control; provide access to the CryptoFX Google Drive; produce records related to other entities in which Chavez has an interest; as well as turn over his Mac-Mini computer and his cell phone in an unencrypted state or with usernames and passwords required to access the same.

---

[9]  Google requires a 2-Step verification, also called two-factor authentication, to access its applications.

**RECEIVER'S MOTION TO COMPEL**

Dated:  April 25, 2023

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By:  */s/ Sonila Themeli*
    Sonila Themeli
    Texas Bar No. 24073588
    S.D. Tex. Bar No. 2828237
    600 Travis Street, Suite 3400
    Houston, TX 77002
    Telephone:  713.227.8008
    Facsimile:  713.227.9508
    sthemeli@shb.com

    Caroline M. Gieser
    (admitted *pro hac vice*)
    1230 Peachtree Street, NE, Suite 1200
    Atlanta, GA  30309
    Telephone:  470.867.6000
    mcgieser@shb.com

    ***Counsel for Court-Appointed***
    ***Receiver John Lewis, Jr.***

**RECEIVER'S MOTION TO COMPEL**

## **CERTIFICATE OF CONFERENCE**

The undersigned certifies that she has conferred with counsel for Chavez, and he opposes this Motion.  I have also conferred with counsel for Plaintiff SEC, and the SEC does not oppose the Motion or the relief requested herein.

*/s/ Sonila Themeli*
Sonila Themeli

**RECEIVER'S MOTION TO COMPEL**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 25th day of April, 2023, the above and foregoing document was filed electronically through the CM/ECF system, which sent notification of such filing to all counsel of record:

Matthew J. Gulde
UNITED STATES SECURITIES
AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX  76102
Telephone:  817.978.1410
Facsimile:   817.978.4927
guldem@sec.gov

*Attorney for Plaintiff*
*U.S. Securities and Exchange Commission*

Paul D. Flack
PRATT & FLACK, LLP
4306 Yoakum Blvd., Suite 500
Houston, TX  77006
Telephone:    713.705.3087
pflack@prattflack.com

*Attorney for Defendant,*
*Mauricio Chavez*

Dan L. Cogdell
COGDELL LAW FIRM, PLLC
1000 Main Street, Suite 2300
Houston, TX  77002
Telephone:  713.426.2244
Dan@cogdell-law.com

*Attorney for Defendant,*
*Giorgio Benvenuto*

*/s/ Sonila Themeli*
Sonila Themeli

**RECEIVER'S MOTION TO COMPEL**