IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | |
| MAURICIO CHAVEZ, GIORGIO BENVENUTO and CryptoFX, LLC, | § § § | CIVIL ACTION NO. 4:22-CV-03359 |
| *Defendants.* | § § | JUDGE ANDREW S. HANEN |
| CBT Group, LLC, | § § § | |
| *Relief Defendant.* | § § | |

## RECEIVER'S THIRD INTERIM STATUS REPORT

John Lewis, Jr. ("Receiver"), the court-appointed Receiver for Mauricio Chavez ("Chavez"), Giorgio Benvenuto ("Benvenuto"), CryptoFX, LLC ("CryptoFX") and CBT Group, LLC ("CBT"), pursuant to the Order Appointing Receiver ("Receivership Order") (Doc. No. 11) files his Third Interim Status Report ("Report"), showing the Court as follows:

### I.   EXECUTIVE SUMMARY

1.     In the ninety days since the filing of the Second Interim Report, the Receiver and his team have continued the investigation of the case, which included analysis of thousands of pages of company records, including Salesforce data; forensic analysis of financial records, including cryptocurrency transactions, and third-party records; taking depositions and interviews with CryptoFX former employees and sponsors/leaders and collection of documents in their possession; conducting interviews with CryptoFX investors and/or their counsel and collection and review of documents obtained from investors; inspection of Chavez's apartment and other

**RECEIVER'S THIRD INTERIM STATUS REPORT**

residence; analysis of receivership assets and sale of the same, both real and personal property; maintaining and updating the Receiver's website; and monitoring of media coverage of this case.

2. It is clear from deposition testimony, interviews with former employees, leaders, investors, and from the company documents, financial records as well as cryptocurrency records, that Defendants were operating a Ponzi scheme, where previous investors were paid with funds collected from newer investors. The Salesforce data obtained by the Receiver shows that CryptoFX and the company raised over $300 million from over 40,000 investors from around the country.

3. Additionally, while the majority of investments as well as payments of returns on CryptoFX contracts were made in cash, many investors paid and were paid in cryptocurrency. The current investigation of the available cryptocurrency transactions conducted by BlockTrace, the third party engaged by the Receiver to assist with cryptocurrency transaction tracing, has revealed that even though Defendants raised over $300 million in investor funds, their profit from cryptocurrency trading was minimal and woefully insufficient to pay the promised 15% monthly returns as well as the commissions and bonuses to sponsors/leaders.

4. In addition to Ponzi payments, commissions and bonuses paid to sponsors, the records further show that investor funds were improperly diverted.

## II.     INTRODUCTION

5. The Receiver filed his First Interim Report on November 28, 2022 (Doc. No. 33) and his Second Interim Status Report on January 31, 2023 (Doc No. 50). This Third Interim Status Report is being submitted in accordance with the Receivership Order ¶ 52-53. The Receiver's First and Second Interim Status Reports and the exhibits thereto, are available for all investors on

**RECEIVER'S THIRD INTERIM STATUS REPORT**

the Receiver's website at https://cryptofxreceiver.com/case-documents.aspx.  This Report covers

the period between January 1, 2023 (the filing of the Second Report) to March 31, 2023.

6. This Report is based upon the continued investigation of the case conducted by the

Receiver and his team, which has included motion practice; sale of receivership assets, both real

and personal property; listing of additional personal property for sale; witness deposition and

interviews; collection of documents from CryptoFX leaders and former employees; forensic

analysis of financial records, including cryptocurrency records; review of CryptoFX documents

maintained by the Defendants and obtained from investors, employees, sales agents, and third

parties; inspection of Chavez's apartment and other residence; communications with investors;

and monitoring of media coverage of this case.

7. The Report includes (a) a general summary of the work done since the Second

Interim Report by the Receiver and his team; (b) cash on hand and estimated accrued expenses as

well as schedule of receipts and disbursements; (c) description of all known receivership property;

(d) description of liquidated and unliquidated claims; (f) list of all known creditors; and (g)

Receiver's proposed plan for administering the Receivership.

8. The Receiver will provide further quarterly reports as provided for in the

Receivership Order.  *Id*. at ¶¶ 52-53.

