IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | |
| MAURICIO CHAVEZ, GIORGIO BENVENUTO and CryptoFX, LLC, | § § § | CIVIL ACTION NO. 4:22-CV-03359 |
| *Defendants.* | § § | JUDGE ANDREW S. HANEN |
| CBT Group, LLC, | § § § | |
| *Relief Defendant.* | § | |

**RECEIVER'S FOURTH INTERIM STATUS REPORT REGARDING CRYPTOFX CRYPTOCURRENCY TRADING**

John Lewis, Jr. ("Receiver"), the court-appointed Receiver for Mauricio Chavez ("Chavez"), Giorgio Benvenuto ("Benvenuto"), CryptoFX, LLC ("CryptoFX"), and CBT Group, LLC ("CBT"), pursuant to the Order Appointing Receiver ("Receivership Order") (Doc. No. 11) files his Fourth Interim Status Report ("4th Report") covering the period from April 1, 2023 to June 30, 2023.

## I.  INTRODUCTION

1.  In the past ninety days, Receiver and his team have continued their investigation of this case, particularly focusing their efforts on identifying and tracing cryptocurrency trading transactions, which have the potential to increase the value of assets in the Receivership Estate by a substantial amount.

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

2.	In accordance with the Court's Receivership Order, this Report includes (a) a general summary of the work done since the Third Interim Report filed by Receiver and his team; (b) cash on hand and estimated accrued expenses and a schedule of receipts and disbursements; (c) a description of all known receivership property; (d) a description of liquidated and unliquidated claims; (f) a list of all known creditors; and (g) Receiver's proposed plan for administering the Receivership.

## II.	EXECUTIVE SUMMARY

3.	Receiver's First Interim Report ("1st Report) was filed on November 28, 2022, sixty (60) days following Receiver's appointment.  In the 1st Report, Receiver advised the Court of the following:

a)	**A larger case than previously thought**.  Rather than a fraud in the $12 million range as previously plead, early forensic efforts by Receiver's team revealed a fraud approximating at least $150 million.

b)	**Ongoing Fraud**.  Notwithstanding the Receivership Order and the Court's permanent injunction therein, Receiver's review of CFX business records revealed that Chavez and related entities continued to conduct "business" around the country, including Texas, California, New Jersey, Louisiana, and Illinois.  Receiver concluded that "no meaningful or legitimate business [was] conducted by Defendants" and "activities and operations bear the indicia of a Ponzi scheme…"

c)	**A large document and ESI case**.  From PayPal, Google Drive, Salesforce, SMS (Text Messages), electronic payments through depository institutions, WhatsApp, to dozens of cryptocurrency platforms and thousands of crypto wallets, Receiver's team would need to engage forensic expertise to image, store, and access business records.

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

Receiver's team would also need to engage cryptocurrency experts given the volume of CFX money that flowed through the company and its leaders. In the opening weeks of the Receivership, business records recovered approximated 177,000 in scanned documents and seven terabytes of data (one terabyte is approximately 250,000 scanned images).

d) **Substantial causes of action**. Receiver recovered approximately $3.7 million and reported to be "actively liquidating an additional $6-8 million" pursuing claims against "CFX senior employees, family members of the Defendants, related business entities and other third parties" who enabled the fraud.

4.     Receiver's Second Interim Status Report ("2nd Report) was filed January 31, 2023 (Doc. No. 50). In the 2nd Report, Receiver advised the Court of the following:

a) **An even bigger case**. Receiver uncovered forensic evidence indicating that the Defendants have defrauded over 40,000 victims in excess of $300 million including $41 million Chavez personally appears to have received. Receiver's team has not been able to account for this $41 million in this case and Chavez has failed and refused to produce company-owned (now Receiver-owned) computer software, electronically stored information (ESI), passwords to company devices, and required credentials to enterprise data management solutions utilized by CryptoFX, including Salesforce and Microsoft 365 among others.

b) **Continued fact gathering**. Receiver's team propounded various subpoenas to third parties, parties, financial institutions, cryptocurrency platforms, professionals retained by CryptoFX, internet services, facilities securities services, and various other fact witnesses.

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

c) **Discovery of numerous "related entities."** Receiver's team deposed several CryptoFX sales agents, employees, Chavez's wife, Chavez reported girlfriend, as well as persons believed to have knowledge of at least fourteen (14) Chavez related/controlled entities potentially holding receivership property owned, held, or controlled by Chavez affiliated entities not currently subject to the jurisdiction of this Court.

