IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § § | |
| vs. | § § | |
| MAURICIO CHAVEZ, GIORGIO BENVENUTO and CryptoFX, LLC, | § § § | CIVIL ACTION NO. 4:22-CV-03359 |
| *Defendants.* | § § § | JUDGE ANDREW S. HANEN |
| CBT Group, LLC, | § § § | |
| *Relief Defendant.* | § | |

## RECEIVER'S FOURTH INTERIM STATUS REPORT

John Lewis, Jr. ("Receiver"), the court-appointed Receiver for Mauricio Chavez ("Chavez"), Giorgio Benvenuto ("Benvenuto"), CryptoFX, LLC ("CryptoFX") and CBT Group, LLC ("CBT"), pursuant to the Order Appointing Receiver ("Receivership Order") (Doc. No. 11) files his Fourth Interim Status Report ("Report"), showing the Court as follows:

### I.   EXECUTIVE SUMMARY

1.   In the ninety days since the filing of the Third Interim Report, the Receiver and his team have continued to investigate the case, paying particular attention towards assessing and promptly liquidating known assets and the assessing the prospects of efficiently recovering and disposing of additional assets. On August 31, 2023, this Court granted Receiver's motion to compel additional records of the Receivership finding that the Court "would not allow Defendant Mauricio Chavez to claim a Fifth Amendment privilege over records relating to this case that are property of CryptoFX, LLC". (Doc. #93). Further, this Court directed Defendants to assist the

Receiver in identifying additional potentially recoverable assets. The Receivership Team is actively building a claims submission process and continues to remain in daily communication with alleged victims and other concerned stakeholders. All of the foregoing continues to involve the review of company records, including Salesforce data; forensic analysis of financial records, including cryptocurrency transactions, and third-party records; analysis of receivership assets and sale of the same, both real and personal property; maintaining and updating the Receiver's website; and monitoring media coverage of this case.

2.  It is clear from deposition testimony, interviews with former employees, leaders, investors, and from the company documents, financial records and cryptocurrency records analyzed by BlockTrace, that Defendants were operating a Ponzi scheme, where previous investors were paid with funds collected from newer investors. The Salesforce data obtained by the Receiver shows that CryptoFX raised over $300 million from over 40,000 investors from around the country.

3.  Additionally, while the majority of investments and payments of returns on CryptoFX contracts were made in cash, many investors paid and were paid in cryptocurrency. The current investigation of the available cryptocurrency transactions conducted by BlockTrace, the third party engaged by the Receiver to assist with cryptocurrency transaction tracing, has revealed that even though Defendants raised over $300 million in investor funds, their profit from cryptocurrency trading was minimal and woefully insufficient to pay the promised 15% monthly returns as well as the commissions and bonuses to sponsors/leaders.

4.  In addition to Ponzi payments, commissions and bonuses paid to sponsors, the records further show that investor funds were improperly diverted.

## II.  INTRODUCTION

5. The Receiver filed his First Interim Report on November 28, 2022 (Doc. No. 33), his Second Interim Status Report on January 31, 2023 (Doc No. 50), and his Third Interim Status Report on May 1, 2023 (Doc. No. 72). This Fourth Interim Status Report is being submitted in accordance with the Receivership Order ¶ 52-53. The Receiver's First, Second and Third Interim Status Reports and the exhibits thereto, are available for all investors on the Receiver's website at https://cryptofxreceiver.com/case-documents.aspx. This Report covers the period between July 1, 2023 to September 30, 2023.

6. This Report is based upon the continued investigation of the case conducted by the Receiver and his team, which has included motion practice; sale of receivership assets, both real and personal property; listing of additional personal property for sale; witness deposition and interviews; collection of documents from CryptoFX leaders and former employees; forensic analysis of financial records, including cryptocurrency records; review of CryptoFX documents maintained by the Defendants and obtained from investors, employees, sales agents, and third parties; inspection of Chavez's apartment and other residences; communications with investors; and monitoring of media coverage of this case.

7. This Report includes (a) a general summary of the work completed by the Receiver and his team since the Third Interim Report; (b) cash on hand and estimated accrued expenses as well as a schedule of receipts and disbursements; (c) description of all known receivership property; (d) description of liquidated and unliquidated claims; (f) list of all known creditors; and (g) Receiver's proposed plan for administering the Receivership.

