IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, *Plaintiff,* | § § § § § § | |
| vs. | § | |
| MAURICIO CHAVEZ, GIORGIO BENVENUTO and CryptoFX, LLC, *Defendants.* | § § § | CIVIL ACTION NO. 4:22-CV-03359 JUDGE ANDREW S. HANEN |
| CBT Group, LLC, *Relief Defendant.* | § § § § § § | |

## <u>RECEIVER'S ELEVENTH INTERIM STATUS REPORT</u>

John Lewis, Jr. ("Receiver"), the court-appointed Receiver for Mauricio Chavez ("Chavez"), Giorgio Benvenuto ("Benvenuto"), CryptoFX, LLC ("CryptoFX") and CBT Group, LLC ("CBT"), pursuant to the Order Appointing Receiver ("Receivership Order") (Doc. No. 11) files his Eleventh Interim Status Report ("Report"), showing the Court as follows:

## I.    EXECUTIVE SUMMARY

1.    In the ninety days since the filing of the Tenth Interim Report, the Receiver and his team have continued to investigate the case, paying particular attention towards assessing and promptly liquidating known assets and assessing the prospects of efficiently recovering and disposing of additional assets. The Receivership Team is actively building a claims submission process for the court's approval. All of the foregoing continues to involve the review of company records, including Salesforce data; forensic analysis of financial records, including cryptocurrency transactions, and third-party records; analysis of receivership assets and sale of

**RECEIVER'S ELEVENTH INTERIM STATUS REPORT**

the same, both real and personal property; maintaining and updating the Receiver's website; and monitoring media coverage of this case.

2.     It is clear from deposition testimony, interviews with former employees, leaders, investors, and from the company documents, financial records and cryptocurrency records analyzed by Receiver's Accountants, Hays Financial Consulting, LLC, and BlockTrace, the third party engaged by the Receiver to assist with cryptocurrency transaction tracing, that Defendants were operating a Ponzi scheme, where previous investors were paid with funds collected from newer investors. The Salesforce data obtained by the Receiver shows that CryptoFX raised over $300 million from over 40,000 investors from around the country.

3.     Additionally, while the majority of investments and payments of returns on CryptoFX contracts were made in cash, many investors paid and were paid in cryptocurrency. The current investigation of the available cryptocurrency transactions conducted by BlockTrace has revealed that even though Defendants raised over $300 million in investor funds, their profit from cryptocurrency trading was minimal and woefully insufficient to pay the promised 15% monthly returns as well as the commissions and bonuses to sponsors/leaders.

4.     In addition to Ponzi payments, commissions and bonuses paid to sponsors, the records further show that investor funds were improperly diverted.

## II.     INTRODUCTION

5.     The Receiver filed his First Interim Report on November 28, 2022 (Doc. No. 33), his Second Interim Status Report on January 31, 2023 (Doc No. 50), his Third Interim Status Report on May 1, 2023 (Doc. No. 72), his Fourth Interim Status Report on October 31, 2023 (Doc. No. 95), his Fifth Interim Status Report on January 30, 2024 (Doc. No. 116), his Sixth Interim Status Report on April 30, 2024 (Doc. No. 117), his Seventh Interim Status Report

**RECEIVER'S ELEVENTH INTERIM STATUS REPORT**

on July 30, 2024 (Doc. No. 122), his Eighth Interim Status Report on October 31, 2024, his Ninth Interim Status Report on January 30, 2025 (Doc. No. 134), and his Tenth Interim Status Report on April 30, 2025 (Doc. No. 136). This Eleventh Interim Status Report is being submitted in accordance with the Receivership Order ¶ 52-53. The Receiver's prior Status Reports and the exhibits referenced in them are available for all investors on the Receiver's website at https://cryptofxreceiver.com/case-documents.aspx. This Report covers the period between April 1, 2025 to June 30, 2025.

6.      This Report is based upon the continued investigation of the case conducted by the Receiver and his team, which has included motion practice; sale of receivership assets, both real and personal property; listing of additional personal property for sale; witness deposition and interviews; collection of documents from CryptoFX leaders and former employees; forensic analysis of financial records, including cryptocurrency records; review of CryptoFX documents maintained by the Defendants and obtained from investors, employees, sales agents, and third parties; inspection of Chavez's apartment and other residences; communications with investors; and monitoring of media coverage of this case.

