IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § § | |
| MAURICIO CHAVEZ, GIORGIO BENVENUTO and CryptoFX, LLC, | § § § | CIVIL ACTION NO. 4:22-CV-03359 JUDGE ANDREW S. HANEN |
| *Defendants.* | § § § | |
| CBT Group, LLC, | § § § | |
| *Relief Defendant.* | § | |

## RECEIVER'S MOTION FOR THE COURT TO APPROVE CLAIMS ADMINISTRATION PROCESS AND BRIEF IN SUPPORT THEREOF

John Lewis, Jr. ("Receiver"), the court-appointed Receiver for Mauricio Chavez ("Chavez"), Giorgio Benvenuto ("Benvenuto"), CryptoFX, LLC ("CFX") and CBT Group, LLC ("CBT"), pursuant to the Order Appointing Receiver ("Receivership Order"), files his Motion for the Court to Approve Claims Administration Process and Brief In Support Thereof, and respectfully shows the Court as follows:

### BACKGROUND

1.     John Lewis, Jr. ("The Receiver") was appointed by an Order of this Court on September 29, 2022 (the "Receivership Order"). The Receiver was tasked with collecting, protecting, and ultimately, distributing any assets related to CryptoFX.  The Receivership Order grants the Receiver broad authority over the organization, management, control and disposal of the

1
**RECEIVER'S MOTION FOR THE COURT TO APPROVE PLAN FOR CLAIMS
ADMINISTRATION AND DISTRIBUTION OF PROCEEDS**

assets of Chavez, Benvenuto, CryptoFX, and CBT Group (together "Receivership Defendants") including the properties owned by the Receivership Defendants (collective assets are referred to as the "Receiver Estate").

2.    As more fully described in the Receiver's Interim Reports filed with this Court, the Receiver has accomplished a substantial amount since his appointment.  Among other things, the Receiver has: (1) reviewed the records of the Receiver Estate; (2) taken control of and secured the value of the Receiver Estate, including $3.3 million in cash and 3 properties; (3) begun to plan for the disposition of the properties controlled by Receivership Defendants; and (4) investigated and initiated the pursuit of claims against third parties.

3.    As part of his duties, the Receiver is charged with determining the amounts invested in CryptoFX and filing a report with the Court regarding his activities and the estimated time it will take to distribute available assets and wind up the receivership.  To that end, the Receiver proposes providing investors the claim form attached hereto as **Exhibit 1**.

4.    To ensure the continuing efficient management of the Receiver Estate and in anticipation of potential interim distributions and the final distribution to investors, the Receiver now seeks approval of his proposed Plan for Claims Administration and Distribution of Proceeds.

### RECEIVER'S MOTION TO ESTABLISH CLAIMS BAR DATE
### AND BRIEF IN SUPPORT THEREOF

5.    The Receiver is charged with the task of determining the amounts invested by investors of CryptoFX and to file a report with the Court regarding his activities and to estimate the time it will take to distribute available assets and wind up the Receivership. In furtherance of this responsibility, the Receiver proposes furnishing each investor with an Investor Claim Form.

**RECEIVER'S MOTION FOR THE COURT TO APPROVE PLAN FOR CLAIMS
ADMINISTRATION AND DISTRIBUTION OF PROCEEDS**

*See* **Exhibit 1**.  Moreover, the Receiver proposes providing a copy of this claim form to the Receiver's website (http://cryptofxreceiver.com/).

6.      The Receiver Team proposes a period of six months to review the Investor Claims Forms.  Moreover, the Receiver believes that a final bar date must be established as the deadline for submitting claims (the "Bar Date") so that claims can be analyzed and distribution(s) made without uncertainty regarding the total liability of the Receiver Estate.

7.      Accordingly, the Receiver requests that the Court establish **January 25, 2026** as the final bar date – i.e., the date by which any investor seeking payment from the Receiver Estate must file a claim using the appropriate form as developed by the Receiver.

