IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>*Plaintiff,*<br><br>vs.<br><br>MAURICIO CHAVEZ, GIORGIO BENVENUTO and CRYPTOFX, LLC,<br>*Defendants.*<br><br>CBT GROUP, LLC,<br>*Relief Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4:22-CV-03359<br>JUDGE ANDREW S. HANEN |

**<u>RECEIVER'S SIXTEENTH INTERIM STATUS REPORT</u>**

John Lewis, Jr. ("Receiver"), the court-appointed Receiver for Mauricio Chavez ("Chavez"), Giorgio Benvenuto ("Benvenuto"), CryptoFX, LLC ("CryptoFX") and CBT Group, LLC ("CBT"), pursuant to the Order Appointing Receiver ("Receivership Order") (Doc. No. 11) files his Sixteenth Interim Status Report ("Report"), showing the Court as follows:

## I. EXECUTIVE SUMMARY

1. In approximately ninety days since the filing of the Fifteenth Interim Report, the Receiver and his team have continued to investigate the case, paying particular attention to the review of claims submitted under the Distribution Plan approved by the Court on April 1, 2026. All the foregoing continues to involve the review of company records, including Salesforce data; forensic analysis of financial

records, including cryptocurrency transactions, and third-party records; analysis of receivership assets; maintaining and updating the Receiver's website; and monitoring media coverage of this case.

2. It is clear from deposition testimony, interviews with former employees, leaders, investors, and from the company documents, financial records and cryptocurrency records analyzed by Receiver's Accountants, Hays Financial Consulting, LLC ("Hays"), and BlockTrace, the third party engaged by the Receiver to assist with cryptocurrency transaction tracing, that Defendants were operating a Ponzi scheme, where previous investors were paid with funds collected from newer investors. The Salesforce data and other records obtained by the Receiver show that CryptoFX raised over $300 million from over 40,000 investors from around the world.

3. Additionally, while the majority of investments and payments of returns on CryptoFX contracts were made in cash, many investors paid and were paid in cryptocurrency. The current investigation of the available cryptocurrency transactions conducted by BlockTrace has revealed that even though Defendants raised over $300 million in investor funds, their profit from cryptocurrency trading was minimal and woefully insufficient to pay the promised 15% monthly returns as well as the commissions and bonuses to sponsors/leaders.

4. In addition to Ponzi payments, commissions and bonuses paid to sponsors, the records further show that investor funds were improperly diverted.

## II. INTRODUCTION

5. The Receiver filed his First Interim Report on November 28, 2022 (Doc. No. 33), his Second Interim Status Report on January 31, 2023 (Doc. No. 50), his Third Interim Status Report on May 1, 2023 (Doc. No. 72), his Fourth Interim Status Report on October 31, 2023 (Doc. No. 95), his Fifth Interim Status Report on January 30, 2024 (Doc. No. 110), his Sixth Interim Status Report on April 30, 2024 (Doc. No. 117), his Seventh Interim Status Report on July 30, 2024 (Doc. No. 122), his Eighth Interim Status Report on October 31, 2024 (Doc. No. 126), his Ninth Interim Status Report on January 30, 2025 (Doc. No. 134), his Tenth Interim Status Report on April 30, 2025 (Doc. No. 136), his Eleventh Interim Status Report on July 31, 2025 (Doc. No. 140), his Twelfth Interim Status Report on October 31, 2025 (Doc. No. 150), his Thirteenth Interim Status Report on January 30, 2026 (Doc. No. 156), his Fourteenth Interim Status Report on April 30, 2026 (Doc. No. 164), and his Fifteenth Interim Status Report on July 31, 2026 (Doc. No. 166). This Sixteenth Interim Status Report is being submitted in accordance with the Receivership Order ¶¶ 52-53. The Receiver's prior Status Reports and the exhibits referenced in them are available for all investors on the Receiver's website at https://cryptofxreceiver.com/case-documents.aspx. This Report covers the period between July 1, 2026 to September 30, 2026.