### III.    SUMMARY OF RECEIVERSHIP OPERATIONS

9. During the period covered by this Report, the Receiver and his team continued to

analyze CryptoFX business documents (both paper and electronically stored) as well as documents

produced by CryptoFX employees, sales agents, cryptocurrency platforms or exchanges, financial

institutions, title companies, and other third parties.

**RECEIVER'S THIRD INTERIM STATUS REPORT**

10.     As stated in the Receiver's First Status Report, the Receiver has uncovered forensic evidence indicating that the Defendants raised over $300 million from over 40,000 investors from several states.  *See* Analysis by Gregory Hays, attached as Exhibit A to Receiver First Interim Report (Doc. No. 33).

11.     Since the filing of the Second Report, the Receiver's team deposed another CryptoFX employee, Tony Lemus, and has interviewed many CryptoFX former employees, sponsors/leaders, and investors, and collected CryptoFX business records in their possession.

12.     During the relevant time period, the Receiver continued to issue third-party subpoenas for the collection of documents and information to additional financial institutions, cryptocurrency platforms, title companies, and other fact witnesses.  As of the filing of this Report the Receiver has issued 82 subpoenas.

13.     Further, the Receiver obtained access to the CryptoFX Salesforce account, a customer management platform used by CryptoFX to record investor data, including amounts invested and paid out to investors.  This information is critical in determining the amount of Ponzi payments made to investors and the commissions paid to sponsors.

14.     The Receiver avers that the commissions and bonuses paid to all sales agents/sponsors/leaders were unlawfully obtained from investors by means of artifice and fraud. Therefore, sales commissions and bonuses paid to sponsors should be turned over to the Receiver. The Receiver has identified approximately 100 key sales agents/leaders for CryptoFX, located primarily in Texas, Illinois, Louisiana, California, and Florida.  The Receiver sent demand letters to them requesting an accounting of all monies received from CryptoFX in the form of commissions, bonuses, and Ponzi payments so the Receiver could prepare an IRS W9 form, return of all CryptoFX documents as well as return of all CryptoFX assets, including cash in their

**RECEIVER'S THIRD INTERIM STATUS REPORT**

possession.  Several of the leaders have responded to the Receiver's demand letter and turned over documents in their possession, including CryptoFX accounting spreadsheets used by them to record new contracts, payments to sponsors, payments to earlier investors, and the balance sent to CryptoFX main office in Houston.

15.     Requests for production of documents and information were also sent to all known CryptoFX and CBT employees, several of whom have sent documents in their possession and agreed to interviews with the Receiver's counsel.

16.     The Receiver was informed by investors that certain CryptoFX leaders were continuing to communicate with investors on behalf of CryptoFX promising payments on their contracts and also misleading them about filing a complaint with the Receiver and SEC.  The Receiver sent cease and desist letters to these leaders.

17.     On February 9, 2023, counsel for the Receiver, Greg Hays of the Receiver's team, and counsel for SEC, attended a meeting via Zoom with Santa Monica, CA community members who had invested in CryptoFX.

18.     In addition to some of the devices seized from the CryptoFX offices,[1] the Receiver has imaged an additional laptop turned over by a former CryptoFX employee.  An updated list of the CryptoFX electronic devices the Receiver has seized is included herein as **Exhibit A**.

19.     On January 20, 2023, the Receiver filed his Liquidation Plan.  (Doc. No. 47).

20.     During the deposition of a CryptoFX employee, the Receiver identified an additional CryptoFX cryptocurrency wallet operated by Julio Taffinder to make Ponzi payments to investors at the direction of Chavez.  This Exodus wallet contained various crypto coins.  The

---

[1] *See* List of devices seized by the Receiver from the CryptoFX Blalock office attached as Exhibit C to Receiver's First Interim Report (Doc. No. 33).

**RECEIVER'S THIRD INTERIM STATUS REPORT**

Receiver liquidated the account and funds were transferred into the CryptoFX trust account in April 2023.

21.     The Receiver had previously retained Mark Dimas Properties, a real estate broker, to assist with the marketing and sale of Receivership real estate assets.  During the relevant period, the Receiver sold a property located at 0 Hogan Lane, Hempstead, TX 77445.  *See* Order Approving Sale of Real Property (Doc. No. 57).  The estate's proceeds from the sale of Hogan Lane property were $64,758.11.  *See* Master Statement of the Sale of 0 Hogan Lane, Hempstead, TX, attached as **Exhibit B**.