5.      Receiver's Third Interim Status Report (3rd Report) was filed on May 1, 2023 (Doc. No. 72). In the 3rd Report, Receiver advised the Court:

a) **Continued interviews and depositions**. Receiver's team conducted several interviews with CryptoFX former employees, sponsor/leaders, and their counsel and reviewed and analyzed hundreds of documents produced from these interviews.

b) **Detailed review of Salesforce data confirming Ponzi scheme.** After extensive negotiations with Salesforce and its counsel, review of Salesforce data shows that a) CryptoFX raised over $300 million from over 40,000 investors around the county and b) it would have been impossible for Chavez and CryptoFX leaders to deliver the 15% month over month profits they promised to investors/victims.

c) **CryptoFX was a "cash" AND a cryptocurrency business.** While a majority of the $300 million in investments appear to have been made in cash, many investors were also paid by CryptoFX in cryptocurrency. This required Receiver to a) reconstruct (follow) thousands of incoming cash payments and b) undertake a "trace" of **each** of the 12,000 cryptocurrency transactions involving over 6,800 unique cryptocurrency wallet addresses through 70 different types of cryptocurrencies.

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

d) **Receiver retains BlockTrace.**  To assist with the novelty, technical difficulty, and complexity of a cryptocurrency forensic investigation in this case, Receiver retained BlockTrace, an experienced and well-regarded firm which has employed retired Internal Revenue Service ("IRS") and Homeland Security Investigations ("HSI"), Special IRS agents with 25 years in criminal and financial investigations backgrounds, including over 100 cryptocurrency tracing investigations.  BlockTrace has trained federal, state, local and tribal governments in "Darknet/Crypto" and BlockTrace's principals have been qualified as testifying expert witnesses.  BlockTrace is retained in this case to advise Receiver on asset recovery strategies and investigating fraud or crimes involving the use of cryptocurrencies.[1]

6.      Receiver's Fourth Interim Status Report (4th Report) is filed herein.  Receiver advises the Court as follows:

a) **BlockTrace's cryptocurrency investigation is ongoing.**  To date, BlockTrace has analyzed transactions related to five Coinbase accounts, though tracing of those accounts is ongoing.  BlockTrace's analysis thus far is limited to January 2020 (approximate date that CryptoFX commenced business operations) through December 2022.

b) **Cryptocurrency tracing is tedious and time consuming.**  Cryptocurrency tracing involves analyzing tens of thousands of threads of Blockchain data to track and investigate cryptocurrency transactions.  Cryptocurrency tracing is time consuming and often leads to additional crypto wallet addresses without any identifying person or

---

[1] Receiver is contemporaneously filing BlockTrace's first interim fee application for its ongoing work as described above.  Counsel for the SEC have been briefed on these efforts and were provided with a detailed virtual presentation from BlockTrace regarding its preliminary findings.

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

entity. The paper and electronic records of CryptoFX include the identity of some wallet owners but in many cases it does not. To enable the BlockTrace work, Receiver's team continues to propound and negotiate outbound subpoenas both to individuals and multi-national companies (i.e. Google, Salesforce) as necessary to trace back to the ultimate recipient and trace forward to identify the sender of cryptocurrency to and from CryptoFX cryptocurrency accounts.

c) **Looking for "needles in a haystack."** In the first 12 weeks of BlockTrace's engagement and as it begins to digest the first tranche of the 12,000 transactions identified between CryptoFX, Chavez, and others, and to unlock, identify, source, trace, and account for 6,800 unique crypto wallets, BlockTrace has uncovered the following so far:

- Four (4) cryptocurrency transfers worth $2.4 million from CryptoFX controlled accounts at Coinbase. These transactions were previously unknown to Receiver prior to BlockTrace's engagement.
- Fifteen (15) accounts at Binance and Swithchain (previously unknown to Receiver) that received "suspicious transfers from CryptoFX.
- CryptoFX sales leaders' cryptocurrency accounts received "investments" after Receiver's appointment.
- To date, only approximately 60% of withdrawals from CryptoFX/Chavez Coinbase accounts have been traced.
- Discovery of Chavez's four (4) self-custodial accounts at Blockchain.com[2]
- Discovery of CryptoFX/Chavez accounts at KOT4X, Bittrix, and Square.
- Three (3) Exodus Wallets used to move cryptocurrency transactions.

d) **More discovered accounts, exchanges and transactions**. As the BlockTrace work continues, Receiver and his team continue to analyze and research for potential sources

---

[2] A "self-custodial" wallet in cryptocurrency terminology refers to a cryptocurrency wallet where only the holder (Chavez) possesses and controls the private key to that wallet. Hence, given Chavez' invocation of the 5th Amendment, Receiver has not yet access these wallets or determine their value. Receiver's motion to compel Chavez' compliance with the Receivership Order and Chavez's response asserting his 5th Amendment rights is now fully briefed and awaiting this Court's ruling.