8. The Receiver will provide further quarterly reports as provided for in the Receivership Order. *Id*. at ¶¶ 52-53.

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

### III. SUMMARY OF RECEIVERSHIP OPERATIONS

9. During the period covered by this Report, the Receiver and his team continued to analyze CryptoFX business documents (both paper and electronically stored) as well as documents produced by CryptoFX employees, sales agents, cryptocurrency platforms or exchanges, financial institutions, title companies, and other third parties.

10. As stated in the Receiver's First Status Report, the Receiver has uncovered forensic evidence indicating that the Defendants raised over $300 million from over 40,000 investors from several states. *See* Analysis by Gregory Hays, attached as Exhibit A to Receiver First Interim Report (Doc. No. 33).

11. During the relevant time period, the Receiver has continued to monitor the subpoenas it has issued, responses to same and associated documents, as well as analyzing whether or not further pursuit of such records is warranted. As of the filing of this Report, the Receiver has issued 82 subpoenas.

12. Further, the Receiver previously obtained access to the CryptoFX Salesforce account, a customer management platform used by CryptoFX to record investor data, including amounts invested and paid out to investors. This information is critical in determining the amount of Ponzi payments made to investors and the commissions paid to sponsors.

13. The Receiver avers that the commissions and bonuses paid to all sales agents/sponsors/leaders were unlawfully obtained from investors by means of artifice and fraud. Therefore, sales commissions and bonuses paid to sponsors should be turned over to the Receiver. The Receiver has identified approximately 100 key sales agents/leaders for CryptoFX, located primarily in Texas, Illinois, Louisiana, California, and Florida. The Receiver sent demand letters to these individuals, requesting an accounting of all monies received from CryptoFX in the form

4

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

of commissions, bonuses, and Ponzi payments so the Receiver could prepare an IRS W9 form, as well as a return of all CryptoFX documents and assets, including cash in their possession. Several leaders have responded to the Receiver's demand letter and turned over documents in their possession, including CryptoFX accounting spreadsheets used by them to record new contracts, payments to sponsors, payments to earlier investors, and the balance sent to CryptoFX's main office in Houston.

14. Requests for production of documents and information have also been sent to all known CryptoFX and CBT employees, several of whom have sent documents in their possession and agreed to interviews with the Receiver's counsel. Receiver is currently evaluating how best to follow up with non-cooperative former CryptoFX and CBT employees continuing to pursue receivership assets while balancing his obligation to be a good steward of receivership funds in his possession and control.

15. The Receiver was informed by investors that certain CryptoFX leaders were continuing to communicate with investors on behalf of CryptoFX, promising payments on investor contracts and also misleading investors about filing a complaint with the Receiver and SEC. The Receiver sent cease and desist letters to these leaders.

16. The Receivership Team continues to engage and interact with victims in the community regarding their losses and has tracked over 4,000 inquiries from various individuals to date.

17. In addition to some of the devices seized from the CryptoFX offices,[1] the Receiver has imaged an additional laptop turned over by a former CryptoFX employee. An updated list of the CryptoFX electronic devices the Receiver has seized was included as Exhibit A to its Third

---

[1] *See* List of devices seized by the Receiver from the CryptoFX Blalock office attached as Exhibit C to Receiver's First Interim Report (Doc. No. 33).

Interim Status Report (Doc. No. 72). The Receiver has also obtained the right to access information from the CFX Google Drive where documents and records were stored and Chavez's other electronic devices through the partial granting of its motion to compel.

18. On January 20, 2023, the Receiver filed his Liquidation Plan. (Doc. No. 47).

19. The Receiver had previously retained Mark Dimas Properties, a real estate broker, to assist with the marketing and sale of Receivership real estate assets. During the relevant period, the Receiver has relied on Mark Dimas Properties for the marketing and sale of a property consisting of 25.1320 acres located on Mack Washington Rd., Hempstead, Texas, 77445. This property was purchased by CBT in November 2021 for $2,050,000.00. However, the independent appraisers employed by the Receiver, MB Lane & Associates, Inc. and Scott Stephens & Associates, appraise the property at $1,080,000 and $1,150,000 respectively. *See* attached MB Lane & Associates, Inc. Appraisal Report, attached as **Exhibit A**; Scott Stephens & Associates Appraisal Report attached as **Exhibit B**. The Receiver has entered a contract for the sale of this property, which should net the estate close to $1,000,000 provided the Court approves of the sale. The Receiver's motion to approval sale of real property is forthcoming.