7.      This Report includes (a) a general summary of the work completed by the Receiver and his team since the Eighth Interim Report; (b) cash on hand and estimated accrued expenses as well as a schedule of receipts and disbursements; (c) description of all known receivership property; (d) description of liquidated and unliquidated claims; (e) list of all known creditors; and (f) Receiver's proposed plan for administering the Receivership.

8.      The Receiver will provide further quarterly reports as provided for in the Receivership Order. *Id*. at ¶¶ 52-53.

**RECEIVER'S ELEVENTH INTERIM STATUS REPORT**

### III.    SUMMARY OF RECEIVERSHIP OPERATIONS

9.    During the period covered by this Report, the Receiver and his team continued to analyze CryptoFX business documents, to the extent available (both paper and electronically stored) as well as documents produced by CryptoFX employees, sales agents, cryptocurrency platforms or exchanges, financial institutions, title companies, and other third parties.

10.    As stated in the Receiver's First Status Report, the Receiver has uncovered forensic evidence indicating that the Defendants raised over $300 million from over 40,000 investors from several states.  *See* Analysis by Gregory Hays, attached as Exhibit A to Receiver First Interim Report (Doc. No. 33).

11.    During the relevant time period, the Receiver has increased its focus on the claims process and expected wind-down of the estate.

12.    Further, the Receiver previously obtained access to the CryptoFX Salesforce account, a customer management platform used by CryptoFX to record investor data, including amounts invested and paid out to investors.  This information is critical in determining the amount of Ponzi payments made to investors and the commissions paid to sponsors. The Receiver continues to analyze this data for both the total amount of the fraudulent scheme conducted by the entities and individuals, in addition to the proper amounts to be claim against various sales agents/sponsors/leaders who were unlawfully obtaining funds from victims.

13.    Early in this case The Receiver was informed by investors that certain CryptoFX leaders were continuing to communicate with investors on behalf of CryptoFX, promising payments on investor contracts and also misleading investors about filing a complaint with the Receiver and SEC.  The Receiver continues to receive reports that principal leaders of CryptoFX may be engaged in further fraudulent activity.

**RECEIVER'S ELEVENTH INTERIM STATUS REPORT**

14.     The Receivership Team continues to engage and interact with victims in the community regarding their losses and has tracked over 4,000 inquiries from various individuals to date.  Receiver plans to use these inquiries as the basis of the victim's claims database as he begins to activate the claims administration portal in this case.

15.     In addition to some of the devices seized from the CryptoFX offices, the Receiver has imaged an additional laptop turned over by a former CryptoFX employee.  An updated list of the CryptoFX electronic devices the Receiver has seized was included as Exhibit A to its Third Interim Status Report (Doc. No. 72).   *See* List of devices seized by the Receiver from the CryptoFX Blalock office attached as Exhibit C to Receiver's First Interim Report (Doc. No. 33). The Receiver has also obtained the right to access information from the CFX Google Drive where documents and records were stored and Chavez's other electronic devices through the partial granting of its motion to compel.

16.     On January 20, 2023, the Receiver filed his Liquidation Plan.  (Doc. No. 47).

17.     The Receiver had previously retained Mark Dimas Properties, a real estate broker, to assist with the marketing and sale of Receivership real estate assets.  During the relevant period, the Receiver has relied on Mark Dimas Properties for the marketing and sale of a property consisting of 25.1320 acres located on Mack Washington Rd., Hempstead, Texas, 77445 ("Mack Washington Property").  The Receiver filed a Motion to Approve the Sale of the Mack Washington Property on November 3, 2023 (Doc. No 97), which was granted by the Court on November 8, 2023 (Doc. No. 98).  Receiver's sale of the Mack Washington property netted $1,027,280.34 to the receivership estate.

18.     The Receiver employed Webster's Auctions, a professional appraiser/auctioneer, to conduct an inventory of the personal property at Defendant Chavez's

**RECEIVER'S ELEVENTH INTERIM STATUS REPORT**

residence and the sale of certain receivership personal property.  On January 5, 2023, the Receiver, together with undersigned counsel, counsel for Chavez, and Webster Auctions, inspected Chavez's residence. An inventory of the items found at Chavez's residence was prepared by Webster's Auctions. Webster's Auction has liquidated the personal property items and provided an accounting for the Receivership Team.