8.      Once the Court establishes the bar date, the Receiver will send notice of the bar date to all known investors and will post a similar notice on the Receiver's website. Any investor who fails to return the appropriate claim form by **January 25, 2026** may be barred from asserting a claim and may not be entitled to share in any returns or distributions made to investors by the Receiver in this case.

9.      Based upon the experience of the Receiver in these types of matters, the Receiver believes it is critically important to require investors to timely file claims.  The requirements requested herein are not unduly burdensome, but rather are necessary and common in these types of matters.  Without a firm deadline, the administration of this matter will likely be delayed, and those investors who timely return their forms and document their claims will be prejudiced by delays in payment.  Further, by requiring documents supporting the amounts claimed, the Receiver will discourage the filing of inflated claims and will reduce the time required to review the claims.

**RECEIVER'S MOTION FOR THE COURT TO APPROVE PLAN FOR CLAIMS
ADMINISTRATION AND DISTRIBUTION OF PROCEEDS**

10.    Finally, as evidenced by the signatures of their respective counsel below, the Plaintiff and the Defendants have no opposition to the Motion and hereby consent to the entry of an order establishing **January 25, 2026** as the bar date.

### FACTS RELEVANT TO CLAIMS ADMINISTRATION AND DISTRIBUTION

11.    From February 2020 through August 2022, Defendants purported to sell investments to unsophisticated investors with no previous knowledge of the crypto asset markets into CryptoFX. During its operation, CryptoFX raised over $300 million from more than 40,000 investors.

### I.    CryptoFX's Business – The Representations

12.    As alleged in the complaint, February of 2020, Chavez created CryptoFX although he had no prior knowledge, experience, or education in securities trading or investments in crypto assets. (Complaint). Chavez stated his goal was to educate the Latino community about Crypto assets. Chavez represented to investors that he was a crypto asset expert with many years of cryptocurrency trading experience. *Id*.  In the beginning, CryptoFX offered classes on trading crypto assets but Chavez later used the students to solicit investments into his own business. *Id*. The CryptoFX's website claimed the classes would be taught by "industry practitioners with over 20 years of experience combined." *Id.*

13.    Chavez presented Venture Agreements to the students and also accepted funds from those who sought for CryptoFX to make crypto trades on their behalf. *Id*.  The agreements were recorded and included the amount of investments and schedule for repayments to investors. *Id*. Chavez reviewed, approved, and drafted the Venture agreements. *Id*.  The Venture Agreements were not uniform as they varied over the investors who signed up. *Id*.  The agreements were written

in English despite the solicitations and conversations that were had with the investors were in Spanish. *Id*.

14.     Venture Agreements issued by CryptoFX around May of 2020, claim that an investor "WILL BE RECEIVING REWARD FOR MY CONTRIBUTION IN THE FORM OF BITCOIN" with options of payments every one, three, six, or twelve months. *Id*.  The Venture Agreements also included a guarantee which state: "IN THE EVENT THAT CRYPTOFX, LLC LOSES THE MONEY OR CANNOT CONTINUE TO FULFILL PAYMENTS, CRYPTOFX, LLC AGREES TO REPAY TOTAL PRINICPAL AMOUNT CONTRIBUTED IN A PERIOD OF NO LATER THEN 24 – 36 MONTHS WHICH BOTH PARTIES HAVE AGREED TO BE SETTLED OUTSIDE OF ANY COURTS." *Id*. Further, around May of 2021, Venture Agreements state that "WE ARE TAKING YOUR MONEY AND INVESTING IT ON OUR BEHALF. IF WE RECEVIED ENOUGH RETURN ON CRYTPO CURRENCY, WE WILL REPAY THE STUDENT A PORTION OF THE TOTAL TUTION." *Id*.  The payments made by investors into CryptoFX were primarily in cash while other forms of payments were through crypto assets.