6. This Report is based upon the continued investigation of the case conducted by the Receiver and his team, which has included motion practice; sale of receivership assets, both real and personal property; listing of additional personal

property for sale; witness deposition and interviews; collection of documents from CryptoFX leaders and former employees; forensic analysis of financial records, including cryptocurrency records; review of CryptoFX documents maintained by the Defendants and obtained from investors, employees, sales agents, and third parties; inspection of Chavez's apartment and other residences; communications with investors; and monitoring of media coverage of this case.

7. This Report includes (a) a general summary of the work completed by the Receiver and his team since the Fifteenth Interim Report; (b) cash on hand and estimated accrued expenses as well as a schedule of receipts and disbursements; (c) description of all known receivership property; (d) description of liquidated and unliquidated claims; (e) list of all known creditors; and (f) Receiver's proposed plan for administering the Receivership.

8. The Receiver will provide quarterly reports as provided for in the Receivership Order. Id. at ¶¶ 52-53.

## III. SUMMARY OF RECEIVERSHIP OPERATIONS

9. During the period covered by this Report, the Receiver and his team continued to analyze CryptoFX business documents, to the extent available (both paper and electronically stored) as well as documents produced by CryptoFX employees, sales agents, cryptocurrency platforms or exchanges, financial institutions, title companies, and other third parties.

10. As stated in the Receiver's First Status Report, the Receiver has uncovered forensic evidence indicating that the Defendants raised over $300 million

from over 40,000 investors from several states. See Analysis by Gregory Hays, attached as Exhibit A to Receiver First Interim Report (Doc. No. 33).

11. During the relevant time period, the Receiver has increased its focus on the claims process and wind-down of the estate.

12. Further, the Receiver previously obtained access to the CryptoFX Salesforce account, a customer management platform used by CryptoFX to record investor data, including amounts invested and paid out to investors. This information is critical in determining the amount of Ponzi payments made to investors and the commissions paid to sponsors. The Receiver continues to analyze this data for both the total amount of the fraudulent scheme conducted by the entities and individuals, in addition to the proper amounts to be claimed against various sales agents/sponsors/leaders who were unlawfully obtaining funds from victims.

13. Early in this case, the Receiver was informed by investors that certain CryptoFX leaders were continuing to communicate with investors on behalf of CryptoFX, promising payments on investor contracts and also misleading investors about filing a complaint with the Receiver and SEC. The Receiver continues to receive reports that principal leaders of CryptoFX may be engaged in further fraudulent activity.

14. On April 1, 2026, the Receiver filed his Distribution Plan which this Court approved the same day, and the Receivership team immediately began processing claims. (Doc. Nos. 159, 161). As of September 30, 2026, the Receivership team has completed its first audit of all 8,142 claims. Of those claims, 858 claims are

allowed as they meet all the requirements in the Court's approved Distribution Plan. Of the remaining 7,284 claims, most are being disallowed because of the following reasons:

| Number of claims | Reason Claim Not Allowed |
|---|---|
| 12 | Duplicate |
| 6,370 | No social security number or TIN |
| 312 | Submitted after bar date |
| 309 | No documentation of contract or agreement with CryptoFX |
| ~1,400 | Known bad actor[1] |

The other claims that are being disallowed are being disallowed because of miscellaneous reasons including but not limited to the name of the claimant not matching name on documentation of proof of claim. A second audit of the claims is underway and is expected to be completed within two weeks.

15. After completing the second audit of the claims, the Receivership team will send each claimant a Claim Determination Notice, which will state: (a) whether a claim was accepted or excluded; (b) the amount of any Allowed Claim;[2] (c) the calculation methodology used; and (d) instructions for submitting an objection to the Receiver's decision. Claimants will have 30 days from the date of their Claim Determination Notice to submit an objection to the Receiver's decision regarding their claim. All objections must: (a) be submitted in writing; (b) include supporting

[1] The "List of Bad Actors" identifies 1,347 individuals and entities who are not to be paid because they are associated with the CryptoFX Ponzi scheme. The list is made up of three groups. About 45 principals and/or scheme participants: named defendants in *SEC v. Chavez et al.* and *SEC v. Sanchez et al.*, along with leaders, managers, office staff, and people who were subpoenaed and invoked the Fifth Amendment. About 83 entries are known sales agents. About 1,218 entries are sponsors or related parties; most marked as a sponsor on the claimants CryptoFX contract who received a percentage of the claimant's investment, meaning they benefited from the Ponzi scheme.