22.     In addition, the Receiver has retained Appraisal Management and Compliance (Appraisal MC), MB Lane & Associates, Inc., and Scott Stephens & Associates to conduct appraisals of Receivership real property consisting of 25.1320 acres located on Mack Washington Rd., Hempstead, TX 77445.  This property was purchased by CBT in November 2021 for $2,050,000.00.  However, the independent appraisers employed by the Receiver, MB Lane & Associates, Inc. and Scott Stephens & Associates, appraise the property at $1,080,000 and $1,150,000 respectively.  *See* attached MB Lane & Associates, Inc. Appraisal Report, attached as **Exhibit C**; Scott Stephens & Associates Appraisal Report attached as **Exhibit D**.  The Receiver intends to list this property for sale in the next 30 days.

23.     The Receiver had previously retained Michael Poutous Auto Sales to market and sell receivership automobiles, including a 2020 Volkswagen Tiguan, 2022 BMW X6 M50i, and 2021 Mercedes-Benz GLE Hybrid SUV.  The Court granted the Receiver's Motion to approve the sale of personal property relating to the Tiguan, (Doc. No. 67) as well as the sale of Chavez's Mercedes and BMW (Doc. No. 70).  The Receiver has concluded the sale of the Tiguan and is awaiting final documentation on the same.  Additionally, the Receiver is currently in negotiations

**RECEIVER'S THIRD INTERIM STATUS REPORT**

for the sale of the BMW.  The Mercedes is still listed for sale.[2]  *See* Order Approving Sale of the BMW and Mercedes (Doc. No. 70).

24.     The Receiver employed Webster's Auctions, a professional appraiser/auctioneer, to conduct the inventory of the personal property at Defendant Chavez's residence and the sale of certain receivership personal property.   On January 5, 2023, the Receiver, together with undersigned counsel, counsel for Chavez, and Webster Auctions, inspected Chavez's residence. An inventory of the items found at Chavez's residence was prepared by Webster's.  The Receiver has requested turnover of some of this property and plans to list these items for sale in the next 30 days.

25.     On December 27, 2022, the Receiver filed a Motion to Show Cause why Defendant Mauricio Chavez should not be held in civil contempt for failing to comply with this Court's September 29, 2022 Receivership Order (Doc. No. 27).  Chavez filed his Response on January 17, 2023 (Doc. No 45); the Receiver filed his Reply in support of the Motion on January 27, 2023 (Doc. No. 49); and Chavez filed a Sur-Reply in opposition of the Motion on February 06, 2023 (Doc. No. 51).  Additionally, on March 15, 2023, Chavez filed a Motion for Attorney's fees (Doc. No. 61), which the Receiver opposed (Doc. No. 65).  Oral argument on the Motion to Show Cause and Chavez's Motion for Attorney's Fees was held on March 23, 2023.  The Court denied the Motion to Show cause without prejudice to filing a motion to compel.  (Doc. No. 67).  The Court granted Chavez's Motion for Attorneys' fees.  The Court also allowed the Receiver's first interim fee application.  *Id*.

26.     Additionally, Chavez, through counsel, served discovery requests on the Receiver requesting access to all CryptoFX records in the Receiver's possession as well as records received

---

[2]  https://cryptofxreceiver.com/assets-for-sale.aspx; https://poutousautosales.com/details.php?vehicle=420612.

**RECEIVER'S THIRD INTERIM STATUS REPORT**

in response to third-party subpoenas.  The Receiver has produced all CryptoFX Salesforce data as well as other documents requested by Chavez.