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

for additional recoveries, including, but not limited to, continued investigation of the following:

- A $1 million cryptocurrency transfer from a CryptoFX account at Coinbase to a non-CryptoFX Coinbase account beginning with **5f75; ;**
- BlockTrace has built a database of all 12,000 transactions (mentioned earlier);
- Chavez's wife, Angelica Vargas, had a non-custodial Exodus wallet where a total of approximately 299 Bitcoin (USD value of approximately $11,498,000.00) were transferred in and out resulting in a zero balance;
- Fifteen (15) accounts at Binance and Swithchain that received suspicious cryptocurrency transfers from CryptoFX;
- Cryptocurrency accounts of CryptoFX sales leaders where we have identified investments made after the Receiver appointment;
- Mauricio Chavez's four (4) self-custodial accounts at Blockchain.com;
- Previously undisclosed or discovered accounts to at least ten additional crypto exchanges (i.e. Kracken, KOT4) identified by BlockTrace.

**e) Receiver's Ongoing Investigation**

7.     Receiver and his team have continued fact development by: (1) conducting interviews of key leaders, employees, and sales personnel at CryptoFX; (2) issuing third-party subpoenas for documents and information from additional financial institutions, cryptocurrency platforms, title companies, and other fact witnesses; (3) sending demand letters to key sales agents and leaders at CryptoFX requesting an accounting of all monies received from CryptoFX in the form of commissions, bonuses, and Ponzi payments, and requesting all CryptoFX assets in their possession.

8.     Receiver continues to liquidate Receivership property in accordance with his liquidation plan. (Doc. No. 47). Since the filing of the 3rd Report, Receiver sold a 2021 Mercedes-Benz GLE Hybrid SUV for $65,000 and is currently finalizing the sale of a 2022 BMW X M501 for $64,600. Both sales have been approved by the Court.  (Doc. No. 70). Receiver is in negotiations over the sale of the Mack Washington property in Waller, County which will hopefully sale for around $1,000,000.

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

### III.    The BlockTrace Investigation and Report

9.    Given the hundreds of millions of dollars of cash and cryptocurrency transactions in this case, the Receiver employed BlockTrace to serve as the Receiver's cryptocurrency consultants. (Doc. No. 42).  The Court granted Receiver's Motion to Employ BlockTrace on January 6, 2023.  (Doc. No. 43).

10.    Beginning in January 2023, BlockTrace began an extensive analysis of all available CryptoFX cryptocurrency records.  BlockTrace's final report to Receiver and this Court is currently in the form of a 175 page highly detailed and technical draft report and provided to the Receiver on April 11, 2023.  The Receiver Team has been reviewing the report and working with BlockTrace to summarize the primary issues to report to the Court.  Since the BlockTrace report is preliminary and contains the complete wallet addresses for over 6,800 accounts, including investors/victims, the Receiver will file BlockTrace's final report once the majority of all crypto tracing is complete.

11.    The six Coinbase accounts and other accounts/wallets used by CryptoFX and related parties that are of primary importance are listed below.  For simplicity and security, only the first four digits of the wallet address are shown and are in bold throughout this report:

| Owner/Holder | Address | Exchange/Wallet | Notes regarding Account Status |
|---|---|---|---|
| Chavez | **5fb5** | Coinbase | Researched |
| Chavez | **52cd** | Coinbase | Researched /Primary account |
| Chavez | **1Msf** | Exodus Wallet | Need info / Attempt to trace. Can't subpoena |
| Chavez | **bc1q** | Exodus Wallet | Need info / Attempt to trace, Can't subpoena |
| Chavez/Vargus | **1d8g** | Exodus Wallet | Non-custodial account. Can't subpoena |
| Chavez | **14jw** | Believe Exodus Wallet | Non-custodial account. Can't subpoena |
| Chavez | **3255** | Blockchain.com | Investigation underway |
| Chavez | **79d3** | Blockchain.com | Self-custodial. No documents. |
| Chavez | **7ea1** | Blockchain.com | Self-custodial. No documents. |
| Chavez | **e208** | Blockchain.com | Self-custodial. No documents. |
| Chavez | **24f4** | Blockchain.com | Self-custodial. No documents. |
| Chavez | **2125712** | KOT4X | Awaiting subpoenaed documents |