20. The Receiver employed Webster's Auctions, a professional appraiser/auctioneer, to conduct an inventory of the personal property at Defendant Chavez's residence and the sale of certain receivership personal property. On January 5, 2023, the Receiver, together with undersigned counsel, counsel for Chavez, and Webster Auctions, inspected Chavez's residence. An inventory of the items found at Chavez's residence was prepared by Webster's Auctions. Webster's Auction has liquidated the personal property items and is in the process of preparing an accounting for the Receivership Team.

21. On December 27, 2022, the Receiver filed a Motion to Show Cause why Defendant Mauricio Chavez should not be held in civil contempt for failing to comply with this Court's September 29, 2022 Receivership Order (Doc. No. 27). Chavez filed his Response on January 17, 2023 (Doc. No 45); the Receiver filed his Reply in support of the Motion on January 27, 2023 (Doc. No. 49); and Chavez filed a Sur-Reply in opposition of the Motion on February 6, 2023 (Doc. No. 51). Additionally, on March 15, 2023, Chavez filed a Motion for Attorney's fees (Doc. No. 61), which the Receiver opposed (Doc. No. 65). Oral argument on the Motion to Show Cause and Chavez's Motion for Attorney's Fees was held on March 23, 2023. The Court denied the Motion to Show cause without prejudice to filing a motion to compel. (Doc. No. 67). The Court granted Chavez's Motion for Attorneys' fees. The Court also allowed the Receiver's first interim fee application. *Id.*

22. Additionally, Chavez, through counsel, served discovery requests on the Receiver, requesting access to all CryptoFX records in the Receiver's possession as well as records received in response to third-party subpoenas. The Receiver has produced all CryptoFX Salesforce data as well as other documents requested by Chavez.

23. Pursuant to the Receivership Order ¶ 56, the Receiver employed BlockTrace, LLC to serve as the Receiver's cryptocurrency consultants in this matter. The Court granted Receiver's Motion to Employ BlockTrace on January 6, 2023. (Doc. No. 43). Beginning in January 2023, BlockTrace began an extensive analysis of all the available cryptocurrency records. Currently, BlockTrace's analysis of these transactions shows that while CryoptoFX raised over $300 million in investor funds, its profit from any cryptocurrency trading was only about $2.6 million. BlockTrace's investigation of CryptoFX-related cryptocurrency transactions is ongoing and involves over 12,000 cryptocurrency transactions representing over $130 million. This is a

massive investigation involving over 6,800 cryptocurrency addresses and 70 different types of cryptocurrency. These addresses are cryptocurrency accounts held at different platforms or exchanges by Chavez, CryptoFX leaders, as well CryptoFX investors who received CryptoFX Ponzi payments in cryptocurrency. In its investigation, BlockTrace has also identified cryptocurrency accounts held at foreign exchanges (Binance and Switchain), which are not accessible from the United States and require a Virtual Private Network (VPN) to access. The investigation is further complicated by the fact that some of the accounts identified by BlockTrace are self-custodial accounts (*i.e.* fully managed by the account holder) and for which the cryptocurrency platforms or exchanges are not able to provide any information or transaction data. The Receiver is determining the cost/benefit of pursuing these and the foreign accounts and if the additional tracing will lead to a substantial recovery.

24. The Receiver and his team have continued to maintain and regularly update the Receiver's website (http://cryptofxreceiver.com/) with new court filings, media coverage, and other information pertinent to this case. The information, where possible, is provided in both English and Spanish. In addition, the website provides answers to frequently asked questions and access to the complete court docket with no PACER charges. The Receiver and his team are also working with KCC to optimize the website with key words for easier Google search by "investors" and others. The Receivership Team received notice of potential scams by individuals who are contacting victims and misleading the victims into spending more money to recover lost funds. The Receivership Team has included a warning on its website of such scams.

25. The Receiver's team also continues to monitor the Receiver's dedicated email and phone number, both of which are posted on the Receiver's website, for "investors"/victims to

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

contact the Receiver and his team. As of the filing of this Report, the Receiver's team has received approximately 3,500 calls and emails from investors.

26. Public awareness of this case continues to grow. The Receiver's team continues to monitor the media coverage of this case, and links to news articles discussing this case have been posted on the Receiver's website as well. Currently, there are fourteen links to news articles and TV stories on the Receiver's website.