19.     The Receiver and his team have continued to maintain and regularly update the Receiver's website (http://cryptofxreceiver.com/) with new court filings, media coverage, and other information pertinent to this case.  The information, where possible, is provided in both English and Spanish.  In addition, the website provides answers to frequently asked questions and access to the complete court docket with no PACER charges.  The Receiver and his team are also working with KCC to optimize the website with key words for easier Google search by "investors" and others.  The Receivership Team received notice of potential scams by individuals who are contacting victims and misleading the victims into spending more money to recover lost funds. The Receivership Team has included a warning on its website of such scams.

20.     The Receiver's team also continues to monitor the Receiver's dedicated email and phone number, both of which are posted on the Receiver's website, for "investors"/victims to contact the Receiver and his team.  As of the filing of this Report, the Receiver's team has received approximately 3,500 calls and emails from investors. These inquiries will also provide a foundation for Receiver's victims claim database as Receiver shifts focus to claims solicitation, review and ultimately distribution of claims dividends from funds recovered by Receiver.

21.     The Receiver's team continues to monitor the media coverage of this case, and

**RECEIVER'S ELEVENTH INTERIM STATUS REPORT**

links to news articles discussing this case have been posted on the Receiver's website as well. Currently, there are fourteen links to news articles and TV stories on the Receiver's website.

22.     Additional work performed by the Receiver and his team since the filing of the Tenth Interim Report includes:

    a.  Development of a claims submission process through an interactive digital portal which allows investors to submit their claim along with supporting documents and verifications in a manner in which they can be hopefully be cross referenced with the data the Receiver currently has on hand for victims.

    b.  Regular communication with vendor for purposes of developing claims submission portal and process.

    c.  Regular interface with various authorities regarding their investigations of the fraudulent conduct that occurred here.

    d.  Negotiations with SEC regarding resolution of claims from SEC against Receivership entities.

    e.  Analyzing remaining personal property on hand for developing plan of liquidation.

    f.  Assisting SEC with investigating, pursuing, and resolving claims against individuals.

    g.  Working up motion for deployment of claims portal.

    h.  Regular communication with victims regarding their claims, supporting documentation and path forward for submitting same.

23.     As a result of these and other activities, the Receiver and his team believe that they have gained a good understanding of the facts and issues that will be most critical to the efficient and effective administration of this Receivership.

## IV.     CASH ON HAND AND ESTIMATED ACCRUED ADMINISTRATIVE EXPENSES

24.     On June 30, 2025, the Receivership Estate had the following cash on hand: $3,242,223.43 deposited in four trust accounts named for each of the Defendants as of the end of the Application Period (June 30, 2025). These funds were received by (i) taking

**RECEIVER'S ELEVENTH INTERIM STATUS REPORT**

possession of cash located at the Defendants' office located at 1124 Blalock, Houston, Texas 77055 ($53,346); (ii) taking possession of safes located at the Defendants' office ($392,765); (iii) taking possession of First Community Credit Union bank accounts owned by Benvenuto ($451,448); (iv) taking possession of Bank of America bank accounts owned by Benvenuto ($21,325); (v) taking possession of a Simmons bank account owned by Benvenuto ($80,764); (vi) taking possession of a Simmons bank account owned by CBT ($247,916); (vii) taking possession of a Regions bank account owned by Chavez ($782); (viii) proceeds from liquidating Coinbase, Inc. account ($982,924); (ix) proceeds from liquidating Blockchain.com account ($1,161,141); (x) taking possession of the balance of a retainer from Burford Perry LLC ($155,631); (xx) taking possession of the balance of retainers from Gerger Hennessy & Martin LLP ($214,488); (xxi) taking possession of the balance of retainers from Jones Walker LLP ($102,229); (xxii) taking possession of CryptoFX funds turned over by Defendant Mauricio Chavez ($55,000); (xxiii) proceeds from liquidating real property at 0 Hogan Lane ($64,758); (xxiv) proceeds from liquidating televisions ($3,040); (xxv) proceeds from liquidating bitcoin from an exodus wallet ($86,915); (xxvi) net sale proceeds from sale of real property at 28 Lawrence Marshall Dr. ($65,027); (xxvii) proceeds from liquidating 2020 Volkswagen Tiguan owned by Angelica Vargas ($16,695); (xxix) proceeds from liquidating 2021 Mercedes-Benz GLE AMG owned by Angelica Vargas ($63,568); (xxx) net auction proceeds from personal property turned over by Defendant Mauricio Chavez ($9,267); (xl) proceeds from liquidating real property at 0 Mack Washington ($1,027,280.34). *See* Schedule of Receipts and Disbursements, attached as **Exhibit A**.