15.     In order to raise more money from investors, CryptoFX created a referral program where existing investors received 7% of any referral they made to new investors. *Id*.  Additionally, the existing investors would receive 3% of any future investments that the new investor made. *Id*. With intentions on gaining new investors, CryptoFx hosted seminars across the country including Houston, New Orleans, Chicago, Waco, Fort Worth, North Carolina, and California. *Id*.  During the seminars, existing investors would give testimonies regarding the money they had made from CryptoFX and encouraged attendees to invest in CryptoFX. *Id*.  In August of 2022, Chavez made representations to potential investors stating that CryptoFX "made over five millionaires in the last

**RECEIVER'S MOTION FOR THE COURT TO APPROVE PLAN FOR CLAIMS
ADMINISTRATION AND DISTRIBUTION OF PROCEEDS**

year." Additionally, CryptoFX utilized a PowerPoint presentation to solicit investors in classes that included a table of potential earning that showed investors earning back half of their investments in profits in three months and 90% in six months. *Id*.

## II.    CryptoFX's Business – The Reality

16.    CryptoFX's business, in practice, differed from CryptoFX's business as represented. Chavez nor his colleagues had formal training or education in securities trading or investments. Additionally, they were not experts in the field of cryptocurrency. The CryptoFX website misled investors when it stated that the classes being offered and taught by "industry practitioners with over 20 years of experience combined." The Venture Agreements given to investors stating that the money invested on CryptoFX's misrepresented what as actually happening. The majority of the funds invested by investors went to purposes unrelated to crypto asset investments such as real estate, personal expenses, and Ponzi payments. Chavez created Venture Agreements with covenants guaranteeing investors that they would receive repayment of their total principal amount invested within the last 2-3 years, but Chavez knew that the actual crypto asset investment proceeds were insufficient to fulfill said promise.

17.    The Defendants represented that CryptoFX investor funds would be used to conduct crypto assets and foreign exchange trading. *Id*. The current investigation of the available cryptocurrency transactions conducted by BlockTrace has revealed that even though Defendants raised over $300 million in investor funds, their profit from cryptocurrency trading was minimal and woefully insufficient to pay the promised 15% monthly returns as well as the commissions and bonuses to sponsors/leaders. The Defendants misrepresented to investors that the funds would primarily be used for personal expenses and Ponzi scheme payments. Furthermore, the individual

**RECEIVER'S MOTION FOR THE COURT TO APPROVE PLAN FOR CLAIMS ADMINISTRATION AND DISTRIBUTION OF PROCEEDS**

defendants have conceded the factual basis of the fraud in their bifurcated settlements with the SEC.

18.    In sum, despite the numerous CryptoFX Partnerships and Other Investments, CryptoFX was a single investment scheme, and all funds from all investors – regardless of the type of investments made and the amount of the investments – were, for all intents and purposes, pooled together for fraudulent use by CryptoFX and its principals.    In running its business, CryptoFX generally did not take into account the form of the investments or the structure of the CryptoFX Partnerships.    All funds were commingled in the CryptoFX Accounts.    Other than being parties to the Related Party Transactions, the CryptoFX Partnerships were simply a mechanism to obtain investments.

### III.    CryptoFX's Assets

19.    A significant amount of the investment money received by CryptoFX was spent on CryptoFX's business operations, used for the personal benefit of Mr. Chavez and Mr. Benvenuto and others, or otherwise spent prior to the initiation of this action.    The Receiver, however, successfully recovered and gained control over a variety of assets on behalf of the Receiver Estate. As a result of the Receivership Order's asset freeze, approximately $3.2 million in cash is currently available from accounts maintained and controlled by CryptoFX and liquidation of CryptoFX assets.    In addition, the Receiver has taken custody and control of a variety of personal property, including vehicles, furniture, equipment and other assets belonging to the Receiver Estate.    The Receiver has sold many of these assets and continues the process of liquidating remaining assets.

20.    Based on the value of the assets currently maintained by the Receiver, the Receiver anticipates being in a position to make a final distribution to the victims submitting claims.

**RECEIVER'S MOTION FOR THE COURT TO APPROVE PLAN FOR CLAIMS
ADMINISTRATION AND DISTRIBUTION OF PROCEEDS**

Because the Receiver continues to pursue the recovery of additional assets, and does not at this time know when all assets will have been recovered, such interim distributions will greatly benefit investors whose claims are approved.