[2] The amount of each claimant's distribution cannot be determined before the Claim Determination Notices are issued because distributions will be made on a pro rata basis and therefore cannot be calculated until the final pool of allowed claims has been determined.

documentation; and (c) fully and adequately explain the reasons for the objection to the Receiver's decision. The Receiver will review each objection and may, where appropriate: (a) revise his decision regarding the claim; (b) request additional documentation to further assess the objection; or (c) submit the objection to the Court for resolution.

16. The Receiver and his team have continued to maintain and regularly update the Receiver's website (http://cryptofxreceiver.com/) with new court filings, media coverage, and other information pertinent to this case. The information, where possible, is provided in both English and Spanish. In addition, the website provides answers to frequently asked questions and access to the complete court docket with no PACER charges. The Receiver and his team are also working with KCC to optimize the website with key words for easier Google search by "investors" and others. The Receivership Team received notice of potential scams by individuals who are contacting victims and misleading the victims into spending more money to recover lost funds. The Receivership Team has included a warning on its website of such scams.

17. The Receiver's team also continues to monitor the Receiver's dedicated email and phone number, both of which are posted on the Receiver's website, for "investors"/victims to contact the Receiver and his team. As of the filing of this Report, the Receiver's team has received more than 4,000 calls and emails from investors.

18. The Receiver's team continues to monitor the media coverage of this case, and links to news articles discussing this case have been posted on the

Receiver's website as well. Currently, there are fourteen links to news articles and TV stories on the Receiver's website.

19. Additional work performed by the Receiver and his team since the filing of the Fifteenth Interim Report includes:

a. Regular communication with vendors for purposes of managing claims submitted via portal.

b. Regular interface with various authorities regarding their investigations of the fraudulent conduct that occurred here.

c. Negotiations with SEC regarding resolution of claims from SEC against Receivership entities.

d. Assisting the SEC with investigating, pursuing, and resolving disgorgement claims against individual defendants, including providing accounting analyses requested by the SEC.

e. Evaluating with the SEC and Hays, the SEC's proposal that the Receiver administer a Fair Fund under Section 308(a) of the Sarbanes-Oxley Act in the related Sanchez case, including the integration of that fund with the claims administration in this case and the approvals required from the Sanchez court and this Court.

f. Regular communication with victims regarding their claims, supporting documentation and path forward for submitting same.

g. Assisting FBI with criminal prosecution and investigation of individuals.

h. Finalizing and filling the 2022 through 2025 federal and Texas tax returns for the CryptoFX Qualified Settlement Fund, and filing the 2025 tax return for the CBT Group, LLC

i. Developing and implementing the claims review process, including training non-billing claims reviewers and working with the claims vendor on technology-assisted tagging and categorization of claims into separate groups.

j. Researching whether claimants must provide a Social Security or taxpayer identification number before receiving a distribution.

k. Responding to requests to lift stay of ancillary CryptoFX litigation. Including in Illinois, to preserve this Court's exclusive jurisdiction over claims against the Receivership estate.

l. Disposing of the remaining physical items in storage in accordance with the Court's order.

m. Addressing a contract and billing dispute with Salesforce.

20. As a result of these and other activities, the Receiver and his team believe that they have gained a good understanding of the facts and issues that will be most critical to the efficient and effective administration of this Receivership.