27.     Pursuant to the Receivership Order ¶ 56, the Receiver employed BlockTrace, LLC to serve as the Receiver's cryptocurrency consultants in this matter.  The Court granted Receiver's Motion to Employ BlockTrace on January 6, 2023.  (Doc. No. 43).  Beginning in January 2023, BlockTrace began an extensive analysis of all the available cryptocurrency records.  Currently, BlockTrace's analysis of these transactions shows that while CryoptoFX raised over $300 million in investor funds, its profit from any cryptocurrency trading was only about $2.6 million. BlockTrace's investigation of CryptoFX-related cryptocurrency transactions is ongoing and involves over 12,000 cryptocurrency transactions representing over $130 million.  This is a massive investigation involving over 6,800 cryptocurrency addresses and 70 different types of cryptocurrency.  These are crypto accounts held at different platforms or exchanges by Chavez, CryptoFX leaders, as well CryptoFX investors who received CryptoFX Ponzi payments in cryptocurrency.  In its investigation, BlockTrace has also identified accounts held at foreign exchanges (Binance and Switchain), which are not accessible from the US and require a Virtual Private Network (VPN) to access.  The investigation is further complicated by the fact that some of the accounts identified by BlockTrace are self-custodial accounts, i.e. fully managed by the account holder and for which the cryptocurrency platforms or exchanges are not able to provide any information or transaction data.  The Receiver is determining the cost/benefit of pursuing these and the foreign accounts and if the additional tracing will lead to a substantial recovery.  While BlockTrace's tracing and analysis of these cryptocurrency transactions has been and continues to be time- and labor-intensive, the Receiver believes they are necessary in order to determine if any

**RECEIVER'S THIRD INTERIM STATUS REPORT**

funds are recoverable for the benefit of the estate.  A full report of BlockTrace's extensive research

will be filed before the Receiver's 4ᵗʰ Interim Report is filed in July.

28.      The Receiver and his team have continued to maintain and regularly update the

Receiver's website (http://cryptofxreceiver.com/) with new court filings, media coverage, and

other information pertinent to this case.  The information, where possible, is provided in both

English and Spanish.  In addition, the website provides answers to frequently asked questions and

access to the complete court docket with no PACER charges.  The Receiver and his team are also

working with KCC to optimize the website with key words for easier Google search by "investors"

and others.

29.      The Receiver's team also continues to monitor the Receiver's email and phone

number, both of which are posted on the Receiver's website, for "investors"/victims to contact the

Receiver and his team.  As of the filing of this Report, the Receiver's team has received

approximately 3,500 calls and emails from investors.

30.      Public awareness of this case continues to grow.  The Receiver's team continues to

monitor the media coverage of this case, and links to news articles discussing this case have been

posted on the Receiver's website as well.  Currently, there are fourteen links to news articles and

TV stories on the Receiver's website.

31.      Additional work performed by the Receiver and his team since the filing of the

Second Interim Report includes:

  a.  File with the Internal Revenue Service ("IRS") an additional request for
      extension of the deadline to submit W2 and 1099 forms for CryptoFX and CBT
      employees and contractors;

  b.  Registration of the Receivership Order in the US District Courts for the District
      of Massachusetts, Connecticut, Southern District of New York and Southern
      District of Florida;

**RECEIVER'S THIRD INTERIM STATUS REPORT**

       c.  Conducting public records searches and related due diligence to affiliated parties, entities, and other potential relief defendants;

       d.  Record *lis pendens* notices on additional real estate the Receiver believes are Receivership property.

32.    As a result of these and other activities, the Receiver and his team believe that they have gained a good understanding of the facts and issues that will be most critical to the effective administration of this Receivership.

## IV.    CASH ON HAND AND ESTIMATED ACCRUED ADMINISTRATIVE EXPENSES

33.    On March 31, 2023, the Receivership Estate had the following cash on hand: $3,589,050 deposited in four trust accounts named for each of the Defendants as of the end of the Application Period (March 31, 2022).  These funds were received by (i) taking possession of cash located at the Defendants' office located at 1124 Blalock, Houston, Texas 77055 ($53,345.56); (ii) taking possession of safes located at the Defendants' office ($392,765.37); (iii) taking possession of First Community Credit Union bank accounts owned by Benvenuto ($451,448.14); (iv) taking possession of Bank of America bank accounts owned by Benvenuto ($21,325.14); (v) taking possession of a Simmons bank account owned by Benvenuto ($80,763.55); (vi) taking possession of a Simmons bank account owned by CBT ($247,916.46); (vii) taking possession of a Regions bank account owned by Chavez ($781.62); (viii) proceeds from liquidating Coinbase, Inc. account ($982,924.31); (ix) proceeds from liquidating Blockchain.com account ($1,161,140.95); (x) taking possession of the balance of a retainer from Burford Perry LLC ($155,631.00); (xx) taking possession of the balance of retainers from Gerger Hennessy & Martin LLP ($214,487.50); taking possession of the balance of retainers from Jones Walker LLP ($102, 228.70); taking possession of CryptoFX funds turned over by Defendant Mauricio Chavez ($55,000); proceeds from

**RECEIVER'S THIRD INTERIM STATUS REPORT**

liquidating real property at 0 Hogan Lane ($64, 758.11); and proceeds from liquidating televisions

($3,040.00).  *See* Schedule of Receipts and Disbursements, attached as **Exhibit E**.