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

| Chavez | 2165604 | KOT4X | Awaiting subpoenaed documents |
|---|---|---|---|
| E. Taffinder | 5a25 | Coinbase | Researched and loaded in database |
| J. Taffinder | 6024 | Coinbase | Researched and loaded in database |
| Benvenuto | 5ecd | Coinbase | Researched and loaded in database |
| Fernandez | 59e5 | Coinbase | Researched and loaded in database |
| Unknown | See detail[3] | Binance.com | Subpoenaed 10 accounts |
| Unknown | See detail[4] | Switchain | Five accounts in Marshall Islands |
| Unknown | rHwk | XRP | BlockTrace currently analyzing |
| CryptoFX | | Square | Receiver has the data to analyze |
| CryptoFX | | Bittrex | Receiver has the data to analyze |
| Unknown | 3JRL,3QWS | Kracken | Has not responded to subpoena |
| Unknown | 3J1C,3BNW | Bitstamp | UK entity and need to take further steps |
| Unknown | 3LJH,3QAw | Crypto.com | Maltese entity and need to take further steps |
| Unknown | 3MKp | Kucoin | Has not responded to subpoena |

12. At the same time BlockTrace was investigating the Coinbase accounts, the Receiver's forensic accountants, Hays Financial Consulting, LLC ("HFC"), undertook an extensive analysis of all documents in the Receiver's possession for cryptocurrency wallet addresses that received or were sent cryptocurrency. HFC identified hundreds of wallets owned by CryptoFX sales leaders and investors that received and were sent cryptocurrency. HFC also researched information in WhatsApp communications as discussed further in this report.

**A. Mauricio Chavez's Accounts**

13. BlockTrace analyzed the Blockchain.com custodial account #3255 of Mauricio Chavez for transactions from August 3, 2022 through September 27, 2022 (two days before entry of the Receivership Order). This custodial account had a total of 21 deposit transactions totaling $1,760,649.00. These deposits were made in Bitcoin, Ether, and USDT. This custodial account had a total of 43 withdrawals totaling $454,770.00. The withdrawals were made in BTC, ETH, and USDT. Further analysis is needed to determine both the source and destination of these

---

[3] The Binance.com accounts are: **1Eax, 14xS, 1CMk, 1Hgy, 1EAA, 1KK1, IM2b, 1RHd, 1GB8, 1GaX.**

[4] The Switchain accounts are: **3Cse, 3Jug, 3HXN, 3F7u, 3Jnu**

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

transactions. The difference between deposits ($1,760,649) and withdrawals ($454,770) is basically what the Receiver swept from the frozen account ($1,161,140.95).

14. Chavez also had four self-custodial accounts at Blockchain.com. Self-custodial account are accounts on which Blockchain.com does not collect, retain, or have access to the coins or the account records. Blockchain.com has informed Receiver's team that only the owner has access to the private key(s) necessary to effectuate transactions in these four non-custodial accounts.

15. At this time Receiver has not been able to trace all transfers to and through the four Chavez self-custodial accounts which are: **24f4, 79d3, 7ea1, e208.** However, the additional records and data Receiver seeks in the Motion to Compel filed on April 24th (Doc. No. 71) may assist in providing the necessary information to verify the cryptocurrency transferred to and from these Blockchain.com self-custodial accounts.

**B. Mauricio Chavez's Wife (Angelica Vargas's) Accounts**

16. Angelica Vargas, Chavez's wife, had a non-custodial Exodus wallet cluster (1d8g) in her name. A total of 299 Bitcoin (BTC) were transferred in and 299 BTC (USD value of approximately $11,498,000.00) were transferred out of this wallet. There is currently no balance in this wallet and the last transaction was on 1/22/2022. A file containing the transactional information of this Exodus wallet was in the Receiver's files and contained notes on some of the transactions. This will be analyzed further, and the transactions traced to their source and disposition. Receiver's team is issuing a demand letter to Angelica Vargas, seeking immediate turnover of these funds and other Receivership assets.

17. At this point, the Receiver is awaiting additional CryptoFX company records and assessing the key priorities and cost/benefit of further research.