27. Additional work performed by the Receiver and his team since the filing of the Third Interim Report includes:

    a. Obtaining an order granting the Receiver's Motion to Compel and negotiating the submission of an agreed order for purposes of obtaining additional records from Mr. Chavez.

    b. Liquidation of all known personal property currently in the Receiver's possession by Webster's Auction.

    c. Negotiating the contract for the sale of the Mack Washington Property with an anticipated recovery to the estate of $1,000,000.

    d. Continuing to review asset list for purposes of determining additional assets to secure efficiently, including the possible expansion of the Receivership estate in order to do so.

    e. Preparing and filing the necessary tax forms for the Receiver Defendants.

    f. Regular interface with various authorities regarding their investigations of the fraudulent conduct that occurred here.

    g. Initiating the steps necessary to open a claims submission process.

28. As a result of these and other activities, the Receiver and his team believe that they have gained a good understanding of the facts and issues that will be most critical to the efficient and effective administration of this Receivership.

## IV. CASH ON HAND AND ESTIMATED ACCRUED ADMINISTRATIVE EXPENSES

29. On September 30, 2023, the Receivership Estate had the following cash on hand: $2,639,671.22 deposited in four trust accounts named for each of the Defendants as of the end of the Application Period (September 30, 2023). These funds were received by: (i) taking possession of cash located at the Defendants' office located at 1124 Blalock, Houston, Texas, 77055 ($53,345.56); (ii) taking possession of safes located at the Defendants' office ($392,765.37); (iii) taking possession of First Community Credit Union bank accounts owned by Benvenuto ($451,448.14); (iv) taking possession of Bank of America bank accounts owned by Benvenuto ($21,325.14); (v) taking possession of a Simmons bank account owned by Benvenuto ($80,763.55); (vi) taking possession of a Simmons bank account owned by CBT ($247,916.46); (vii) taking possession of a Regions bank account owned by Chavez ($781.62); (viii) proceeds from liquidating Coinbase, Inc. account ($982,924.31); (ix) proceeds from liquidating Blockchain.com account ($1,161,140.95); (x) taking possession of the balance of a retainer from Burford Perry LLC ($155,631.00); (xi) taking possession of the balance of retainers from Gerger Hennessy & Martin LLP ($214,487.50); (xii) taking possession of the balance of retainers from Jones Walker LLP ($102,228.70); (xiii) taking possession of CryptoFX funds turned over by Defendant Mauricio Chavez ($55,000); (xiv) proceeds from liquidating real property at 0 Hogan Lane ($64,758.11); (xv) proceeds from liquidating televisions ($3,040.00); (xvi) proceeds from liquidation of Exodus Waller ($86,914.59); (xvii) taking possession of a 2020 Volkswagen Tiguan ($16,695); (xviii) taking possession of a 2021 Mercedes-Benz GEL AMG ($63,567.92); and (xix) proceeds from liquidating real property at 28 Lawrence Marshall Drive ($65,026.82). *See* Schedule of Receipts and Disbursements, attached as **Exhibit C**.

30. All four Receivership trust accounts are held with Flagstar Bank, N.A., a wholly-owned subsidiary of New York Community Bankcorp, Inc. The four trust accounts were previously held with Signature Bank, N.A., which was acquired by Flagstar in March 2023. Flagstar acquired all deposits of Signature Bank. All Receivership deposits are fully insured by the FDIC and the full faith and credit of the U.S. government up to $250,000 and are fully collateralized and insured by a separate surety bond through the Receiver's banking vendor for any amounts above $250,000. Additionally, Flagstar continues to be an approved depository by the U.S. Trustee in bankruptcy cases.

31. Other Assets: In addition to the cash on hand listed above, the Receiver has on hand the following assets listed below. *See also* List of Receivership Liquidated and Unliquidated Assets, attached as **Exhibit D**.

| Asset | Estimated Amount/Value |
|---|---|
| 2022 BMW X6 M50i | $30,000 |
| Various Laptops and desktop computers | $5,000 |
| Real Property: Mack Washington, Hempstead, TX | $1,080,000 |

32. It is the Receiver's plan to prudently market real estate and other assets of the Receivership for the highest prices obtainable. The Court approved the Receiver's Motions to Approve the Sale of real property located at 0 Hogan Lane and 28 Lawrence Marshall Dr. (Doc. Nos. 57, 62). The estate netted $64,758.11 from the sale of Hogan Lane. The Receiver expects the sale of the Lawrence Dr. property to net a similar amount. (The lots are of a similar size and condition). Additionally, the Court granted the Receiver's Motion to approve the sale of personal property relating to Chavez's 2020 Volkswagen Tiguan, (Doc. No. 67) as well as the sale of Chavez's Mercedes and BMW (Doc. No. 70). The BMW was financed through Santander Consumer USA and has a current payoff amount of approximately $37,000. The Receiver

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

anticipates to net approximately $30,000 from the sale of the BMW and approximately $60,000 from the sale of the Mercedes.