25.     All four Receivership trust accounts are held with Webster Bank, N.A., a wholly- owned subsidiary of Farrington Place Corporation, Webster Investment Services, Inc.,

Webster Mortgage Investment Corporation, MyWebster, Inc., Webster Community Development Corporation, Webster Capital Finance, Inc., Webster Business Credit Corporation, Webster Growth Capital Corporation, Webster Mortgage Company, and Webster Massachusetts Security Corporation. The four trust accounts were previously held with Flagstar Bank, N.A. All Receivership deposits are fully insured by the FDIC and the full faith and credit of the U.S. government up to $250,000 and are fully collateralized and insured by a separate surety bond through the Receiver's banking vendor for any amounts above $250,000. Additionally, Webster continues to be an approved depository by the U.S. Trustee in bankruptcy cases.

26.    Other Assets: In addition to the cash on hand listed above, the Receiver has on hand the following assets listed below. *See also* List of Receivership Liquidated and Unliquidated Assets, attached as **Exhibit B**.

| Asset | Estimated Amount/Value |
|---|---|
| Various Laptops and desktop computers | $5,000 |
| CFX furniture and fixtures | $2,000 |
| Benvenuto Holdings frozen bank accounts at First Community Credit Union | $110,702 |

27.    The Receiver is working to develop a distribution plan subject to the court's approval.

28.    During the relevant period covered by this Report, the Receivership Estate has incurred administrative expenses in the amount of $6,790.16 as a result of the efforts to marshal and preserve the assets of the Receivership.

29.    The Receiver and the professionals working with him are well aware that the

fees and expenses associated with the administration of the Receivership are paid from the assets of the Receivership Estate. The goal of all involved professionals is to conclude this Receivership as quickly and efficiently as can be reasonably accomplished thereby maximizing recovery to victims.

30.     For the period April 1, 2025 to June 30, 2025, the unbilled professional fees incurred are as follows: $2,467.50 John Lewis, Jr.; $12,960.00 Shook, Hardy & Bacon L.L.P. ("SHB"); and $4,837.10 Hays Financial Consulting, LLC. Further, The Receiver's fees listed above were reduced by $2,205 and SHB's professional fees listed above were reduced by $4,927.50. These figures reflect the services for which the receivership team did not charge for services.

31.   As provided for in the Receivership Order, the Receiver and the professionals working with him will apply to the Court for approval to pay professional fees and expenses.

## V.     SCHEDULE OF RECEIPTS AND DISBURSEMENTS

32.     As of the filing of this Report, no disbursements to "investors"/victims or creditors have taken place. For a more detailed description of Receivership receipts, *see* supra, Section IV,¶ 29.

## VI.     DESCRIPTION OF ALL KNOWN RECEIVERSHIP PROPERTY

33.     The Receiver estimates a total of $11,610,937 in known liquidated and unliquidated Receivership assets. For a more detailed description of currently known Receivership property and corresponding approximate value, *see* supra, Section IV, ¶¶ 29, 30-32.

## VII.    DESCRIPTION OF LIQUIDATED AND UNLIQUIDATED CLAIMS

34.    This Ponzi scheme was primarily a cash-based scheme, and it is going to require significant resources to unravel the claims of the Receivership estate.  A review of the available records indicates that the majority of the investments were paid in cash.

## VIII.    LIST OF ALL KNOWN CREDITORS

35.    The only known commercial creditor is BZO Custom Wheels, LLC, the landlord of the CryptoFX's offices on Blalock ("Landlord").  Landlord has an unliquidated claim for approximately $20,239.18 against the Receivership estate, which includes rent and utility bills.

The Receiver and his team negotiated the sale of certain Receivership personal property at Blalock to set off Landlord's claim, bringing the final settlement amount to $17,209.18. The Receiver's team also negotiated and the Landlord agreed to terminate the lease on October 31, 2022, although the Receiver vacated the premises of the Blalock office on December 7, 2022.