## IV.    ARGUMENT AND AUTHORITIES

21.    As set forth in more detail in the Plan for Claims Administration and Distribution of Proceeds (the "Plan"), the Receiver has proposed a process to administer claims and to distribute funds to investors based on approved claims.    The legal basis and rationale for the Receiver's proposed Plan are addressed below.

### I.    Claims Administration

#### a.  Process

22.    The claims administration process in this receivership is upcoming. Upon approval of the Investor Claims Form by this Court, the Receiver will provide to all known investors an Investor Claim Form.  This form will also be available on the Receiver's website within seven (7) days of approval by this Court.  The Receiver proposes that this Court order all Investor Claims Forms be received by **January 25, 2026** (the "Bar Date").   Upon approval of the Bar Date by the Court, the Receiver will send notice of the Bar Date to all known investors and post the Bar Date on his website.

23.    When the Receiver completes his claims analysis, he will provide claimants with notice of and opportunity to contest the Receiver's determination.    Upon the resolution of all disputed claims, the Receiver will provide this Court with a definitive list of approved claims and will make a recommendation to the Court as to the timing and manner of the distributions of funds on the approved claims.

**RECEIVER'S MOTION FOR THE COURT TO APPROVE PLAN FOR CLAIMS
ADMINISTRATION AND DISTRIBUTION OF PROCEEDS**

24.     Approval at this time of the Investor Claim Form, the Bar Date, and the Plan will promote the speedy and efficient analysis of claims.

### b.  Use of Summary Proceedings to Resolve Disputed Claims

25.     The Receiver proposes the use of summary proceedings to adjudicate any disputed Claims that require the attention of the Court.     The decision to use summary proceedings to determine appropriate relief is within the jurisdiction of the Court.  *SEC v. Basic Energy and Affiliated Resources, Inc.* (273 F.3d 657, 668 (6th Cir. 2001); *SEC v. Elliot,* 953 F.2d 1560, 1566 (11th Cir. 1992).

26.     The use of summary proceedings furthers a receivership's primary purpose to promote the orderly and efficient administration of the estate for the benefit of investors.  *See, e.g., SEC v. Hardy*, 803 F.2d 1034, 1037-40 (9th Cir. 1986).   Summary proceedings enable a receiver to consolidate all litigation concerning the receivership in a single district court and before a single district judge, and avoid the formalities of plenary proceedings that would slow down the resolution of disputes.  *Id.*   Moreover, summary proceedings reduce litigation costs, and in turn, preserve a greater amount of the receivership assets for distribution.  *Id.*

27.     Summary proceedings provide parties with notice and a meaningful opportunity to be heard, but require an evidentiary hearing only if there are disputed issues of fact.  *See Codd v. Velger*, 429 U.S. 624 (1977) (*per curiam*); *Elliot*, 953 F.2d at 1567.   Such proceedings are appropriate in receiverships and may be used to allow, disallow and subordinate the claims of investors.  *See Hardy,* 803 F.2d at 1040.

28.     Summary proceedings are particularly appropriate in this case.  Because CryptoFX operated one large investment scheme and treated all investors equally, there are unlikely to be

any complex factual disputes in the claims administration process.   The Receiver anticipates that disputed Claims, if any, will primarily involve simple fact questions regarding the net loss of particular investors, and that most of these disputes will be resolved without the intervention of the Court.   In the event there are disputed Claims that require the attention of the Court, summary proceedings will enable to Receiver to continue with the efficient management of the Receiver Estate.

## II.   Distribution

### a.   Single Pool of Assets

29.   The Receiver's Plan aggregates all of the Defendants' assets into one pool.   As the Supreme Court noted in the original Ponzi case, receiverships involving Ponzi schemes "call strongly for the principle that equality is equity."   *Cunningham v. Brown*, 265 U.S. 1, 13 (1924). Aggregation of assets into a single pool is particularly appropriate in receiverships involving a single Ponzi scheme that included numerous investors in multiple related investment programs. *See, e.g., SEC v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 660-61, 670-71 (6th Cir. 2001).