## IV. CASH ON HAND AND ESTIMATED ACCRUED ADMINISTRATIVE EXPENSES

21. On September 30, 2026, the Receivership Estate had the following cash on hand: $3,028,587 deposited in four trust accounts named for each of the Defendants. These funds were received by (i) taking possession of cash located at the Defendants' office located at 1124 Blalock, Houston, Texas 77055 ($53,346); (ii) taking possession of safes located at the Defendants' office ($392,765); (iii) taking possession of First Community Credit Union bank accounts owned by Benvenuto ($451,448); (iv) taking possession of Bank of America bank accounts owned by Benvenuto ($21,325); (v) taking possession of a Simmons bank account owned by Benvenuto ($80,764); (vi) taking possession of a Simmons bank account owned by CBT ($247,916); (vii) taking possession of a Regions bank account owned by Chavez ($782); (viii) proceeds from liquidating Coinbase, Inc. account ($982,924); (ix) proceeds from liquidating Blockchain.com account ($1,161,141); (x) taking possession of the balance of a retainer from Burford Perry LLC ($155,631); (xi) taking possession of the balance of

retainers from Gerger Hennessy & Martin LLP ($214,488); (xii) taking possession of the balance of retainers from Jones Walker LLP ($102,229); (xiii) taking possession of CryptoFX funds turned over by Defendant Mauricio Chavez ($55,000); (xiv) proceeds from liquidating real property at 0 Hogan Lane ($64,758); (xv) proceeds from liquidating televisions ($3,040); (xvi) proceeds from liquidating Bitcoin from an Exodus wallet ($86,915); (xvii) net sale proceeds from sale of real property at 28 Lawrence Marshall Dr. ($65,027); (xviii) proceeds from liquidating 2020 Volkswagen Tiguan owned by Angelica Vargas ($16,695); (xix) proceeds from liquidating 2021 Mercedes-Benz GLE AMG owned by Angelica Vargas ($63,568); (xx) net auction proceeds from personal property turned over by Defendant Mauricio Chavez ($9,267); (xxi) proceeds from liquidating real property at 0 Mack Washington ($1,027,280.34); and (xxii) proceeds from liquidating 2022 BMW X6 M501 ($74,000). See Schedule of Receipts and Disbursements, attached as **Exhibit A**.

22. All four Receivership trust accounts are held with Webster Bank, N.A., a wholly-owned subsidiary of Farrington Place Corporation, Webster Investment Services, Inc., Webster Mortgage Investment Corporation, MyWebster, Inc., Webster Community Development Corporation, Webster Capital Finance, Inc., Webster Business Credit Corporation, Webster Growth Capital Corporation, Webster Mortgage Company, and Webster Massachusetts Security Corporation. The four trust accounts were previously held with Flagstar Bank, N.A. All Receivership deposits are fully insured by the FDIC and the full faith and credit of the U.S. government up to $250,000 and are fully collateralized and insured by a separate

surety bond through the Receiver's banking vendor for any amounts above $250,000. Additionally, Webster continues to be an approved depository by the U.S. Trustee in bankruptcy cases.

23. Other Assets: In addition to the cash on hand listed above, the Receiver has on hand the following assets listed below. All remaining physical assets have been abandoned in accordance with the Court's order of April 1, 2026 (Doc. No. 159-3). See also List of Receivership Liquidated and Unliquidated Assets, attached as **Exhibit B**.

| Asset | Estimated Amount/Value |
| --- | --- |
| Benvenuto Holdings frozen bank accounts at First Community Credit Union | $110,702 |

24. During the relevant period covered by this Report, the Receivership Estate has incurred administrative expenses in the amount of $ 3,458.77 because of the efforts to marshal and preserve the assets of the Receivership, including $3,403.84 advanced by Shook, Hardy & Bacon L.L.P. ("SHB") and $54.93 in postage expenses incurred by Hays.

25. The Receiver and the professionals working with him are well aware that the fees and expenses associated with the administration of the Receivership are paid from the assets of the Receivership Estate. The goal of all involved professionals is to conclude this Receivership as quickly and efficiently as can be reasonably accomplished thereby maximizing recovery to victims.