34.     All four Receivership trust accounts are held with Flagstar Bank, N.A., a wholly-owned subsidiary of New York Community Bankcorp, Inc.   The four trust accounts were previously held with Signature Bank, N.A., which was acquired by Flagstar in March 2023. Flagstar acquired all deposits of Signature Bank.  All Receivership deposits are fully insured by the FDIC and the full faith and credit of the U.S. government up to $250,000 and are fully collateralized and insured by a separate surety bond through the Receiver's banking vendor for any amounts above $250,000.  Additionally, Flagstar continues to be an approved depository by the U.S. Trustee in bankruptcy cases.

35.     Other Assets: In addition to the cash on hand listed above, the Receiver has on hand the following assets.  *See also* List of Receivership Liquidated and Unliquidated Assets, attached as **Exhibit F**.

| Asset | Estimated Amount/Value |
| --- | --- |
| 2021 Mercedes-Benz GLE AMG | $60,000 |
| 2022 BMW X6 M50i (not fully paid off) | $30,000 |
| 2020 Volkswagen Tiguan | $15,000 |
| Various Laptops and desktop computers | $5,000 |
| Real Property: Mack Washington, Hempstead, TX | $1,080,000 |
| Real Property: 28 Lawrence Marshall, Dr. Hempstead, TX | $68,000 |
| Bitcoin (BTC) | $14,031.12 |
| Tether (USDT) | $62,923.86 |
| Solana (SOL) | $.10 |

36.     It is the Receiver's plan to prudently market real estate and other assets of the Receivership for the highest prices obtainable.  The Court approved the Receiver's Motions to Approve the Sale of real property located at 0 Hogan Lane and 28 Lawrence Marshall Dr.  (Doc.

**RECEIVER'S THIRD INTERIM STATUS REPORT**

Nos. 57, 62).  The estate netted $64,758.11 from the sale of Hogan Lane.  The Receiver expects the sale of the Lawrence Dr. property to net a similar amount.  (The lots are of a similar size and condition).  Additionally, the Court granted the Receiver's Motion to approve the sale of personal property relating to Chavez's 2020 Volkswagen Tiguan, (Doc. No. 67) as well as the sale of Chavez's Mercedes and BMW (Doc. No. 70).  The BMW was financed through Santander Consumer USA and has a current payoff amount of approximately $37,000.  The Receiver anticipates to net approximately $30,000 from the sale of the BMW and approximately $60,000 from the sale of the Mercedes.

37.     The Receiver is continuing his investigation to locate additional assets of the Receivership Estate and will develop a distribution plan, subject to the Court's approval.

38.     During the relevant period covered by this Report, the Receivership Estate has incurred administrative expenses in the amount of $23,623.19 as a result of the efforts to marshal and preserve the assets of the Receivership.  Of these expenses, $23,294.14 were advanced by SHB, which constitutes a $ 20,634.60 reduction from the $43,928.74 actually incurred by SHB. Pugh Accardo incurred $.30, and Hays and $328.75 in administrative expenses during the relevant period.  *See* Table describing administrative expenses incurred by the Receivership between January 1, 2023 and March 31, 2023, attached as **Exhibit G**.

39.     The Receiver and the professionals working with him are well aware that the fees and expenses associated with the administration of the Receivership are paid from the assets of the Receivership Estate.  The goal of all involved professionals is to conclude this Receivership as quickly and efficiently as can be reasonably accomplished thereby maximizing recovery to victims.

**RECEIVER'S THIRD INTERIM STATUS REPORT**

40.     For the period Jan. 1, 2023 to March 31, 2023, the unbilled professional fees incurred are as follows:  $46,672.50 John Lewis, Jr.; $323,534.50 Shook, Hardy & Bacon L.L.P.; 1,079.5 Pugh Accardo, LLC; $102,809.40 Hays Financial Consulting, LLC; and $153,090.00 BlockTrace Inc.  The Receiver's professional fees listed above have been reduced by $3,360.00 from a total of $50,032.50.  Further SHB's fees have been reduced by $39,907.50 from a total incurred fees $363,442.00.