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

### C. Four CoinBase Direct Transfers Awaiting Subpoena Results

18.     BlockTrace has identified four additional cryptocurrency addresses that received over $2.4 million in transfers from Chavez's Coinbase accounts.  A description of the transfers to these addresses is as following:

- Address **14Jw** received one hundred and seventy one (171) transfers of BTC totaling $547,121.88.  The Receiver has recently identified information on a leader spreadsheet that 14Jw is an account controlled by Chavez.  BlockTrace has identified 12 possible entities or individuals that received funds from this account.  BlockTrace believes this is a non-custodial account and believes this is possibly an Exodus wallet.  Additional research will be conducted after the company documents subject to the Motion to Compel are produced.
- Address **1Msf** received six (6) transfers of BTC totaling $318,802.32.  BlockTrace has the exported data on this wallet from CryptoFX company records.  Because this is an Exodus custodial wallet, the Receiver cannot send a subpoena for additional information on the transactions in this wallet.  However, the Receiver Team is hopeful additional information is located in the CryptoFX Google Drive once accessed.
- Address **rHwk** received two (2) transfers of XRP totaling $517,406.41.  BlockTrace has not analyzed at this time but is planning to begin the analysis soon.
- Address **5f75** received a total of $1,018,272 of BTC in 5 transactions from an account identified as "My Wallet" in Exodus.  BlockTrace plans to continue investigation once additional documents are produced.

19.     The above are just a few examples of the types of significant transfers BlockTrace has been researching and is awaiting additional documents to identify accounts that could have received investor's money.

### D. Additional Accounts at Binance and Switchain

20.     In addition to the above, BlockTrace identified fifteen (15) accounts held at Binance and Switchain that they recommend be subpoenaed for additional tracing.  Receiver and his team issued these subpoenas and have followed up requesting a response.  BlockTrace advised that the activity out of these crypto addresses was not the typical type of activity they identified when tracing payments out of the Coinbase accounts.  While these 15 addresses received relatively small

amounts of BTC and other cryptocurrencies, the research indicates that the total amount received in these accounts from all sources is not typical to the addresses we have identified for "investors."

21.     These 15 addresses received large amounts of BTC and other cryptocurrencies from many sources (not just CryptoFX).  This could possibly mean that the addresses are: 1) brokers that receive BTC which was converted to a fiat currency[5]; 2) accounts related to the CryptoFX Ponzi scheme and where the BTC is hidden; or, 3) accounts where the BTC was sent conspicuously and transferred to other accounts to be converted to another coin type and eventually fiat currency.

22.     Receiver has served subpoenas on Binance.com and Switchain and is awaiting a response.

**E.  KOT4X Accounts Under Investigation By Receiver**

23.     BlockTrace analyzed the KOT4X account records and determined there were 2 accounts (**2125712** and **2165604**) in the name of Mauricio Chavez.  Between November 11, 2020 and July 13, 2021 a total of 782 transactions occurred in these accounts.  During this period, BlockTrace has identified deposits valued at $1,603,499 and withdrawals valued at $3,498,334. Based on the current records it is unknown how these deposits and withdrawals were made and if these transaction were done in cryptocurrency, USD, or a combination of both. It should be noted that the price of Bitcoin increased by 265% between November 2020 (BTC valued at approximately $15,320) and May 2021(BTC valued at approximately $55,900) which is when a majority of these transactions occurred.

24.     The Receiver Team identified additional KOT4X records that show the user name "Mauricio" but no account number and a list of payments in Bitcoin with a partial Bitcoin address.

---

[5] Fiat currency is a government-issued currency that is not backed by a physical commodity, such as gold or silver, but rather the government that issued it.

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

The amounts in these documents do not match the transactions in the 2 identified accounts above. Therefore, it appears that there are additional KOT4X accounts that have not been located at this time.

25.     The Receiver has sent a subpoena KOT4X to determine if there is any other potential accounts. Of the $3.5 million withdrawn from the KOT4X accounts, $1.0 million went to John Fernandez, who is the subject of another SEC complaint, and the largest portion went to the Chavez/Vargas **1d8g** address.

### F.  Accounts at Other Exchanges

26.     BlockTrace has also identified several other cryptocurrency accounts that had sent, received and/or traded cryptocurrency at Square and Bittrex.  The Receiver has the Square records but has not analyzed them at this time.  The Receiver has issued a subpoena for the Bittrex records. The Receiver plans to analyze these accounts to determine the amount of cryptocurrency that went through these accounts and identify additional potential recoverable funds.