33. The Receiver is continuing his investigation to locate additional assets of the Receivership Estate and will develop a distribution plan, subject to the Court's approval.

34. During the relevant period covered by this Report, the Receivership Estate has incurred administrative expenses in the amount of $23,623.19 as a result of the efforts to marshal and preserve the assets of the Receivership. Of these expenses, $23,294.14 were advanced by SHB, which constitutes a $20,634.60 reduction from the $43,928.74 actually incurred by SHB. Pugh Accardo incurred $.30, and Hays and $328.75 in administrative expenses during the relevant period.

35. The Receiver and the professionals working with him are well aware that the fees and expenses associated with the administration of the Receivership are paid from the assets of the Receivership Estate. The goal of all involved professionals is to conclude this Receivership as quickly and efficiently as can be reasonably accomplished thereby maximizing recovery to victims.

36. For the period July 1, 2023 to September 30, 2023, the unbilled professional fees incurred are as follows: $15,435.00 John Lewis, Jr.; $65,900.54 Shook, Hardy & Bacon L.L.P. ("SHB"); $30,857.40 Hays Financial Consulting, LLC. The Receiver's professional fees listed above have been reduced by $4,305.00. Further, SHB's fees have been reduced by $3,145.00.

37. As provided for in the Receivership Order, the Receiver and the professionals working with him will apply to the Court for approval to pay professional fees and expenses.

## V. SCHEDULE OF RECEIPTS AND DISBURSEMENTS

38. As of the filing of this Report, no disbursements to "investors"/victims or creditors have taken place. For a more detailed description of Receivership receipts, *see* supra, Section IV, ¶ 33.

## VI. DESCRIPTION OF ALL KNOWN RECEIVERSHIP PROPERTY

39. At this preliminary stage, the Receiver estimates a total of $ 9,464,511 in known liquidated and unliquidated Receivership assets. For a more detailed description of currently known Receivership property and corresponding approximate value, *see* supra, Section IV, ¶¶ 33, 35-36.

40. It is the Receiver's plan to prudently market and sell the real estate and other assets of the Receivership for the highest prices obtainable. All sales of real estate must be approved by the Court, following a motion to the Court and hearing, if necessary. *See* Receiver's Liquidation Plan (Doc. No. 47).

41. The Receiver and his team's investigation is continuing; however, the investigation shows additional Receivership property held by third parties. The Receiver plans to seek a turnover of all of these assets and also move for the expansion of the Receivership Order to include other persons and/or entities known to hold Receivership assets.

42. Depending on the equity in each of the properties, appropriate action will be taken to either sell, hold, donate, or abandon properties in order to maximize the return of cash to the estate. It is too early to tell at this time what price the assets will sell for, the relative costs associated with the sales, or the potential recovery benefit to the Receivership estate.

## VII.   DESCRIPTION OF LIQUIDATED AND UNLIQUIDATED CLAIMS

43.  This Ponzi scheme was primarily a cash-based scheme, and it is going to require significant resources to unravel the claims of the Receivership estate. A review of the available records indicates that the majority of the investments were paid in cash.

44.  The Receiver will have substantial claims for bonuses and commissions for a large number of third parties and is evaluating collectability from these parties. The Receiver team continues to research additional claims against third parties.

## VIII.   LIST OF ALL KNOWN CREDITORS

45.  At this preliminary stage, the only known commercial creditor is BZO Custom Wheels, LLC, the landlord of the CryptoFX's offices on Blalock ("Landlord"). Landlord has an unliquidated claim for approximately $20,239.18 against the Receivership estate, which includes rent and utility bills. The Receiver and his team negotiated the sale of certain Receivership personal property at Blalock to set off Landlord's claim, bringing the final settlement amount to $17,209.18. The Receiver's team also negotiated and the Landlord agreed to terminate the lease on October 31, 2022, although the Receiver vacated the premises of the Blalock office on December 7, 2022.