36.    The Receiver is not aware of other commercial creditors at this stage.

## IX.    RECEIVER'S PROPOSED PLAN FOR ADMINISTERING THE RECEIVERSHIP

37.    The Receiver recommends the continuation of the Receivership.

38.    The Receiver's key focus for the next 90 days will be on the following tasks:

- Continue refining internal website where electronic claims forms will be accepted from investors.

- Continue developing electronic claim form for investors.

- Continue establishing claims submission and claims allowance processes.

- Coordinate as necessary with government agencies.

- Strategy for winding down and closure of estate.

39.    In addition, the Receiver and his counsel will continue to determine whether there are claims against third parties that could result in meaningful recovery to the Receivership Estate.

40.    Further, the Receiver and his team will continue to conduct a factual and legal analysis of issues that could affect whether tracing should be applied to certain investments. Based on the information and documents reviewed to date with an estimated 40,000 investors and over $300 million in investments, the majority of which is in cash, some payments in cryptocurrency, and others in money orders, a complete tracing of investments may not be possible and/or practicable.

**RECEIVER'S ELEVENTH INTERIM STATUS REPORT**

41.     In addition to analyzing the sources and uses of cash, the Receiver and his team will continue to analyze transactions through the Defendants' cryptocurrency and bank accounts. The Receiver is in possession of transaction reports from Coinbase, Blockchain.com, Binance, Exodus, and Block, Inc., which appear to be the primary cryptocurrency platforms used by the Defendants and leaders, as well as the Defendants' bank account records.

42.     To date, the Receiver has not located a set of books and records that tracked CryptoFX's cash, banking, investments and investor activity. Upon information and belief, Receiver is not convinced that any such books and records exist. Instead, the transactions are scattered among various reports, which must be analyzed by the Receiver's team and compiled to complete the Receiver's analysis. If the Receiver is unable to locate a set of books or transaction ledgers, the funds tracing analysis may be a lengthy manual process.

43.     At this stage, it is difficult to predict how long it will take for the Receiver to complete his work. As the Receivership moves forward, the Receiver and his team will continue their efforts to most efficiently recover and realize the value of assets for the benefit of the Receivership Estate while simultaneously continuing to position the case for claims and closing procedures.

Dated: July 31, 2025                          Respectfully submitted,

                                             SHOOK, HARDY & BACON L.L.P.

                                             By: */s/ Poston E. Pritchett*
                                                 Poston E. Pritchett
                                                 Texas Bar No. 24088258
                                                 2555 Grand Blvd.
                                                 Kansas City, MO 64108
                                                 Telephone: 816.474-6550
                                                 Facsimile: 816.421.5547
                                                 ppritchett@shb.com

**RECEIVER'S ELEVENTH INTERIM STATUS REPORT**

By: */s/ Megan J. Mitchell*
Megan J. Mitchell
Texas Bar No. 24108103
S.D. Tex. Bar No. 3435473
2555 Grand Blvd.
Kansas City, MO 64108
Telephone:  816.474-6550
Facsimile:  816.421.5547
mjmitchell@shb.com

**Counsel for John Lewis, Jr.**
**Court-Appointed Receiver**

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2025, the above and foregoing document was filed electronically through the CM/ECF system, which sent notification of such filing to all known counsel of record, addressed as follows:

Matthew J. Gulde
UNITED STATES SECURITIES
AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX  76102
Telephone:   817.978.1410
Facsimile:   817.978.4927
guldem@sec.gov

***Attorney for Plaintiff***

Paul D. Flack
PRATT & FLACK, LLP
4306 Yoakum Blvd., Suite 500
Houston, TX 77006
Telephone: 713.705.3087
pflack@prattflack.com

***Counsel for Defendant Mauricio Chavez***
Dan L. Cogdell
COGDELL LAW FIRM, PLLC
1000 Main Street, Suite 2300
Houston, TX  77002
Telephone: 713.426.2244
Dan@cogdell-law.com
***Attorney for Defendant,***
***Giorgio Benvenuto***

*/s/ Poston E. Pritchett*
Poston E. Pritchett

**RECEIVER'S ELEVENTH INTERIM STATUS REPORT**