30.   Here, CryptoFX operated its business as one Ponzi scheme.   Returns to early CryptoFX investors were paid from investment funds contributed by later CryptoFX investors.   In operating its Ponzi scheme, CryptoFX disregarded the structure of the Venture Agreements.   The Venture Agreements were merely the mechanism by which CryptoFX obtained investments in its scheme.   CryptoFX commingled funds from all investors in the CryptoFX Accounts.   CryptoFX made no material distinction between investors in different CryptoFX Partnerships and the Other Investments, and there is no basis for making such a distinction for purposes of distribution. Moreover, all investors who suffered a net loss are similarly situated.   Accordingly, aggregation

**RECEIVER'S MOTION FOR THE COURT TO APPROVE PLAN FOR CLAIMS
ADMINISTRATION AND DISTRIBUTION OF PROCEEDS**

of the Defendants' assets into a single pool against which all Claims will be made provides for the fairest method of claims administration and distribution.

### b. Final Distributions

31.    Once the administration of claims has been completed, and the amount of all approved Claims has been determined, the Receiver intends to make one or more interim distributions prior to the final distribution.    Once all assets of the Receiver Estate have been collected, and all claims by the Receiver Estate against third parties have been resolved, the Receiver intends to make a final distribution on each approved Claim.   The amount of money paid on each Claim in a particular interim distribution and in the final distribution will be based on the Court approved classification and amount of the Claim.

### CONCLUSION

WHEREFORE, John Lewis Jr., Receiver, respectfully requests that the Court review and approve the Plan for Claims Administration and Distribution of Proceeds.

**RECEIVER'S MOTION FOR THE COURT TO APPROVE PLAN FOR CLAIMS ADMINISTRATION AND DISTRIBUTION OF PROCEEDS**

Dated:  August 15, 2025             Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By:  */s/ Poston E. Pritchett*
     Poston E. Pritchett
     Texas Bar No. 24088258
     SHOOK, HARDY & BACON L.L.P.
     2555 Grand Blvd.
     Kansas City, MO 64108
     Telephone:  816.474-6550
     ppritchett@shb.com

     Megan J. Mitchell
     Texas Bar No. 24108103
     S.D. Tex. Bar No. 3435473
     mjmitchell@shb.com

     ***Counsel for John Lewis, Jr.***
     ***Court-Appointed Receiver***

**RECEIVER'S MOTION FOR THE COURT TO APPROVE PLAN FOR CLAIMS
ADMINISTRATION AND DISTRIBUTION OF PROCEEDS**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that he has conferred with counsel for Plaintiff United States Securities and Exchange Commission ("SEC"), and the SEC does not oppose this Motion and supports granting the relief requested herein.

/s/ *Poston E. Pritchett*
Poston E. Pritchett

**RECEIVER'S MOTION FOR THE COURT TO APPROVE PLAN FOR CLAIMS ADMINISTRATION AND DISTRIBUTION OF PROCEEDS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of August, 2025, the above and foregoing document was filed electronically through the CM/ECF system, which sent notification of such filing to all known counsel of record.

Matthew J. Gulde
UNITED STATES SECURITIES
AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX  76102
Telephone:  817.978.1410
Facsimile:  817.978.4927
guldem@sec.gov

***Counsel for Plaintiff***
***U.S. Securities and Exchange Commission***

Paul D. Flack
PRATT & FLACK, LLP
4306 Yoakum Blvd., Suite 500
Houston, TX  77006
Telephone:  713.705.3087
pflack@prattflack.como

***Counsel for Defendant Mauricio Chavez***

Dan L. Cogdell
COGDELL LAW FIRM, PLLC
1000 Main Street, Suite 2300
Houston, TX  77002
Telephone:  713.437.1869
Facsimile:   713.437.1810
dan@cogdell-law.com

***Counsel for Defendant Giorgio Benvenuto***

/s/ Poston E. Pritchett
Poston E. Pritchett

**RECEIVER'S MOTION FOR THE COURT TO APPROVE PLAN FOR CLAIMS
ADMINISTRATION AND DISTRIBUTION OF PROCEEDS**