26. For the period July 1, 2026 to September 30, 2026, the unbilled professional fees incurred are approximately: $10,395.00 John Lewis, Jr.; $12,665.00 SHB; and $12,289.00 Hays. Further, The Receiver's fees listed above were reduced by approximately $5,355.00 and Hays' fees listed above were reduced by approximately $110.40. These figures reflect the services for which the receivership team did not charge.

27. As provided for in the Receivership Order, the Receiver and the professionals working with him will apply to the Court for approval to pay professional fees and expenses.

## V. SCHEDULE OF RECEIPTS AND DISBURSEMENTS

28. As of the filing of this Report, no disbursements to "investors"/victims or creditors have taken place. For a more detailed description of Receivership receipts, see supra, Section IV,¶ 21, and **Exhibit A**.

## VI. DESCRIPTION OF ALL KNOWN RECEIVERSHIP PROPERTY

29. The Receiver estimates a total of $11,610,937 in known liquidated and unliquidated Receivership assets. For a more detailed description of currently known Receivership property and corresponding approximate value, see supra, Section IV, ¶¶ 21-23, and **Exhibit B**.

## VII. DESCRIPTION OF LIQUIDATED AND UNLIQUIDATED CLAIMS

30. This Ponzi scheme was primarily a cash-based scheme, and it is going to require significant resources to unravel the claims of the Receivership estate. A

review of the available records indicates that the majority of the investments were paid in cash.

## VIII. LIST OF ALL KNOWN CREDITORS

31. The only known commercial creditor is BZO Custom Wheels, LLC, the landlord of the CryptoFX's offices on Blalock ("Landlord"). Landlord has an unliquidated claim for approximately $20,239.18 against the Receivership estate, which includes rent and utility bills. The Receiver and his team negotiated the sale of certain Receivership personal property at Blalock to set off Landlord's claim, bringing the final settlement amount to $17,209.18. The Receiver's team also negotiated and the Landlord agreed to terminate the lease on October 31, 2022, although the Receiver vacated the premises of the Blalock office on December 7, 2022.

32. The Receiver is not aware of other commercial creditors at this stage.

## IX. RECEIVER'S PROPOSED PLAN FOR ADMINISTERING THE RECEIVERSHIP

33. The Receiver recommends the continuation of the Receivership.

34. The Receiver's key focus for the next 90 days will be on the following tasks:

- Completing the second audit of the approximately 8,000 claims that were submitted via the portal; sending claims Determination Notices, and either processing claims for distribution or handling the dispute resolution process on a case-by-case basis.
- Seeking any approval required from this Court and the Sanchez court regarding the Receiver's proposed administration of the Sanchez Fair Fund.
- Strategizing for the winding down and closure of the estate.

35. The Receiver predicts the Receivership will be completed by Q1 of 2027. As the Receivership moves forward, the Receiver and his team will continue their efforts to most efficiently analyze and distribute claims.

Dated: October 30, 2026

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: *_/s/ Megan Mitchell_*
Megan J. Mitchell
Texas Bar No. 24121017
S.D. Tex. Bar No. 3435473
600 Travis St., Suite 3400
Houston, TX 77002
Telephone: 713.227.8008
Facsimile: 713.227.9508
mjmitchell@shb.com

***Counsel for John Lewis, Jr.***
***Court-Appointed Receiver***

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2026, the above and foregoing document was filed electronically through the CM/ECF system, which sent notification of such filing to all known counsel of record, addressed as follows:

Matthew J. Gulde
UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX 76102
Telephone: 817.978.1410
Facsimile: 817.978.4927
guldem@sec.gov

***Attorney for Plaintiff***

Paul D. Flack
PRATT &FLACK, LLP
4306 Yoakum Blvd., Suite 500
Houston, TX 77006
Telephone: 713.705.3087
pflack@prattflack.com

***Attorney for Defendant Mauricio Chavez***

Dan L. Cogdell
COGDELL LAW FIRM, PLLC
1000 Main Street, Suite 2300
Houston, TX 77002
Telephone: 713.426.2244
Dan@cogdell-law.com

***Attorney for Defendant, Giorgio Benvenuto***

*/s/ Megan Mitchell*
Megan Mitchell