41.     Additionally, during the period covered by the Report, several members of the Receiver's team have worked approximately 135 hours recording emails and communications from investors; translating emails and calls from investors from Spanish to English; assisting during interviews with CryptoFX employees and investors; maintaining intake spreadsheets; assisting with subpoenas and recording of *lis pendens* notices; research of third party assets; as well as other tasks.  The standard SHB rate for these services is $350/hour.  In addition to the reduction of his fees and those of SHB as stated above, as well as the reduction in the expenses incurred by SHB, for the benefit of the investors in this case, the Receiver has not billed the estate for these additional services performed by his team.

42.     As provided for in the Receivership Order, the Receiver and the professionals working with him will apply to the Court for approval to pay professional fees and expenses.

43.     The Receiver advises that administration of the estate is expensive because there has been little cooperation from Chavez (See Receiver's Motion for Show Cause and Motion to Compel), the lack of a centralized accounting system, cash-based transactions, and the geographic scope, complexity, and financial impact of the fraud.

**RECEIVER'S THIRD INTERIM STATUS REPORT**

## V.     SCHEDULE OF RECEIPTS AND DISBURSEMENTS

44.     As of the filing of this Report, no disbursements to "investors"/victims or creditors have taken place.  For a more detailed description of Receivership receipts, *see* supra, Section IV, ¶ 33.

## VI.     DESCRIPTION OF ALL KNOWN RECEIVERSHIP PROPERTY

45.     At this preliminary stage, the Receiver estimates a total of $ 9,464,511 in known liquidated and unliquidated Receivership assets.  For a more detailed description of currently known Receivership property and corresponding approximate value, *see* supra, Section IV, ¶¶ 33, 35-36.

46.     It is the Receiver's plan to prudently market and sell the real estate and other assets of the Receivership for the highest prices obtainable.  All sales of real estate must be approved by the Court, following a motion to the Court and hearing, if necessary.  See Receiver's Liquidation Plan (Doc. No. 47).

47.     The Receiver and his team's investigation is continuing; however, the investigation shows additional Receivership property held by third parties.  The Receiver plans to seek a turnover of all of these assets and also move for the expansion of the Receivership Order to include other persons and/or entities known to hold Receivership assets.

48.     Depending on the equity in each of the properties, appropriate action will be taken to either sell, hold, donate, or abandon properties in order to maximize the return of cash to the estate.  It is too early to tell at this time what price the assets will sell for, the relative costs associated with the sales, or the potential recovery benefit to the Receivership estate.

**RECEIVER'S THIRD INTERIM STATUS REPORT**

## VII.   DESCRIPTION OF LIQUIDATED AND UNLIQUIDATED CLAIMS

49.     This Ponzi scheme was primarily a cash-based scheme, and it is going to require significant resources to unravel the claims of the Receivership estate.  A review of the available records indicates that the majority of the investments were paid in cash.

50.     The Receiver will have substantial claims for bonuses and commissions for a large number of third parties and is evaluating collectability from these parties.  The Receiver team continues to research additional claims against third parties.

## VIII.   LIST OF ALL KNOWN CREDITORS

51.     At this preliminary stage, the only known commercial creditor is BZO Custom Wheels, LLC, the landlord of the CryptoFX's offices on Blalock ("Landlord").  Landlord has an unliquidated claim for approximately $20,239.18 against the Receivership estate, which includes rent and utility bills.  The Receiver and his team negotiated the sale of certain Receivership personal property at Blalock to set off Landlord's claim, bringing the final settlement amount to $17,209.18.  The Receiver's team also negotiated and the Landlord agreed to terminate the lease on October 31, 2022, although the Receiver vacated the premises of the Blalock office on December 7, 2022.