### G.  Other Investigative Issues

27.     **Transfers To/From Investors.**  Some CryptoFX investors made their investment by transferring BTC directly into wallets controlled by Chavez.  Some transfers are traceable from investors and other payments are from unknown wallets.  BlockTrace has added these addresses to the schedule of all wallets to assist the Receiver in tracing investments in the claims administration process.  An analysis of the withdrawals from the Coinbase accounts determined that some addresses receiving cryptocurrencies were also used to pay the Ponzi scheme payments to investors.  The names of the investors that received Ponzi payment in cryptocurrency were identified from the Chavez Exodus wallet data.  The Receiver is compiling a list of all crypto transfers to investors.  In addition, the Receiver reviewed the WhatsApp communications between

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

Chavez, sales leaders, and investors which often contained investor wallet addresses. Obtaining this data was a time consuming but necessary project to determine which investors invested by cryptocurrency and were paid Ponzi profits with cryptocurrency.

28.    **CryptoFX Sponsors/Sales Agents/Leaders.**  CryptoFX had approximately 30 "leaders" as they were referred to and several of the primary leaders in key markets (Chicago, Los Angeles, Miami, and New Orleans) maintained crypto wallets used to accept cryptocurrency investments from investors as well as pay investors Ponzi payments. The Receiver has been investigating the leaders and sent demand letters for an accounting of funds invested and returns received. The Receiver is developing information on how much the sale leaders profited with sales commission, bonuses, and Ponzi profits.

29.    **CryptoFX Leader Roberto Zavala Post Receiver Crypto Account.**  Roberto Zavala ("Zavala"), a Chicago leader, continued to raise funds after the Receiver's appointment in September 2022. The Receiver understands Chavez asked Zavala and other leaders and investors to send money to two addresses (**323J** and **33CX**) linked to 247 Academy (the crypto investing scheme operated by Chavez after Receiver's appointment). At this time, the Receiver has not attempted to trace funds to the 247 Academy cryptocurrency addresses.[6]

30.    **CoinBase Line of Credit.**  The CryptoFX Coinbase ledgers list six transfers described as "Loan Collateral" with a value of $1,045,387 out of account **52cd…ab** and transferred to account 52cd**…ac.** BlockTrace is investigating this change in the last two digits of this account as we have not identified other accounts with a change in the last two digits. The Receiver has not

---

[6] Of note is that "247 Academy" also appears to be a street address in New Jersey, one of the states what CryptoFX, Chavez, or others continued to operate after entry of the Receivership Order. While possibly coincidental, public records indicate that the property at 247 Academy, Jersey City, NJ happens to have been sold for $938,000 on November 8, 2022, approximately six weeks after entry of the Receivership Order.

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

located any loan documents or loan accounts and is analyzing the original use of the proceeds from a Coinbase line of credit and how that was paid back.

31.     **Tracing Difficulties (multiple addresses for the same account address).**  The following is but one example of the difficulties BlockTrace is currently experiencing in tracing cryptocurrency transactions when there are multiple deposit addresses associated with the same account: Chavez's account **52cd** at Coinbase account received 14.06965668 BTC (valued at approximately $263,000 at time of transfer) from BTC address **3R14** on 11/26/2020, which was the only receipt from this account.  After additional research, BlockTrace determined that account **3R14** is a deposit address for account **52cd**.  It was ultimately determined that the $263,000 transfer came from Chavez's Exodus wallet and went to Chavez Coinbase account **52cd**.

32.     **Crypto Tax Issues.** The Receiver Team has not identified any CryptoFX records reporting any trading profits from exchanges, reported to the IRS or any form of reported profits to investors.  The Receiver verified with Coinbase that it does not report any profits or losses to the IRS.  Since the inception of its activities, CryptoFX has no tax returns that have been filed, and the Receiver does not have sufficient information to file tax returns.  In addition, the Receiver does not have information to provide Form 1099 to investors and has filed timely extensions with the IRS for 2021 and 2022.  Based on currently available information, it will likely be impossible, without Chavez's cooperation, for the Receiver to identify the cryptocurrency trading profits and report same to the IRS.

33.     **Ponzi Net Winners.**  The Receiver plans to review and determine who profited from the Ponzi scheme and recover profits and commission paid to these individual or entities. In order to do so, the Receiver must identify which investors paid CryptoFX with crypto and were repaid their returns on the CryptoFX contracts with crypto.  The Receiver will then merge this

15

information with the bank account data on cash transactions and determine the net winners that should be pursued.