46.  The Receiver is not aware of other commercial creditors at this stage.

## IX.   RECEIVER'S PROPOSED PLAN FOR ADMINISTERING THE RECEIVERSHIP

47.  The Receiver recommends the continuation of the Receivership.

48.  The Receiver's key focus for the next 90 days will be on the following tasks:

- Review CryptoFX records obtained following the Court's granting of the Receiver's motion to compel against Chavez August 31, 2023.
- Review documents continuously collected from CryptoFX employees, sponsors, and other third parties.
- Review data and documents from Salesforce recently obtained.
- Trace funds to locate additional assets.

- Determine commissions paid and if those will be pursued.
- Develop electronic claim form for investors.
- Establish claims submission and claims allowance processes.
- Continue working with realtors and appraisers to sell the real properties.
- Determine resale value of personal property and the appropriate method of sale in order to maximize the benefit to the Receivership estate.
- Continue communications with sales agents and "investors" and/or their counsel.
- Depose or interview additional CryptoFX and CBT employees and sales agents as needed.
- File motions for turnover of Receivership assets.
- Continue efforts to identify additional relevant cryptocurrency wallets and trace distributions through cryptocurrency if the recovery of funds appears to be substantial.
- Investigate issues on the purchase of hundreds of thousands of dollars of Money Orders.
- Coordinate as necessary with government agencies.
- File all necessary tax returns.

49. In addition, the Receiver and his counsel will continue to determine whether there are claims against third parties that could result in meaningful recovery to the Receivership Estate.

50. The Receiver will file a motion to expand the Receivership estate to include individuals and entities that hold Receivership assets and/or funds.

51. Further, the Receiver and his team will continue to conduct a factual and legal analysis of issues that could affect whether tracing should be applied to certain investments. Based on the information and documents reviewed to date with an estimated 40,000 investors and over $300 million in investments, the majority of which is in cash, some payments in cryptocurrency, and others in money orders, a complete tracing of investments may not be possible and/or practicable.

52. In addition to analyzing the sources and uses of cash, the Receiver and his team will continue to analyze transactions through the Defendants' cryptocurrency and bank accounts. The Receiver is in possession of transaction reports from Coinbase, Blockchain.com, Binance,

Exodus, and Block, Inc., which appear to be the primary cryptocurrency platforms used by the Defendants and leaders, as well as the Defendants' bank account records.

53. To date, the Receiver has not located a set of books and records that tracked CryptoFX's cash, banking, investments and investor activity. Upon information and belief, Receiver is not convinces that any such books and records exist. Instead, the transactions are scattered among various reports, which must be analyzed by the Receiver's team and compiled to complete the Receiver's analysis. If the Receiver is unable to locate a set of books or transaction ledgers, the funds tracing analysis may be a lengthy manual process.

54. At this early stage, it is difficult to predict how long it will take for the Receiver to complete his work. As the Receivership moves forward, the Receiver and his team will continue their efforts to most efficiently recover and realize the value of assets for the benefit of the Receivership Estate while simultaneously continuing to position the case for claims and closing procedures.

Dated: October 31, 2023

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ Poston E. Pritchett*
Poston E. Pritchett
Texas Bar No. 24088258
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: 816.474-6550
Facsimile: 816.421.5547
ppritchett@shb.com

Caroline M. Gieser
(admitted *pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
1230 Peachtree Street, NE, Suite 1200
Atlanta, GA 30309

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

        Telephone:  470.867.6000
        mcgieser@shb.com

        ***Counsel for John Lewis, Jr.***
        ***Court-Appointed Receiver***

**RECEIVER'S FOURTH INTERIM STATUS REPORT**

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of October, 2023, the above and foregoing document was filed electronically through the CM/ECF system, which sent notification of such filing to all known counsel of record, addressed as follows:

Matthew J. Gulde
UNITED STATES SECURITIES
AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX 76102
Telephone: 817.978.1410
Facsimile: 817.978.4927
guldem@sec.gov

*Attorney for Plaintiff*

Paul D. Flack
PRATT &FLACK, LLP
4306 Yoakum Blvd., Suite 500
Houston, TX 77006
Telephone: 713.705.3087
pflack@prattflack.com

*Counsel for Defendant Mauricio Chavez*

Dan L. Cogdell
COGDELL LAW FIRM, PLLC
1000 Main Street, Suite 2300
Houston, TX 77002
Telephone: 713.426.2244
Dan@cogdell-law.com

*Attorney for Defendant,*
*Giorgio Benvenuto*

/s/ Poston E. Pritchett