52.     The Receiver is not aware of other commercial creditors at this stage.

## IX.   RECEIVER'S PROPOSED PLAN FOR ADMINISTERING THE RECEIVERSHIP

53.     The Receiver recommends the continuation of the Receivership.

54.     The Receiver's key focus for the next 90 days will be on the following tasks:

- File Motion to Compel against Chavez to request turnover of CryptoFX business records, records related to other businesses in which he has an interest and electronic devices in his possession
- Review documents collected from CryptoFX employees, sponsors, and other third parties
- Review data and documents from Salesforce

- Determine other third parties who may possess relevant information and/or documents and serve additional freeze letters and subpoena such records and witness testimony, including from CryptoFX former employee and/or agents
- Trace funds to locate additional assets
- Determine commissions paid and if those will be pursued
- Determine Net Winners
- Develop electronic claim form for investors
- Establish claims verification process
- Continue working with realtors and appraisers to sell the real properties
- Determine resale value of personal property and the appropriate method of sale in order to maximize the benefit to the Receivership estate
- Continue communications with sales agents and "investors" and/or their counsel
- Depose or interview additional CryptoFX and CBT employees and sales agents
- File motions for turnover of Receivership assets
- Continue to efforts to identify additional relevant cryptocurrency wallets and trace distributions through cryptocurrency
- Investigate issues on the purchase of hundreds of thousands of dollars of Money Orders.

55.    In addition, the Receiver and his counsel will continue to determine whether there are claims against third parties that could result in meaningful recovery to the Receivership Estate.

56.    The Receiver also intends to file a motion to expand the Receivership estate to include individuals and entities that hold Receivership assets and/or funds.

57.    Further, the Receiver and his team will continue to conduct a factual and legal analysis of issues that could affect whether tracing should be applied to certain investments. Based on the information and documents reviewed to date with estimated 40,000 investors and over $300 million in investments, with the majority of that in cash, some payments in cryptocurrency, and other in money orders, a complete tracing of investments may not be possible and/or practicable.

58.    In addition to analyzing the sources and uses of cash, the Receiver and his team will continue to analyze transactions through the Defendants' cryptocurrency and bank accounts. The Receiver is in possession of transaction reports from Coinbase, Blockchain.com, Binance,

**RECEIVER'S THIRD INTERIM STATUS REPORT**

Exodus, and Block, Inc., which appear to be the primary cryptocurrency platforms used by the Defendants and leaders, as well as the Defendants' bank account records.

59.     To date, the Receiver has not located a set of books and records that tracked CryptoFX's cash, banking, investments and investor activity.  Instead, the transactions are scattered among various reports, which must be analyzed by the Receiver's team and compiled to complete the Receiver's analysis.  If the Receiver is unable to locate a set of books or transaction ledgers, the funds tracing analysis may be a lengthy manual process.

60.     At this early stage, it is difficult to predict how long it will take for the Receiver to complete his work.  As the Receivership moves forward, the Receiver and his team will continue their efforts to most efficiently recover and realize the value of assets for the benefit of the Receivership Estate.

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ Sonila Themeli*
    Sonila Themeli
    Texas Bar No. 24073588
    S.D. Tex. Bar No. 2828237
    600 Travis Street, Suite 3400
    Houston, TX 77002
    Telephone:  713.227.8008
    Facsimile:   713.227.9508
    sthemeli@shb.com

    Caroline M. Gieser
    (admitted *pro hac vice)*
    1230 Peachtree Street, NE, Suite 1200
    Atlanta, GA  30309
    Telephone:  470.867.6000
    mcgieser@shb.com

*Counsel for Court-appointed Receiver*
*John Lewis, Jr.*

17

**RECEIVER'S THIRD INTERIM STATUS REPORT**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 1st day of May, 2023, the above and foregoing document was filed electronically through the CM/ECF system, which sent notification of such filing to all known counsel of record, addressed as follows:

Matthew J. Gulde
UNITED STATES SECURITIES
AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX  76102
Telephone:   817.978.1410
Facsimile:   817.978.4927
guldem@sec.gov

*Attorney for Plaintiff*

Paul D. Flack
PRATT &FLACK, LLP
4306 Yoakum Blvd., Suite 500
Houston, TX 77006
Telephone: 713.705.3087
pflack@prattflack.com

*Counsel for Defendant Mauricio Chavez*

Dan L. Cogdell
COGDELL LAW FIRM, PLLC
1000 Main Street, Suite 2300
Houston, TX  77002
Telephone:  713.426.2244
Dan@cogdell-law.com

*Attorney for Defendant,*
*Giorgio Benvenuto*

*/s/ Sonila Themeli*
Sonila Themeli

18

**RECEIVER'S THIRD INTERIM STATUS REPORT**