34. **Costs to Trace Crypto-Currency In Effort to Recover Assets for Investors.** While the Receiver Team is mindful of the extensive time required and ultimate costs of tracing these cryptocurrency transactions, it avers the following actions by Chavez and CryptoFX justify the need for the Receiver Team to determine if there are recoverable assets for investors:

- Failed to maintain clear or consistent records of any cryptocurrency trading.
- Traded over $130 million in cryptocurrency transactions.
- Traded over 70 different types of cryptocurrencies.
- Raised over $300 million in a primarily cash Ponzi scheme.
- Delivered over $40 million in cash to Chavez that has not been identified. The Receiver questions if these funds were diverted to cryptocurrency and self-custodial accounts.
- Purchased hundreds of thousands of dollars in money orders with cash that has not been traced.
- Transferred coins to Switchain which is provides a system to transfer coin types.
- Transferred coins to Binance.com offshore.
- Transferred coins to non-custodial accounts at Blockchain.com.
- Traced cryptocurrency transactions from identified Coinbase accounts through thousands of cryptocurrency addresses to make investor interest payments and transact with other exchanges.
- Used multiple different Exodus wallets to make investor interest payments.
- Owned a Nano drive which is used to store cryptocurrencies and has not produced the private keys so the Receiver can determine if any cryptocurrencies are on the drive.
- Transacted trades through over 6,800 different cryptocurrency addresses identified in the analysis of the documents provided by BlockTrace.
- Defrauded over 40,000 victims.

35. Given these issues, the Receiver has determined it prudent to trace the major cryptocurrency transfers and to continue the investigation to determine if there are any additional recoverable assets.

## IV. Proposed Workplan (Q3 2023)

36. The Receiver recommends the continuation of the Receivership and proposes the following workplan as the key focus for the next 90 days.

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

### A. BlockTrace Investigation

37.    BlockTrace's CryptoFX cryptocurrency trading investigation is ongoing.    The following items are proposed for the third quarter of 2023:

- Trace the 3 Exodus wallets, 1Msf, bc1Q, and 1d8g.
- Investigate the Swithchain records when/if records received from Marshall Islands.
- Investigate the Binance.com accounts when data is received.
- Investigate the leaders' crypto addresses in the WhatsApp communications.
- Investigate the leaders' crypto wallets.  HFC has prepared a list of all leaders and is prepared analyses on how much leader profited via commissions, bonuses, and Ponzi payments.  BlockTrace will match this information to the investors that received crypto payments.
- Finish Coinbase withdrawal tracing for the 5 known accounts.
- Trace all significant deposits to identify possible investors and additional non-custodial wallets sending coins to CryptoFX.
- Trace the KOT4X accounts.
- Trace BlockChain.com accounts.
- Trace Bittrex accounts.com.
- Analyze and trace the Square Accounts.  BlockTrace has the data but have not traced since upon initial review these account do not appear to have significant transaction value.
- Follow-up on the subpoenas sent to Kracken, Bitstamp, Crypto.com, and Kucoin.

38.    After Receiver obtains the additional information discussed in this report, a full report of BlockTrace's findings will be filed.  It is hopeful this work will be completed before the Receiver's 6th Interim Report is filed in October 2023.

### B. Additional Investigation

39.    Receiver filed a Motion to Compel as to Chavez's assertion of his 5th Amendment rights on April 24, 2023.  This matter is fully briefed and awaiting guidance from this Court.  Receiver is hopeful that he obtains access to the CryptoFX Google drive, and the CryptoFX business records stored in Chavez's Mac-Mini computer and cell phone.  These records are critical to the Receiver's efforts to unravel CryptoFX transactions and are likely to lead to additional recoveries for the benefit of the estate.  Most certainly, having this information will reduce the cost

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

of the investigation and will provide comfort to investors that their funds were properly traced and that Chavez does not have millions of their money. While awaiting on information from additional subpoenas and from potential data from Chavez, the Receiver Team will continue researching the issues discussed in this report along with specific large dollar/coin transfers.

**V.     Claims and Liquidation Analysis (as of 7/15/23)**

40.     Based upon the known universe of over 40,000 investors/victims and based upon cash on hand in the receivership estate of $3,598,051, it is inconceivable that a liquidation and claims distribution at this juncture would yield a meaningful dividend to investors. The only prospect of a meaningful return in this case is for Receiver to continue to invest (with this Court's and the SEC's approval), funds currently on hand to complete the ongoing forensic and fact investigation as described herein.

**VI.     CASH ON HAND AND ESTIMATED ACCRUED ADMINISTRATIVE EXPENSES**

41.     On June 20, 2023 the Receivership Estate had the following cash on hand: $3,598,051 deposited in four trust accounts named for each of the Defendants as of the end of the Application Period (July 31, 2023). *See* Schedule of Receipts and Disbursements, attached as **Exhibit A.** As of the filing of this Report, no disbursements to "investors"/victims or creditors have taken place.

42.     During the period covered by this Report, the Receivership Estate has incurred administrative expenses in the amount of $30,269.67 as a result of the efforts to marshal and preserve the assets of the Receivership. All of these projected expenses were advanced by SHB. The Receiver and the professionals working with him are well aware that the fees and expenses associated with the administration of the Receivership are paid from the assets of the Receivership

Estate. The goal of all involved professionals is to conclude this Receivership as quickly and efficiently as can be reasonably accomplished, thereby maximizing recovery to victims.

43.     For the period April 1, 2023 to June 30, 2023, the unbilled professional fees incurred are as follows: $46,200 John Lewis, Jr.; $213,659.50 Shook, Hardy & Bacon L.L.P.; $113,287.36 Hays Financial Consulting, LLC; and $21,924.00 BlockTrace Inc.

## VII.    DESCRIPTION OF ALL KNOWN RECEIVERSHIP PROPERTY

44.     The Receiver estimates a total of $56,100,390 in known liquidated and unliquidated Receivership assets, including unasserted causes of action requiring this Court's approval to bring. A true and correct copy of the Liquidated and Unliquidated Analysis performed by Hays Financial Consulting, LLC is attached hereto as **Exhibit B**.

45.     The Receiver and his team's investigation shows additional Receivership property held by third parties. The Receiver plans to seek turnover of these assets and also move for the expansion of the Receivership Order to include other persons and/or entities known to hold Receivership assets. Depending on the equity in each of the properties, appropriate action will be taken to either sell, hold, donate, or abandon properties in order to maximize the return of cash to the estate. It is too early to tell at this time what price the assets will sell for, the relative costs associated with the sales, or the potential recovery benefit to the Receivership estate.

## VIII.   LIST OF ALL KNOWN CREDITORS

46.     The only known commercial creditor is BZO Custom Wheels, LLC, the landlord of the CryptoFX's offices on Blalock ("Landlord"). Landlord had an unliquidated claim for approximately $20,239.18 against the Receivership estate, which includes rent and utility bills. The Receiver and his team negotiated the sale of certain Receivership personal property at Blalock to set off Landlord's claim, bringing the final settlement amount to $17,209.18. The Receiver's

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

team also negotiated and the Landlord agreed to terminate the lease on October 31, 2022, although the Receiver vacated the premises of the Blalock office on December 7, 2022. The claim of the landlord has been fully resolved and is now concluded.

Dated: July 20, 2023

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ Poston E. Pritchett*
Poston E. Pritchett
Texas Bar No. 24088258
600 Travis Street, Suite 3400
Houston, TX 77002
2555 Grand Blvd.
Kansas City, MO 64108
Telephone:  816.474-6550
Facsimile:   816.421.5547
ppritchett@shb.com

Caroline M. Gieser
(admitted *pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
1230 Peachtree Street, NE, Suite 1200
Atlanta, GA  30309
Telephone:  470.867.6000
mcgieser@shb.com

**Counsel for John Lewis, Jr.**
**Court-Appointed Receiver**

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

# CERTIFICATE OF SERVICE

I hereby certify that on this the 20th day of July, 2023, the above and foregoing document was filed electronically through the CM/ECF system, which sent notification of such filing to all known counsel of record.

Matthew J. Gulde
UNITED STATES SECURITIES
AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX  76102
Telephone:  817.978.1410
Facsimile:   817.978.4927
guldem@sec.gov

***Counsel for Plaintiff***
***U.S. Securities and Exchange Commission***

Paul D. Flack
PRATT & FLACK, LLP
4306 Yoakum Blvd., Suite 500
Houston, TX  77006
Telephone:  713.705.3087
pflack@prattflack.como

***Counsel for Defendant Mauricio Chavez***

Dan L. Cogdell
COGDELL LAW FIRM, PLLC
1000 Main Street, Suite 2300
Houston, TX  77002
Telephone:  713.437.1869
Facsimile:   713.437.1810
dan@cogdell-law.com

***Counsel for Defendant Giorgio Benvenuto***

*/s/ Poston E. Pritchett*
Poston E. Pritchett

**RECEIVER'S FOURTH INTERIM STATUS REPORT**